UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re: MIRABILIS VENTURES, INC.,         Bankruptcy Case No. 6:08-bk-4327-KSJ
                                    Adv. Pro. No.  6:08-ap-222-KSJ

        Debtor

_____/

MIRABILIS VENTURES, INC.          Case No.: 6:09-cv-175-Orl-31DAB

        Plaintiff,

v.

RICHARD E. BERMAN, BERMAN, KEAN &
RIGUERA, P.A., ELENA WILDERMUTH,

        Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

DEFENDANTS RICHARD E. BERMAN ("Berman"), BERMAN, KEAN & RIGUERA,

P.A. ("BKR"),[1] AND ELENA WILDERMUTH ("Wildermuth") (collectively, "Defendants"),

by and through their undersigned counsel, pursuant to Federal Rules of Civil Procedure 9(b),

12(b)(6) and 12(b)(7), file this Motion To Dismiss Plaintiff's Second Amended Complaint and

Memorandum of Law in Support, and  state as follows:

**I.**     **Motion**

Mirabilis's Complaint seeks relief against Defendants for alleged legal malpractice in

connection with purported advice regarding an illegal scheme by Mirabilis and its principal,

Frank Amodeo ("Amodeo") to steal over $180 million in federal payroll tax withholding trust

funds. Mirabilis has been indicted on seventeen counts of federal tax law violations, including

_____

[1] BKR is a Florida Professional Association, not a limited liability company as identified in Plaintiff's
caption.

conspiracy and wire fraud, for its participation in collecting and failing to remit to the Internal

Revenue Service ("IRS") federal payroll withholding trust fund taxes.[2]  In a related criminal

action, Amodeo has pled guilty to and been convicted of conspiracy, failure to remit payroll

taxes, and obstruction of an agency investigation.[3]  He has been convicted and sentenced to a

prison term of 270 months and ordered to pay restitution of $181,810,518.66.[4]

The crux of the Complaint is that the Defendants allegedly failed to advise Mirabilis that

collected payroll tax trust funds cannot be used to pay for services rendered in the ordinary

course of business, to pay unsecured creditors, and to refinance the secured creditors.  The seven

count Complaint alleges damages arising out of the Defendants' legal representation of Mirabilis

and various subsidiary companies.[5]  Mirabilis asserts claims for (1) negligence, (2) breach of

fiduciary duty, (3) negligent misrepresentation, (4) professional negligence, (5) negligent

supervision, (6) equitable accounting, and (7) turnover.  Defendants expressly dispute and deny

all of the material allegations contained in the Second Amended Complaint.  However, even

taking the factual allegations as true for the purpose of this Motion, the Complaint is subject to

dismissal as a matter of law.

The Complaint should be dismissed for several reasons.  First, the attached exhibits are

wholly inconsistent with its allegations. Second, Plaintiff fails to properly allege the elements

of the claims against Defendants. Most, if not all, of Plaintiff's claims fail to state a claim upon

---

[2] *See* U.S. v. AEM, Inc., d/b/a Mirabilis HR, et al., Case No. 6:08-cr-00231-JA-KRS [D.E. 30] ("*U.S. v. Mirabilis*").

[3] U.S. v. Amodeo, Case No. 6:08-cr-176-ORL-28-GJK ("*U.S. v. Amodeo*") [D.E. 38, 119]

[4] [D.E. 140] Pursuant to Rule 201, Fed. R. Evid., and sections 90.202(6), 90.203, and 90.204, Florida Statutes, Defendants will be filing a separate Request for Judicial Notice of the proceedings in *U.S. v. Mirabilis* and *U.S. v. Amodeo*.

[5] Amodeo has also filed an Amended Complaint in Orange County Circuit Court (case number 08-CA-31333) which is substantially similar to the Second Amended Complaint filed by the Plaintiff in this proceeding.

which relief can be granted.  What Mirabilis alleges in Counts I through IV is essentially four redundant claims for legal malpractice against Defendants, and a claim of vicarious liability against BKR in Count V.  The claims outline multiple transactions involving non-parties which allegedly resulted in unpaid payroll taxes, but not by Mirabilis.  (*See e.g.* Comp. Para. 24, referencing nonpayment of payroll taxes by PBS).   Third, Counts I-VI seek damages alleged to have been incurred by various non-parties, including AEM, Inc., AQMI Strategy Corp., PBS and various other unspecified "subsidiaries and related companies," and "creditors." (Comp. ¶¶ 7, 8, 10-17, 20-24, 30, 32, 36, 43-45, 50, 53, 61, 62, 64-66, 69-73, 76-79, 82-85, 88-92). Fourth, as to Count V (negligent misrepresentation), Plaintiff fails to plead with the specificity required under Federal Rule of Civil Procedure 9(b). Finally, as to Counts I-VI, the Complaint is subject to dismissal as a matter of law based on Plaintiff's failure to join indispensable parties, and on the defenses of imputation, collateral estoppel, and *in pari delicto*.[6]

## II.     Memorandum of Law

### A.     Standard Applicable to Motion to Dismiss

Pursuant to the Federal Rules of Civil Procedure, dismissal is proper where a complaint fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). In making this determination, the court must accept the allegations in the complaint as true and must accept the allegations in a light most favorable to the plaintiff. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992).  However, the Court should ignore allegations that contain no more than opinions or legal conclusions. *See Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Many of the allegations in this Complaint should be ignored for this reason.

---

[6]  In response to Count VII for Turnover, Defendants state that an accounting as requested in Count VI has been provided to prior counsel. Defendants maintain no funds or property belonging to Mirabilis.

A court may dismiss a complaint that fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quotations and citations omitted).If a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, the complaint must be dismissed." *Twombly,* 550 U.S. at 570. Conclusory allegations, unwarranted factual deductions, and conclusions of law need not be accepted as true and such allegations, masquerading as facts, will not prevent dismissal. *Wagner* v. *Daewoo Heavy Indus. Am. Corp.,* 289 F.3d 1268, 1271 (11th Cir. 2002). Plaintiff's allegations do not even border the line of plausibility as they fail to assert that Defendants were retained by Plaintiff, and do not establish that Defendants' advice was incorrect.

When negligent misrepresentation is alleged, as in Count III, pleading standards are even higher. In alleging negligent misrepresentation, "a party must state with particularity the circumstances constituting [the] fraud." Fed.R.Civ.P. 9(b). Further, Rule 9(b) prohibits a plaintiff from alleging fraud "by indiscriminately grouping all of the individual defendants into one wrongdoing monolith." *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1443 (S.D. Cal. 1988). Thus, a complaint alleging negligent misrepresentation "may not rely upon blanket references to acts or omissions by all the 'defendants,' for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he

individually stands charged." *Benoay v. Decker*, 517 F. Supp. 490, 493 (E.D. Mich. 1981).  In short, Plaintiff has failed to meet its pleading burden, and the Complaint should be dismissed.

### B.       The Exhibits Attached to the Complaint are Inconsistent and Incomplete

Plaintiff's Complaint is also subject to dismissal because the attached exhibits are both inconsistent with the allegations, and incomplete. As the Eleventh Circuit Court of Appeals has stated, "Our duty to accept the facts in  the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). Further, "[i]f [an] appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." *Simmons v. Peavy-Welsh Lumber Co*, 113 F.2d 812, 813 (5th Cir. 1940).[7]

For example, Plaintiff attached an April 19, 2006 email from Paul Glover, Executive Vice-President Finance/Chief Financial Officer of Mirabilis Ventures, Inc., to Richard Berman, and others,  in which he states that he read a memorandum prepared by Elena Wildermuth which concludes with, "Accordingly, from the facts provided, it would be very unlikely for the IRS to impose liability on <u>Presidion</u> for the <u>payroll taxes of the Sunshine entities</u> pursuant to Section 6672." (Comp., Ex. L).[8] Glover goes on to assert that "AEM, Inc., is at least a full arm's length away under the Contract for Management Services Agreement. Add to that the fact that AEM has not . . . been responsible for authorizing . . . collect[ing] trust fund taxes . . . and the result

---

[7] Fifth Circuit cases decided prior to October 1, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

[8] All <u>emphasis</u> is supplied unless otherwise noted.

is further insulation from a <u>liability for the payroll taxes of the Sunshine entities</u>." *Id.* This document expressly contradicts the assertion that Defendants advised <u>Mirabilis</u> as to its own potential tax liability. (*See, e.g.,* ¶¶ 34-5). This email demonstrates that Defendants provided advice as to the potential liability of <u>Presidion for unpaid taxes of the Sunshine Companies</u>. Likewise, Exhibit M references Presidion Corp., Titanium Technologies, Inc., AEM, Inc. and other companies in a table of EINs, but makes no mention of "the legality of the PBS Plan and its effect on Mirabilis and its subsidiaries" as alleged in Paragraph 45 of the Complaint.

Further, like Exhibit L, Exhibit D it is also inconsistent with the Complaint. Exhibit D references a sale of stock in the Sunshine Companies to Wellington Capital Partners, Inc. (p. 2), but makes no mention of Mirabilis. It also discusses the IRS's assertion that the "Sunshine Entities have a balance due for federal employment taxes . . ." but makes no mention of prospective disposition of payroll withholding taxes. The memo further states that "the issue presented is whether the IRS may impose responsible party liability under I.R.C. § 6672 on <u>Presidion for the alleged tax deficiencies of the Sunshine Entities</u>." There is no explanation either in the memo or in the Complaint about how this could lead <u>Mirabilis</u> to believe that failing to remit collected payroll taxes, by Presidion or anyone else, was permitted under the Internal Revenue Code. Also, the memo reflects that the advice given related to responsible party liability of Presidion, not Mirabilis, and certainly does <u>not</u> state that failing to collect and remit such taxes is permitted under any circumstances. Because these exhibits are wholly inconsistent with the allegations of the Complaint, it is subject to dismissal.

Additionally, Exhibit D, which Plaintiff contends is "[a] true and correct copy of the First Tax Memorandum" regarding Mirabilis's potential liability is incomplete and should not be

considered by this Court in ruling on this Motion to Dismiss for this reason as well. Exhibit D does not include a cover or first page indicating the identity of its recipient, consists of pages 2, 9 and 10 of a (presumably) 10 page memo, and appears to be a draft of a memo dated April 14 addressed to Amodeo, not Mirabilis Ventures, Inc. (although that is unclear because it is incomplete). The rule that "documents and exhibits provided to support a motion for summary judgment must be complete," *Lugue v. Hercules, Inc.*, 12 F. Supp. 2d 1351, 1355 (S.D. Ga. 1977), should also extend to documents attached to a Complaint.

### C.   Plaintiff's Complaint is Subject to Dismissal Based on its Failure to Properly Allege the Essential Elements of a Legal Malpractice Action

Counts I though V of the Second Amended Complaint are multiple and redundant claims for professional negligence. To state a claim for legal malpractice under Florida law, a plaintiff must allege the following: (1) the plaintiff's employment of the attorney to provide legal services; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence as the proximate cause of the loss to the plaintiff. *Law Offices of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp.*, 969 So. 2d 962, 966 (Fla. 2007); *see also Jackson* v. *Bellsouth Telecomms.,* 372 F.3d 1250, 1281 (11th Cir. 2004). The Second Amended Complaint fails to adequately plead these elements. These counts should be dismissed.

The Florida Supreme Court has strictly limited legal malpractice actions to clients in privity with the attorney. *See Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So. 2d 1378, 1379 (Fla. 1993); *Angel, Cohen & Rogovin v. Oberon Inv., N.V.*, 512 So. 2d 192, 194 (Fla. 1987) (providing that Florida courts limit an attorney's liability for negligence to the client with whom they share privity of contract). The plaintiff must do more than merely assert that a lawyer-client relationship or other basis for the duty existed; the relationship must have

existed with regard to the specific acts or omissions on which the claim of negligence is based. *See Maillard v. Dowdell*, 528 So. 2d 512, 514 (Fla. 3d DCA 1988).  Moreover, a complaint claiming legal malpractice must allege "the source of the alleged duty, such as an oral or written contract, the duration of the relationship, [and] whether the alleged breaches emanate from one or multiple representation arrangements." *Rohlwing v. Myakka River Real Props, Inc.,* 884 So. 2d 402, 406 (Fla. 2d DCA 2004). Fundamentally, this means that a plaintiff must allege having hired an attorney with respect to a particular topic, the attorney committed malpractice with respect to that topic, and the plaintiff suffered damage as a result.

The Complaint appears to allege that Defendants and/or other unnamed "various professionals" failed to advise Mirabilis and/or others regarding obligations to collect and remit payroll taxes.  However, the Complaint fails to state a claim because it fails to allege the following, most basic elements:

a)      First, that Mirabilis retained (was in privity with) Berman, Wildermuth and BKR to render advice regarding prospective diversion of payroll taxes. Indeed, the Complaint alleges that a non-party, AQMI, retained Berman and BKR to give legal advice regarding the legality of the Sunshine Companies Plan (*see* Comp. ¶30). Plaintiff then alleges that "Berman began consulting or otherwise advising Mirabilis <u>and its subsidiaries</u>" and therefore "an attorney-client relationship existed between Defendants and Mirabilis." (Comp. ¶32)(emphasis supplied). Plaintiff goes on to assert that "[b]y this time, it was abundantly clear that Berman was representing the interests of Mirabilis in negotiating the PBS Plan and Sunshine Companies Plan" and also alleges that it relied on Defendants (Comp. ¶¶35, 37). However, nowhere does the Complaint allege that Plaintiff retained Defendants to evaluate the propriety of failing to

remit collected payroll taxes by Mirabilis, and none of the Exhibits attached to the Complaint support such a claim. Instead Plaintiff alleges broad legal conclusions in the form of factual allegations inconsistent with the attached exhibits. Plaintiff's Complaint fails to allege the essential element of privity with respect to any alleged negligent advice.

Further, a recent decision in the Middle District of Florida recently applied the standard set forth in *Ashcroft* and *Twombly* to determine that a complaint was subject to dismissal where the allegations failed to establish that the plaintiff was either a direct recipient of a warranty or an intended third party beneficiary on a breach of warranty claim. In *Pennsylvania Employees Benefit Trust Fund v. Astrazeneca Pharmaceuticals LP*, 2009 WL 2231686, *3 (M.D. Fla. Jul. 20, 2009), the Court addressed plaintiff's assertion that it was a direct recipient of defendant's services, as Plaintiff is this case claims to be, and held that the allegations of direct communications between the parties "are entirely unsupported by facts contained elsewhere in the complaint." The Court quoted *Ashcroft* stating, "As the Supreme Court of the United States recently clarified, a federal complaint does not 'suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' *Iqbal*, 129 S.Ct. at 1949." *Id.* This is exactly the deficiency from which Plaintiff's Complaint suffers. As to plaintiff's claim in that case that it was an intended third party beneficiary, the Court also found the assertion to be unsupported, despite extensive allegations regarding defendant's promotional activities, none of which established how plaintiff became a recipient of the warranty upon which the claim was based. *Id.* at *4. Similarly, the Mirabilis Complaint contains extensive allegations regarding purported conduct, none of which establish how Mirabilis was a direct or intended third party beneficiary of the representation.

b)       Second, the nature of the engagement of Defendants by Mirabilis is unclear. Although Plaintiff's rambling Complaint contains dozens of convoluted allegations, it does not allege what Defendants were specifically hired to do. Thus, Defendants cannot reasonably determine the nature of their alleged duty to Mirabilis.

Plaintiff states numerous legal conclusions asserted as facts, and attempts to state claims based on them. The Complaint merely alleges that the Defendants had some relationship with the Plaintiff at some time, as well as with other non-parties involved in the complicated web of Mirabilis/Amodeo related entities. The Complaint requires that the Court make factual deductions in its favor that because Defendants were involved with Mirabilis, they should have advised Plaintiff of the liability associated with the PBS and Sunshine Companies Plans and the prospective failure to remit payroll withholding taxes. However, this issue is entirely dependent upon what the Defendants were hired to do - i.e. what the Defendants' duty was to the Plaintiff, but the Complaint never alleges this essential element of the claim.

In stating a claim for professional malpractice it is not sufficient to merely assert a professional relationship between a plaintiff and a defendant. Instead, it is essential to allege the relationship existed with respect to the acts or omissions upon which the malpractice claim is based. *Maillard*, 528 So. 2d at 514 (Fla. 3d DCA 1988); *Kates v. Robinson*, 786 So. 2d 61, 64 (Fla. 4th DCA 2001). This standard is extremely important because an attorney's duties depend on what he or she was hired to do. An attorney cannot be held liable for malpractice based on failing to take actions which the attorney was not hired to do. *See Maillard*, 528 So. 2d at 512 (complaint for legal malpractice properly dismissed because attorney was not hired to

investigate separate litigation involving the property and notify the purchasers, only to represent the purchasers at the real estate closing).

Here, the exhibits attached to the Complaint demonstrate that if the Defendants were hired to do anything, it was to provide advice regarding past due taxes. For example, the incomplete portion of the legal memorandum attached as Exhibit D expressly provides that the "issue presented is whether the IRS may impose responsible party liability under I.R.C. §6672 on Presidion . . . for the alleged tax deficiencies of the Sunshine Entities" for federal employment taxes due "for 2003 and 2004" - prior to their December 31, 2004 acquisition by Wellington Capital Partners, Inc.  Consistent with this evaluation of past due (not future collected) payroll taxes, Exhibit B provides that "the final payroll period for Sunshine . . . is going to be through 12/31/04." Additionally, in Paragraph 46, Plaintiff references Exhibit N, a November 2, 2006 Memorandum, without specifying what advice in the Memorandum is wrong. That Memorandum does not address prospective diversion of payroll taxes by Mirabilis, but rather a "debt refinancing agreement" dated August 30, 2006. It is replete with unanswered inquiries to the client, but neither the introduction nor the conclusion of the Memorandum say anything about Plaintiff's obligation to remit current collected payroll taxes.   And the Memorandum specifies that Mirabilis "assumed or purchased liabilities," not that it controlled any ongoing failure to remit payroll taxes.

Additionally, the Second Amended Complaint contains many factual allegations about "the PBS Plan" and "the Sunshine Companies Plan," but no factual allegations as to what the Defendants' duties were in relation to any alleged omissions or how they relate to a duty owed to Mirabilis. Further, the actions Defendants are alleged to have taken, i.e. drafting a tax

memorandum "discussing and advising <u>whether the IRS is likely to impose liability for payroll taxes of the Sunshine Companies</u>" and "attending meetings with the IRS . . . regarding the legality of the PBS Plan" (*see* Comp. ¶¶34, 41, and 42) are not alleged to have been incorrect. Where a defendant's alleged conduct may be consistent with unlawful conduct, but is more likely explained by lawful conduct, it does not meet the plausibility requirement set forth by *Twombly. Ashcroft*, 129 S.Ct. at 1950.  Even accepting that Defendants were retained by Plaintiff to perform the specific acts set forth in the Complaint, these actions do not meet the plausibility set forth in *Twombly*.   Because Mirabilis fails to allege the specific duty that Defendants breached and what was unlawful about the actions taken by Defendants, the Complaint must be dismissed.[9]

c)       Finally, Plaintiff's claims are subject to dismissal because Plaintiff fails to adequately allege that Defendants were the proximate cause of its damages. In order to adequately state a claim for negligence, Plaintiff must allege not only that Defendants were the "but for" cause of its damages, but that they were the proximate cause. Based on the applicable case law, Plaintiff cannot adequately assert this element.

---

[9] Mirabilis and other related entities have been indicted for alleged federal criminal violations in connection with the activities described in the Second Amended Complaint (*See U.S. v. AEM, Inc., et al.,* Case No. 6:08-cr-00231-JA-KRS, U.S. Dist. Ct., M.D. Fla., D.E. 1).  Under Florida law (and that of most if not all states), a criminal defendant seeking to sue lawyers for malpractice must prove actual innocence and exoneration in order to recover.  *See Steele v. Kehoe*, 747 So. 2d 931 (Fla. 1999).  In the event Plaintiff is convicted, as seems likely given the conviction of Amodeo and several Motions filed in the Mirabilis criminal case in which counsel for Mirabilis represents on no less than 5 occasions that the parties "have tentatively reached plea agreements," even if Plaintiff could establish privity, Plaintiff will not be entitled to seek redress against the Defendants for its own defalcations and criminal behavior, or that of its principal, Amodeo. [See *U.S. v. AEM, Inc., et al.*, D.E. 26, 63, 73, 79, 85]  The criminal case against Mirabilis raises potentially dispositive issues in this proceeding. Therefore, the Berman Kean Defendants expect to file a separate motion to stay this matter pending final resolution of the criminal case, which is currently set for trial on November 23, 2009 before the Honorable John Antoon., II, U.S. District Judge [See D.E. 88 in *U.S. v. AEM, Inc., et al.*].

In *In re Parmalat Securities Litigation*, 501 F. Supp. 2d 560 (S.D.N.Y. 2007) successors of two bankrupt subsidiaries sued a number of banks and accounting firms for allegedly helping to conceal the parent company's true financial condition, thus causing the subsidiaries to incur debt in reliance on misrepresentations of the parent company's financial health. The defendants filed motions to dismiss. The trial court granted the motions to dismiss finding that although defendants' actions in preparing financial statements and valuing the companies in an alleged scheme to hide the parent company's financial condition may have been improper, the defendants could not possibly have foreseen the damages which plaintiffs allegedly incurred and thus they were not the proximate cause of the damages.  The Court held:

> Absent allegations that any of insolvent parent corporation's banks and accounting firms had any connection to financially dependent subsidiaries or even knew about, assisted, or otherwise participated in one subsidiary's loan in the form of a sale-leaseback transaction, let alone the looting of the proceeds by parent's corrupt insiders, subsidiaries' losses were not a foreseeable result of banks' and accounting firms' alleged schemes to hide parent's financial condition so as to give rise to claims under New York law for aiding and abetting breach of fiduciary duty and fraud by parent's insiders, and for participating in a civil conspiracy to conceal parent's financial condition.

*Id.* at 561. The Court cited to *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985) in which:

> [T]he trustee of a bankrupt company alleged a massive scheme in which the company's officers and controlling stockholders mismanaged the firm and looted corporate funds. The trustee sued, among others, a law firm in connection with its preparation of the company's SEC filings and other documents, which allegedly misrepresented the company's financial condition. The trustee claimed that these misrepresentations allowed the company to raise large amounts of capital, which ultimately was looted as part of the ongoing fraud at the company. The Second Circuit held, however, that this was insufficient to plead loss causation under the securities laws, as it amounted merely to a claim of "but for" causation. The company's alleged losses, the court held, were caused by theft or mismanagement of corporate funds, not the raising of the funds that occurred with the defendant's help.

*In re Parmalat,* 501 F. Supp. 2d at 579.

Additionally, in *Pennsylvania Employees Benefit Trust Fund* cited above, the Court also found that plaintiff failed to adequately allege proximate cause. The Court stated, "In the negligence context, [p]roximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant; and it may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm. 2009 WL 2231686, *4 (quotations omitted). The Court further stated that proximate cause allows courts to "place practical limits on liability as a matter of policy. It involves a determination that the nexus between a defendant's wrongful acts or omissions and the injury sustained is of such a nature that it is socially and economically desirable to hold that defendant liable." *Id.* at *5 (quotations omitted). The Court then relied on the case of *Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d 1339 (M.D. Fla. 2008), to find that plaintiff failed to establish that logical nexus between the defendant's actions and the damages. The Court stated that the harm was "simply too remote from Defendant's alleged unlawful acts to permit a 'socially and economically desirable' outcome." *Id.* at *6.

Here, there is no exhibit attached to the complaint which supports the claim that the Defendants advised that it was acceptable not to pay collected payroll taxes to the IRS.

Further, in view of Amodeo's admitted criminal fraudulent conduct on behalf of Mirabilis, Defendants' alleged negligence, even if taken as true, cannot establish proximate cause. There are no allegations that Defendants knew that Plaintiff (and its principal, Amodeo), would engage in illegal and fraudulent conduct which would lead to substantial monetary

damages and a criminal indictment. The Complaint does not sufficiently allege proximate cause between Defendants' actions and Plaintiff's damages. Thus, the claims should be dismissed.

The general allegations in Paragraphs 1 through 57 which form the basis of each of the seven counts of Plaintiff's Second Amended Complaint are a muddled combination of confusing and contradictory allegations largely relating to non-parties to this action as set forth in more detail below. These allegations fail to allege the essential elements of a legal malpractice claim and the Complaint should be dismissed.

### D.    The Second Amended Complaint is Subject to Dismissal based on Other Defects in the Allegations

In addition to the arguments set forth above, the Complaint contains the following additional flaws.

### 1.    Plaintiff Seeks Damages Incurred By Non-Parties.

Basic corporate law provides that a corporation and its subsidiaries are separate and distinct legal entities. In *American International Group, Inc., v. Cornerstone Business, Inc.*, 872 So. 2d 333, 336 (Fla. 2d DCA 2004), the court explained:

> Furthermore, even though National Union is a wholly-owned subsidiary of AIG, this does not make the two corporations interchangeable for purposes of bringing or defending a lawsuit.   **A parent corporation and its wholly-owned subsidiary are separate and distinct legal entities.** *Gladding Corp. v. Register,* 293 So.2d 729, 732 (Fla, 3d DCA 1974).  As a separate legal entity, a parent corporation is not liable for torts committed by its subsidiary and cannot exercise the rights of its subsidiary.  *Unijax, Inc. v. Factory Ins. Ass'n*, 328 So.2d 448, 453-54 (Fla. 1st DCA 1976).

872 So. 2d at 336 (emphasis supplied).

In pertinent part, Counts I through V allege the following, "As a direct and proximate results of the Defendants' negligence, <u>Mirabilis, its subsidiaries and related companies</u> have

suffered damage to their business, property, <u>as well as its creditors</u>, and accordingly seek compensatory damages." (Comp. ¶¶ 62, 66, 73, 79, 85).[10]  Further, Count VI of the Second Amended Complaint for equitable accounting alleges in pertinent part that, "Irreparable injury will be sustained by <u>Mirabilis, its subsidiaries and related companies</u> if this Court does not order an accounting  . . . ." (Comp. ¶ 92). However, these unidentified "subsidiaries and related companies" are not plaintiffs in this action and Mirabilis has no standing to assert claims for them.

The notion that a corporation and its subsidiaries are separate and distinct legal entities is not new or novel.  Nor is the accompanying principle that a corporation has no standing to assert claims for damages on behalf of a subsidiary or related company.  In *Bingham v. Zolt*, 66 F.3d 553, 561 (2d Cir. 1995), the court explained, "The general principle [is] that a shareholder cannot sue in his individual capacity to redress wrongs inflicted upon a corporation in which he holds stock."  A subsidiary of Mirabilis is simply a corporation in which Mirabilis owns stock, maybe even all of the stock.  As a fundamental proposition of black letter corporate law, a shareholder does not have standing to assert claims for damage to a corporation in which the shareholder owns an interest.  *See Checkers Drive-In Rests., Inc. v. Tampa Checkmate Food Servs., Inc.*, 805 So. 2d 941 (Fla. 2d DCA 2001); *Alario v. Miller*, 354 So.2d 925, 926 (Fla. 2d DCA 1978).  It makes no difference if the shareholder is also a corporation and owns all the stock in the injured corporation.  The fact that one corporation owns all the stock of a subsidiary company does not erase the subsidiary's legal identity. *See Gladding Corp. v. Register*, 293 So.

---

[10] Paragraph 85 states that "Mirabilis and its related entities have suffered damages," it does not reference the subsidiaries.

2d 729, 732 (Fla. 3d DCA 1974). Thus, Mirabilis lacks standing to assert claims on behalf of any party but itself.

### 2.    Count III Fails To Comply With Rule 9(b)

Count III purports to be a claim for negligent misrepresentation.  However, Count III fails to comply with the requirements of Federal Rule of Civil Procedure 9(b), which requires that claims for fraud be pled with particularity. In Florida, an action for negligent misrepresentation sounds in fraud rather than negligence and therefore the pleading requirements of Rule 9(b) apply.  *Harrison Enters., Inc. v. Moran*, 1999 WL 1211753 *1,*3 (S.D. Fla. Aug. 30, 1999) (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993)). Therefore, the heightened pleading requirements of Rule 9(b) apply to actions for negligent misrepresentation.  *Id.*

The Complaint fails to meet these requirements.  Rule 9(b) requires in any case alleging fraud that "the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of this rule is to inform a party charged with fraudulent behavior of the exact words or actions that constitute its alleged misconduct.  *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1511 (11th Cir. 1988).Rule 9(b) requires that a plaintiff allege:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l. Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001).

Conclusory allegations without a description of the fraudulent conduct do not satisfy the requirements of Rule 9(b). *See U.S. v. Magellan Health Serv., Inc.*, 74 F. Supp. 2d 1201, 1215

(M.D. Fla. 1999). Allegations must include *specific* facts supporting a strong inference of fraud. *Id* at 1216.   To sustain claims for fraud, a plaintiff must provide the *specific* names of the individuals involved in the fraud and should provide details regarding the time and place of the alleged fraud. *See Ziemba,* 256 F.3d at 1202 (explaining the requirement that plaintiff show to whom, when, and where statements or omissions were made as well as what was obtained as a consequence of the fraud).[11]

In this case, Plaintiff's claim for negligent misrepresentation alleges that "Defendants knew, or should have known, that Mirabilis, its [unnamed] subsidiaries and [unnamed] related companies were relying on the  [unspecified] information supplied and representations and statements made by Defendants  . . . ." (Comp. ¶69). Plaintiff further alleges that "Defendants breached their duty by making  [unspecified] material negligent misrepresentations and omissions described above . . . ." (Comp. ¶72).  Plaintiff fails to whom the statements were made and what in fact these purported negligent misrepresentations consisted of.  Thus, this claim is subject to dismissal because it fails to satisfy the requirements of Rule 9(b).

**3.    Count V Fails To Allege The Elements of a Claim For Negligent Supervision.**

Count V purports to be a claim for BKR's negligent supervision of Berman and Wildermuth.  However, the count is merely a recitation of the elements of such a claim. As explained in *Department of Environmental Protection v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) (citations omitted), a claim for negligent supervision requires the following:

---

[11]

 *See also Advisor's Capital Invs. Inc. v. Cumberland Cas. & Surety Co.*, 2007 WL 220189 *1 *5 (M.D. Fla. Jan. 26, 2007) (it is impermissible to lump defendants together—must reasonably notify each defendant of his participation in the fraud—Rule 9(b) is not satisfied where complaint vaguely attributes the alleged fraudulent statements to "defendants").

Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment. The plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action. The employer's liability for negligent supervision is not, however, unlimited; not only must the employer owe a duty to the plaintiff, but the breach of that duty must be the proximate cause of the plaintiff's harm.  There must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee.

Count V fails to allege a specific factual basis for the conclusions that BKR had a duty to supervise Berman and Wildermuth and breached that duty.  There is no factual allegation that BKR received actual or constructive notice of problems with Berman or Wildermuth giving rise to a claim for negligent supervision.  As discussed *infra*, Plaintiff fails to allege facts necessary to establish that a duty was owed or that Plaintiff suffered recoverable damages or that Berman and/or Wildermuth were the proximate cause of such alleged damages.  Count V also alleges that BKR breached its duty of reasonable care by "failing to supervise the trust account of Mirabilis and its related entities."  Again, the "related entities" are unidentified non-parties. Moreover, there is no allegation that Mirabilis suffered damage as a result of any failure to properly "supervise" the trust account. This claim also fails as a matter of law.

### 4.        Plaintiff Failed To Join One Or More Indispensable Parties

Federal Rule of Civil Procedure 12(b)(7) allows a motion to dismiss to be filed for "failure to join a party under Rule 19."  *See* Fed.R.Civ.P. 12(b)(7); Fed.R.Civ.P. 19.  Federal Rule of Civil Procedure 19(a)(1)(A) provides, in part, the following, "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction

must be joined as a party if: in that person's absence, the court cannot accord complete relief among existing parties."  Rule 19 further provides the following:

> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Throughout the Complaint reference is made as to advice of "other professionals" allegedly relied upon by Mirabilis and a variety of other entities and persons.  Further, as referenced *supra*, Mirabilis alleges that "its subsidiaries and related companies" as well as its "creditors" have suffered damages. These "other professionals," "subsidiaries," "related companies," and "creditors" are not named as parties.  Because the Plaintiff has not joined these entities the Court cannot, in their absence, accord complete relief among the existing parties.  Additionally, the Complaint names numerous non-parties who might or might not have received legal or tax advice who also are not parties to this action.[12]

---

[12] A partial list follows: (1) MVI's subsidiaries and related companies; (2) AEM; (3) Frank Amodeo; (4) Presidion Corporation; (5) Sunshine Staff Leasing, Inc. a/k/a Presidion Solutions, I Inc.; (6) Sunshine Companies, II, Inc.; (7) Sunshine Companies, III, Inc. a/k/a Presidion Solutions, IV, Inc.: (8) Sunshine Companies, IV, Inc. a/k/a Presidion Solutions, V, Inc.; (9) Presidion Solutions, Inc.; (10) Professional Benefits Solutions, Inc.; (11) Paradyme, Inc.; and (12) AQMI.

Further, the failure to join "other professionals"[13] will subject Defendants to a substantial risk of inconsistent results, duplicative claims and alleged damages, and failure to assess comparative fault among the "other professionals" based on the alleged advice and consequences flowing therefrom.[14] Thus, these "other professionals" must at a minimum be joined in this action in order to afford complete relief to the Defendants. Alternatively, if they are unable to be joined, this action should be dismissed as their absence will result in great prejudice to the Defendants. S*ee, e.g., Evergreen Park Nursing and Convalescent Home, Inc. v. Am. Equitable Assurance Co*., 417 F.2d 1113, 1116 (7th Cir. 1969)(holding that dismissal was proper for failure to join indispensable parties where plaintiff had two actions arising out of same circumstances against various insurers and complete relief could not be provided in the absence of having all insurers joined in one action).

### E.   Plaintiff's Claims are Barred Based on the Imputation Defense

Plaintiff's claims are also expressly barred by the imputation defense. In *Seidman & Seidman v. Gee*, 625 So. 2d 1 (Fla. 3d DCA 1982), a corporation sued its accounting firm for malpractice based on an alleged negligent audit of the company. Following a jury verdict and

---

[13] These "other professionals" may refer to defendants named in three (3) separate, yet substantially similar actions filed by Plaintiff which are now all in this Court against other law firms, accounting firms and other professionals in which he is making similar allegations and seeking the same relief. *See Mirabilis Ventures, Inc ("MVI"). v. Rachlin, Cohen & Holtz, LLP, et al.* (Case No. 6:09-cv-176-Orl-31DAB) (Rachlin Complaint); *MVI v. James Moore & Co., P.A., et al.* (Case No. 6:09-cv-176-Orl-31DAB) (Moore Complaint); and *MVI v. Buchanan, Ingersoll, & Rooney, P.L., et al.* (Case No. 6:09-mc-00151-JA) (Buchanan Complaint). These other defendants are being sued for their alleged failure to advise Mirabilis that failing to remit collected payroll taxes to the IRS is illegal. A review of the other Complaints clearly demonstrate, based on Plaintiff's allegations, that the claims and actions described therein arose from the same transaction and occurrence, as the other Complaints make reference to the same events which supposedly caused the harm for which Plaintiff seeks relief, however, such parties were not joined in the instant Complaint. However, Mirabilis was populated with numerous in house accountants and lawyers, so it is unclear exactly who the "other professionals" may be.

[14] Further, Defendants anticipate filing a Motion to Stay this matter pending the conclusion of *U.S. v. Mirabilis*. This is because Defendants anticipate that Mirabilis will be convicted of the charges against it and therefore will be subject to the defense of collateral estoppel which is also briefly mentioned here.

trial court judgment for the corporation, the Third District reversed, holding, "Where it is shown, without dispute, that a corporate officer's fraud intended to and did benefit the corporation, to the detriment of outsiders, the fraud is imputed to the corporation and is an absolute defense to the corporation's action against its accounting firm for negligent failure to discover the fraud." *Id.* at  3. The Court went on that state that, "This holding follows the equitable principle that where a prejudicial situation results from a wrongful act of a third person, the decision must be against the party whose conduct made possible the wrongful act, unless the act of the third person is fraudulent." *Id.*

Here, Mirabilis's principal, Frank Amodeo, has been convicted of stealing nearly $200 million for the benefit of himself and his corporation, Mirabilis. This is exactly the type of scenario in which a corporation is precluded from suing its law firm based on its own corporate officer's fraud. Amodeo's actions are clearly imputed to Mirabilis, which benefitted from the fraud. The fact that the fraud ultimately may have resulted in bankruptcy for Mirabilis is of no effect here. The Court in *Seidman* addressed this exact inquiry, quoting from *Security America Corp. v. Schacht,* No. 82-C-2132, (N.D.Ill.1983): "'It is the short-term benefit or detriment to Security America that is important. Whether liability ultimately may fall on Security America, once the fraud has been unmasked, is not the relevant inquiry.'" *Seidman*, 625 So. 2d at 3 (quoting *Schacht*).  Here, Mirabilis received the benefit of Amodeo's admitted wrongdoing. Mirabilis is legally barred from asserting these claims based on Amodeo's conduct.

### F.    Plaintiff's Claims Are Barred by Collateral Estoppel

Plaintiff's claims are also barred based on collateral estoppel. Specifically, "Collateral estoppel bars a defendant who is convicted in a criminal trial from contesting this conviction in

a subsequent civil action with respect to issues necessarily decided in the criminal trial." *U.S. v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005). Collateral estoppel applies where the "(1) the issue was identical in both the prior and current action; (2) the issue was actually litigated in the prior action; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003). Unlike Florida law, federal law does not require identity of parties.[15]

Here, Amodeo was convicted in federal court of five charges relating to his illegal scheme to steal nearly $200 million in federal withholding trust fund taxes. Amodeo has admitted both in his guilty plea and through sworn testimony that it was his own intentional and willful conduct which lead to his conviction. It therefore follows that his actions, taken on behalf of Mirabilis, bar Mirabilis from recovering based on Amodeo's wrongdoing. Mirabilis is estopped from denying that Amodeo knowingly and willfully violated the criminal tax code and from attempting to blame Defendants for Amodeo's conduct, taken on behalf of Mirabilis.

### G. Plaintiff's claims are also barred by the doctrine of *in pari delicto*.

Finally, Mirabilis is precluded from making the claims alleged in the Complaint by the *in pari delicto* defense. The essence of its allegations is not just that it received incorrect or improper legal advice but that the Defendants allegedly knew about scheme to illegally defraud the government and steal payroll taxes. Mirabilis impliedly alleges knowledge of the Defendants

---

[15]The preclusive effect of Amodeo's conviction is governed by federal, not Florida law. When a federal court renders a judgment, federal law governs the preclusive effect of that judgment. A*mador v. Fla. Bd. of Regents ex rel. Fla. Int'l Univ.*, 830 So. 2d 120, 122 (Fla. 3d DCA 2002) Therefore, identity of parties not required for defensive use of collateral estoppel. *Id.*

of its illegal scheme. (Comp. ¶¶ 61, 65, 72, 78, 83). While Defendants expressly deny these allegations, assuming they are true for purposes of this Motion, the *in pari delicto* defense precludes recovery based on such claims.

"*In pari delicto* means in equal fault. The phrase appears in the legal maxim: Where both parties are equally in the wrong, the position of the defendant is the stronger. *In pari delicto* refers to the plaintiff's participation in the same wrongdoing as the defendant." *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1044 (Fla. 2d DCA 2007)(citations and quotations omitted). "'Broadly speaking, the defense prohibits plaintiffs from recovering damages resulting from their own wrongdoing.'" *Id.* (quoting *Nisselson v. Lernout*, 469 F.3d 143, 151 (1st Cir. 2006)).

Here, Mirabilis asserts that Defendants knew of its illegal plan and affirmatively assisted it in carrying it out. While this allegation is false (and is expressly contradicted by the legal memoranda provided to Mirabilis), Defendants acknowledge that on a motion to dismiss, the court is required to accept allegations as true. *Cocco v. Pritcher*, 1 So. 3d 1246, 1248 (Fla. 4th DCA 2009).

A Delaware court recently thoroughly analyzed the *in pari delicto* defense in *American International Group, Inc. v. Greenberg*, 2009 WL 1684808 (Del. Ch. June 17, 2009). In *Greenberg*, the issue was "to what extent may a corporation like AIG recover from its co-conspirators for the damage the corporation suffered due to its own illegal conduct?" *Id.* at *1. The court held that *in pari delicto* barred the suit against the defendants stating that, "[I]n this context there is no societal interest in making sure that each party gets its 'fair' share of the conspirators' societally unfair bargain." *Id.* at *2. *See also Turner v. Anderson*, 704 So. 2d 748,

752 (Fla. 4th DCA 1998)(holding that client was precluded from bringing claim against attorney for legal malpractice based on *in pari delicto* defense where client had sophisticated background and admitted that he knew what he was doing in committing perjury); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150-52 (11th Cir. 2006) (holding that the *in pari delicto* defense is available against a trustee for a debtor company in a bankruptcy proceeding and precluding a sham company from recovering damages based on the *in pari delicto* defense where the company's main objective was to perpetrate fraud).

Allowing Mirabilis to pursue this suit against the Defendants in light of Amodeo's conviction and Mirabilis's pending criminal proceeding would turn the public policy of Florida (and all states) on its head, allowing a convicted felon to use the court process to profit from his own criminal misconduct. Although the court in *Turner* acknowledged that the doctrine of *in pari delicto* can give way to public policy in some circumstances, "no public policy should allow appellant to recover damages as a result of engaging in criminal conduct such as occurred in this case." *Id.* at 751. Similarly, public policy mandates that Mirabilis not be permitted to recover any damages for its own admittedly willful and intentional criminal conduct. Therefore, Mirabilis's claims, even taken as true, are barred by the doctrine of *in pari delicto*.

### III.   Conclusion

The Second Amended Complaint in this action is unusually confusing, disorganized and replete with irrelevant and inconsistent allegations. Even taken as true, the allegations of the fail to state any cause of action, and the claims asserted are also barred by various legal defenses apparent from the face of the Complaint and from materials subject to judicial notice. The Complaint should be dismissed.

**WHEREFORE,** Richard E. Berman, Berman, Kean & Riguera, P.A., and Elena Wildermuth respectfully request that this Court enter an order granting this Motion to Dismiss the Second Amended Complaint and for such other relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing has been furnished via Electronic Transmission on November **9th**, 2009 to: **Roy S. Kobert, Esq.**, Broad and Cassel, Counsel for Plaintiff, 390 North Orange Avenue, Suite 1400, Orlando, FL 32801, Telephone: (407) 839-4200; Facsimile: (407) 425-8377, Email: rkobert@broadandcassel.com; **Robert C. Widman, Esq.**, Morris & Widman, P.A., 245 Tamiami Trail North, Suite E, Venice, FL 34285; Telephone: (941) 484-0646; Facsimile: (941) 496-8870.

> */s/ D. David Keller*
> D. David Keller
> Florida Bar No. 288799
> Keller Landsberg PA
> Trial Counsel for Defendants
> One Financial Plaza, Suite 1050
> 100 Southeast Third Avenue
> Fort Lauderdale, Florida 33394
> (954) 761-3550
> (954) 525-2134 (facsimile)
> david.keller@kellerlandsberg.com
>
> -and-
>
> Bradley M. Saxton
> Florida Bar No. 0855995
> Winderweedle, Haines,
> Ward & Woodman, P.A.
> Co-counsel for Defendants
> Post Office Box 1391
> Orlando, Florida 32802-1391
> (407) 423-4246
> (407) 423-7014 (facsimile)
> bsaxton@whww.com