UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                     Case No. 6:08-cr-176-Orl-28GJK

FRANK L. AMODEO

**AMENDED PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Robert E.

O'Neill, United States Attorney for the Middle District of Florida, and the defendant,

**FRANK L. AMODEO**, and the attorneys for the defendant, Harrison T. Slaughter, Jr.,

Esq., mutually agree as follows:

A.    **Particularized Terms**

1.    **Counts Pleading To**

The defendant shall enter a plea of guilty to Counts One, Seven, Eight,

Ten, and Twenty-Seven of the Indictment.  Count One charges the defendant with

Conspiracy, in violation of 18 U.S.C. § 371.  Counts Seven, Eight, and Ten each charge

the defendant with Failure to Collect and Remit Payroll Taxes, in violation of 26 U.S.C. §

7202.  Count Twenty-Seven charges the defendant with Obstruction of an Agency

Proceeding, in violation of 18 U.S.C. § 1505.

2.    **Maximum Penalties**

Counts One, Seven, Eight, Ten and Twenty-Seven each carry a maximum

sentence of five years imprisonment, a fine of $250,000, a term of supervised release of

Defendant's Initials _____                1                Chief's Initials _____

AF Initials _____

EXHIBIT D

not more than three years, and a special assessment of $100 per felony count, said special assessment to be due on the date of sentencing. The fines for Counts One, Seven, Eight and Ten, are also subject to Title 18, United States Code, Section 3571(d), which provides for a fine which is not more than the greater of twice the gain or twice the gross loss. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.  **Elements of the Offenses**

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One (Conspiracy, 18 U.S.C. § 371) are:

| | |
|---|---|
| First: | That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; |
| Second: | That the Defendant, knowing the unlawful purpose of the plan, willfully joined in it; |
| Third: | That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the methods (or "overt acts") described in the indictment; and |

Defendant's Initials _____

Chief's Initials _____

2

Fourth:    That such "overt act" was knowingly committed at or about the time alleged in an effort to carry out or accomplish some object of the conspiracy.

The elements of Counts Seven, Eight, and Ten (Failure to Collect and Remit Payroll Taxes; 26 U.S.C. § 7202) are:

First:    That the defendant was a person who had a duty to collect, truthfully account for, and pay over federal income and social security taxes that the defendant was required to withhold from the wages of employees for the charged calendar quarters;

Second:    That the defendant failed to collect or truthfully account for and pay over federal income and social security taxes that the defendant was required to withhold from the wages of employees for said calendar quarter; and

Third:    That the defendant acted willfully.

The elements of Count Twenty-Seven (Obstruction of an Agency Proceeding, 18 U.S.C. 1505) are:

First:    there was an agency proceeding;

Second:    the defendant was aware of that proceeding; and

Third:    that the defendant intentionally endeavored corruptly to influence, obstruct or impede the pending proceeding.

Defendant's Initials _____    3    Chief's Initials _____

4.    **No Further Charges**

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5.    **Mandatory Restitution to Victim of Offense of Conviction**

Pursuant to 18 U.S.C. §§ 3663A, defendant agrees to make full restitution to the Internal Revenue Service and any client taxpayer who is required to re-pay the Internal Revenue Service for withholding and FICA taxes not turned over by defendant and any company with which he was affiliated to the Internal Revenue Service.

6.    **Guidelines Sentence**

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials _____

Chief's Initials _____

4

7.   **Acceptance of Responsibility - Three Levels**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.   **Role in Offense**

The United States will recommend to the Court that the defendant receive a four-level upward adjustment, pursuant to USSG § 3B1.1(a), regarding the defendant's role in the offense. The defendant understands that this recommendation

Defendant's Initials _____

5

Chief's Initials _____

or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9. **No Upward/Downward Departure - Joint Recommendation**

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that in sentencing the defendant the Court neither depart upward nor downward from the applicable sentencing guideline range, and the United States and the defendant further agree that no such upward or downward departure would be appropriate in this case. The defendant, however, retains the ability to recommend to the Court that he receive a downward departure for diminished capacity, pursuant to U.S.S.G. § 5K2.13. The defendant understands that these recommendations or requests are not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10. **Cooperation - Substantial Assistance to be Considered**

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as

Defendant's Initials _____

Chief's Initials _____

6

"substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

11.    **Use of Information - Section 1B1.8**

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

Defendant's Initials _____                7                Chief's Initials _____

12.    **Cooperation - Responsibilities of Parties**

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware

Defendant's Initials _____    Chief's Initials _____

8

of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in

Defendant's Initials _____    Chief's Initials _____

9

this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

13.    **Taxes - Payment and Cooperation**

The defendant agrees to pay all taxes, interest, and penalties found by the Internal Revenue Service to be lawfully owed and due to the United States Treasury for the years 2004 through and including 2006, and to cooperate with and provide to the Internal Revenue Service any documentation necessary for a correct computation of all taxes due and owing for those years, and further agrees that the Court may make this term a condition of any sentence of probation or supervised release. The defendant may avail himself of any administrative and/or court procedures normally available to taxpayers in determining the correct tax due.

16.    **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following:

**Money Judgment**

a.    A forfeiture money judgment in an amount not less than $172 million and not more than $181,810,518.66, the exact amount to be determined by the Court at, or before, sentencing, which sum constitutes proceeds obtained

Defendant's Initials _____                    Chief's Initials _____

10

directly or indirectly as a result of the conspiracy to commit wire fraud charged in Count One. The net proceeds of any asset directly forfeited as property constituting or traceable to proceeds of the offenses charged herein shall be credited in partial satisfaction of the money judgment.

**Property Constituting, or Traceable to, Proceeds of Count One**

b.    The real property, including all improvements thereon and appurtenances thereto, located at:

    (1)    1159 Delaney Avenue, Orlando, Florida;

    (2)    3801 Carolina Avenue, Richmond, Virginia;

    (3)    4905 Research Drive, Huntsville, Alabama;

    (4)    102 West Whiting Street, Tampa, Florida; and

    (5)    The proceeds of the sale of 509 Riverfront Parkway, Chattanooga, Tennessee, currently held in the bankruptcy estate of Winpar Hospitality Chattanooga, LLC, Case No. 07-11908, U.S. Bank. Court, E.D. Tenn.

c.    The following vehicles:

    (1)    2006 Black Harley Davidson Motorcycle, VIN # 1HD1BWB156Y077592;

    (2)    2006 Mercedes Benz CLS 500C Coupe, VIN # WDDDJ75X46A032858; and

    (3)    2006 BMW 750Li, VIN # WBAHN83536DT30059

d.    Gates Learjet Model 25D, Aircraft Number 4488W;

e.    The following promissory notes:

    (1)    A promissory note in the amount of $3,500,000.00 dated on or about May 7, 2007 between Wellington Capital and Worker's Temporary Staffing, Inc., including payments of $63,000.00 per month; and

Defendant's Initials _____

11

Chief's Initials _____

(2)    A promissory note in the amount of $5,500,000.00 dated on or about May 27, 2007 between Mirabilis Ventures, Inc. and Conrad D. Eigenmann, Jr., including semi-annual payments of at least $100,000.00.

f.    The following seized funds:

(1)    $253,487.45 in proceeds seized from the trust account of the law firm of Balch Bingham LLP;

(2)    $101,393.86 in proceeds seized from the trust account of the law firm of Shutts & Bowen;

(3)    $42,419.72 in proceeds seized from the trust account of the law firm of Mateer and Harbert;

(4)    $100,000.00 in proceeds seized from the trust account of the law firm of Maher, Guily, Maher PA;

(5)    $105,922.96 in proceeds seized from the trust account of the law firm of Martin, Pringle, Oliver, Wallace, & Baur LLP;

(6)    $50,000.00 in proceeds seized from the trust account of the law firm of Bieser, Greer & Landis LLP;

(7)    $8,518.30 in proceeds seized from the trust account of the law firm of Allen, Dyer, Doppelt, Milbrath & Gilchrist PA;

(8)    $25,000.00 in proceeds seized from the trust account of the law firm of Valenti, Hanley & Robinson PLLC;

(9)    $10,000.00 in proceeds seized from the trust account of the law firm of Brown, Stone, & Nimeroff LLC;

(10)    $21,900.00 in proceeds seized from the trust account of the law firm of Hunt Rudd PA;

(11)    $41,029.54 in proceeds seized from the trust account of the law firm of Ford & Harrison PA;

(12)    $12,528.51 in proceeds seized from the trust account of the law firm of Broad & Cassel;

Defendant's Initials _____

Chief's Initials _____

(13)  $20,754.19 in proceeds seized from the trust account of the law firm of Latham, Shuker, Barker, Eden, & Beaudine LLC; and

(14)  $13,100.99 in proceeds seized from Fifth Third Bank Account No. 7440599020 in the name of Soone Business Development.

g.  The assets of the following corporations, including but not limited to the below listed lawsuits and/or settlements:

Corporations:

AEM, Inc., d/b/a Mirabilis HR,
AQMI Strategy Corporation,
Hoth Holdings, LLC,
Mirabilis Ventures, Inc.,
Nexia Strategy Corporation,
Presidion Solutions, Inc.,
Professional Benefit Solutions, Inc.,
     d/b/a Presidion Solutions VII, Inc.
Quantum Delta Enterprises, Inc.,
     d/b/a Siren Resources, Inc.,
Titanium Technologies, Inc.,
     f/k/a Titanium Consulting Services, Inc.,
Tenshi Leasing, Inc.
Wellington Capital Group, Inc.

Lawsuits:

| Style of case | Location | Case No. |
|---|---|---|
| Mirabilis Ventures, Inc. v. Jeffrey Reichel | Broward County, Florida | CACE 07011827 |
| Mirabilis Ventures, Inc, and Nexia Strategy Corp. v. Palaxar Group, LLC, et al. | Orange County, Florida | 07-co-13191 (37) |
| Mirabilis Ventures, Inc. v. Forge Capital Partners, LLC, et al. | Orange County, Florida | 07-CA-13828 (33) |

Defendant's Initials _____

13

Chief's Initials _____

| Style of case | Location | Case No. |
|---|---|---|
| Mirabilis Ventures, Inc. v. J.C. Services, Inc., et al. | U.S.D.C., M.D. Fl. | 6:06-cv-1957-Orl-22KRS |
| AEM, Inc. d/b/a Mirabilis HR v. Sheryl Okken, Progressive Employer Services, LLC, et al. | Brevard County, Florida | 05-2007-CA-006526 |
| RKT Constructors, Inc. v. Del Kelley and Robi Roberts | Orange County, Florida | 2007-CA-012599-0 |
| Mirabilis Ventures, Inc. v. Stratis Authority, Inc., et al. | Orange County, Florida | 07-ca-13826 (37) |
| Mirabilis Ventures, Inc. v. Premier Servicing, LLC and Robert Konicki | Orange County, Florida | 07-ca-33197 (34) |
| Mirabilis Ventures, Inc. v. Robert Lowder, et al. | Orange County, Florida | 2006-CA-005742-0 |
| Kenneth Hendricks, et al. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | U.S.D.C., M.D.Fl. | 8:07-cv-661-T17EAJ |
| Kenneth Hendricks, et al. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | Hillsborough County, Florida | DC-07-014201J |
| Berman, Kean & Riguera, P.A. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | Broward County, Florida | 07-024968 (21) |
| Anthony T. Sullivan v. AQMI Strategy (Counterclaim) | Orange County, Florida | 07-CA-0015981-0 |
| Paysource, Inc. And Robert Sacco v. Mirabilis Ventures, Amodeo, et al. (Counterclaim) | U.S.D.C., S.D. Ohio | 3:07cv0129 |

Defendant's Initials _____

Chief's Initials _____

| Style of case | Location | Case No. |
|---|---|---|
| Prime Acquisition Group, LLC v. Ionic Services, Inc., et al. (Counterclaim) | Palm Beach County, Florida | 502007CA02242 |
| Michael Mapes, et al. v. Wellington Capital Group, Inc. | U.S.D.C., D. Neb. | 8:07cv77 |
| Briarcliff Village, LLC v. Mirabilis Ventures, Inc. | Clay County, Missouri | 07CY-CV09414 |
| William Gregory v. Floyd Road v. Mirabilis Ventures, Inc. (Counterclaim) | Hillsborough County, Florida | 07-CA-010780 |
| Coastal Equity Partners, LLC v. Pacific Atlantic Capital Corp., et al. (Counterclaim) | Henrico County, Virginia | CL07-1960 |
| Liberty Property Limited Partnership v. Mirabilis Ventures, Inc., et al. (Counterclaim, settled) | Duval County, Florida | 162007CA003642 |
| Tranmere Rovers Football Club v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Liverpool, England | 7LV30022 |
| Mark Lang v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Orange County, Florida | 48-2007-CA-002929-0 |
| David Chaviers, Norman Chaviers, Kellie Ledbetter and Tom Hancock v. Mirabilis Ventures, Inc. And Frank Amodeo, et al. (Counterclaim, settled) | U.S.D.C., N.D. Ala. | CV-07-0442-cls |
| Carlton Fields v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Hillsborough County, Florida | 07-CC-038145 |

Defendant's Initials _____     15     Chief's Initials _____

| Style of case | Location | Case No. |
|---|---|---|
| Brevard County v. RKT Constructors, Inc. (Counterclaim, settled) | Brevard County, Florida | 05-2007-CA-12251 |
| Bellsouth v. RKT Constructors, Inc., et al. (Counterclaim, settled) | Orange County, Florida | 05-2007-CA-9660-0 |
| Dutko Global Advisors LLC v. AQMI Strategy Corporation (Counterclaim, settled) | Orange County, Florida | 48-2007-CA-018164-0 |
| Capital Office Products of Volusia County, Inc., v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Volusia County, Florida | 2007-34950 COCI |
| CDW Corporation, Inc. v. Information Systems, Inc. (Counterclaim, settled) | Cook County, Illinois | 2007-L-002446 |
| RKT Constructors, Inc. v. Florida Department of Transportation (Settled) | Broward County, Florida | 05-2003-CA-047397 |
| RKT Constructors, Inc. v. Florida Department of Transportation (Settled) | Broward County, Florida | 05-2006-CA-060518 |
| Providence Property & Casualty Insurance Co, et al. v. Paradyme, Inc., d/b/a Presidion Solutions VI (settled) | U.S.D.C., E.D. Tx. | 4:07-CV-202 |
| Presidion Corporation v. Arrow Creek, Inc., et al. | Palm Beach County, Florida | 502006CA001417xxxxMB |

Defendant's Initials _____    16    Chief's Initials _____

h.   Any and all property of the following bankruptcy estates, including funds which now constitute or have constituted funds of the estate:

| Style of case | Location | Case No. |
|---|---|---|
| In Re: Winpar Hospitality Chattanooga, LLC. | U. S. Bankruptcy Court, E.D. Tenn. | 07-11908 |
| Sam Hopkins, Trustee v. Todd Pattison and Mirabilis Ventures, Inc. | U. S. Bankruptcy Court, D. Idaho | 08-08005-JDP |
| In Re: Mirabilis Ventures, Inc. | U. S. Bankruptcy Court, M.D. Fl. | 6:08-bk-04327-KSJ |
| In Re: Hoth Holdings, LLC | U. S. Bankruptcy Court, M.D. Fl. | 6:08-bk-04328-KSJ |
| In Re: AEM, Inc. | U. S. Bankruptcy Court, M.D. Fl. | 6:08-bk-04681 |
| In Re: North American Communications | U. S. Bankruptcy Court, D. Utah | 2:07-bk-24900 |

Section 981(a)(1)(C) provides for the civil forfeiture of any property, real or personal, which constitutes or is derived from proceeds from any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offenses. 18 U.S.C. § 981(a)(1)(C). A "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7), includes offenses listed in 18 U.S.C. § 1961(1) as RICO predicate acts; violations of 18 U.S.C. § 1343 are among the RICO predicate acts. The real and personal properties identified above (including the residential and commercial properties, vehicles, aircraft, seized funds, promissory notes, as well as the corporations and corporate assets) were purchased, or funded, with proceeds from AMODEO's scheme to defraud his clients, as discussed more fully in the factual basis

Defendant's Initials _____    17                    Chief's Initials _____

below, in violation of 18 U.S.C. § 1343. Indeed, with the exception of the disputed alleged commission received by **AMODEO** from Presidion Corporation (see Statement of Facts below), the corporations identified above were funded exclusively with the proceeds of the fraud scheme described below and the scheme was **AMODEO**'s sole source of income. Thus, all of the specific assets identified above are subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), which provides for the criminal forfeiture of any property subject to civil forfeiture.

Although the fraud proceeds were moved through the corporations at the direction of **AMODEO**, those funds remain the proceeds of **AMODEO**'s scheme and are forfeitable in this action by virtue of 21 U.S.C. § 853(c) without regard to the fact that the titled owner may be a corporate entity. Moreover, the corporate entities were not bona fide purchasers for value of the criminal proceeds and, therefore, do not have valid claims, under 21 U.S.C. § 853(n)(6)(B), to the proceeds or assets acquired with the proceeds.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis ~~above~~ _above and below_ provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United

Defendant's Initials _____    Chief's Initials _____

18

States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the conspiracy to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(3), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. The defendant also agrees to sign any documents necessary to effect an interlocutory sale of any of the assets, if the United States deems such a sale to be necessary to maximize the value recovered from the asset(s).

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

Defendant's Initials _____

Chief's Initials _____

The United States further asserts that the real property, including all improvements thereon and appurtenances thereto, located at:

(1)    614 Lake Avenue, Orlando, Florida

(2)    709 Euclid Avenue, Orlando, Florida

was purchased with the proceeds of the conspiracy charged in Count One and are subject to forfeiture. The defendant, however, alleges that the properties were purchased with funds which were monies received as a commission from a consulting contract with Presidion Corporation and are not subject to forfeiture. The parties agree that the Court, as soon as practicable after accepting the defendant's guilty plea, shall determine whether the properties were purchased with criminal proceeds.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that any of the specific property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The defendant also agrees that the United States shall, at its option, be entitled to forfeiture of any property (substitute assets) of the defendant up to the value of money judgment. This Court shall retain jurisdiction to settle any disputes arising from

Defendant's Initials _____

Chief's Initials _____

20

application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

B.    **Standard Terms and Conditions**

    1.    **Restitution, Special Assessment and Fine**

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987) or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

    2.    **Supervised Release**

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from

Defendant's Initials _____

Chief's Initials _____

21

imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    **Sentencing Information**

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

Defendant's Initials _____

Chief's Initials _____

22

4.    **Sentencing Recommendations**

It is understood by the parties that the Court is neither a party to nor

bound by this agreement.  The Court may accept or reject the agreement, or defer a

decision until it has had an opportunity to consider the presentence report prepared by

the United States Probation Office.  The defendant understands and acknowledges that,

although the parties are permitted to make recommendations and present arguments to

the Court, the sentence will be determined solely by the Court, with the assistance of

the United States Probation Office.  Defendant further understands and acknowledges

that any discussions between defendant or defendant's attorney and the attorney or

other agents for the government regarding any recommendations by the government

are not binding on the Court and that, should any recommendations be rejected,

defendant will not be permitted to withdraw defendant's plea pursuant to this plea

agreement.  The government expressly reserves the right to support and defend any

decision that the Court may make with regard to the defendant's sentence, whether or

not such decision is consistent with the government's recommendations contained

herein.

5.    **Defendant's Waiver of Right to Appeal and**

**Right to Collaterally Challenge the Sentence**

The defendant agrees that this Court has jurisdiction and authority to

impose any sentence up to the statutory maximum and expressly waives the right to

appeal defendant's sentence or to challenge it collaterally on any ground, including the

ground that the Court erred in determining the applicable guidelines range pursuant to

Defendant's Initials _____                    Chief's Initials _____

the United States Sentencing Guidelines, except (a) the ground that the sentence

exceeds the defendant's applicable guidelines range <u>as determined by the Court</u>

pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence

exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the

Eighth Amendment to the Constitution; provided, however, that if the government

exercises its right to appeal the sentence imposed, as authorized by Title 18, United

States Code, Section 3742(b), then the defendant is released from his waiver and may

appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

6.    **Middle District of Florida Agreement**

It is further understood that this agreement is limited to the Office of the

United States Attorney for the Middle District of Florida and cannot bind other federal,

state, or local prosecuting authorities, although this office will bring defendant's

cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7.    **Filing of Agreement**

This agreement shall be presented to the Court, in open court or <u>in</u>

<u>camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at

the time of defendant's entry of a plea of guilty pursuant hereto.

8.    **Voluntariness**

The defendant acknowledges that defendant is entering into this

agreement and is pleading guilty freely and voluntarily without reliance upon any

discussions between the attorney for the government and the defendant and

defendant's attorney and without promise of benefit of any kind (other than the

Defendant's Initials _____          24          Chief's Initials _____

concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _____

Chief's Initials _____

9.    **Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

**FACTS**

I.    Introduction

This case involves a web of one public and several private companies, including multiple employee leasing companies, also known as professional employee organizations (PEOs).  The responsibilities of the PEOs included, among other duties, the reporting and paying over of the payroll wages and payroll taxes of the worksite employees.  AMODEO had operated small businesses prior to the time period of the indictment in this case, and was aware that once Federal Insurance Contributions Act ("FICA") and withholding taxes ("trust fund taxes") are collected they are supposed to be held for and paid over to the Internal Revenue Service.  Notwithstanding this knowledge, AMODEO conspired with other members of the conspiracy to divert payroll tax funds paid to the PEOs by the PEO clients and utilize those funds for other purposes.

There were a number of companies directly controlled by AMODEO, including the Sunshine Companies, Professional Benefit Solutions ("PBS"), Paradyme, Inc. ("Paradyme"), Presidion Solutions, Inc. ("PSI"), Quantum Delta Enterprises ("Quantum"), Wellington Capital Group, Inc. ("Wellington") and AQMI Strategy

Defendant's Initials _____                                    Chief's Initials _____

Corporation ("AQMI"). AMODEO had varying degrees of control over a number of additional companies involved in the conspiracy, including Mirabilis Ventures, Inc. ("Mirabilis"), as described more fully below.

II.    AMODEO's purchase of Sunshine Companies from Presidion Solutions, Inc. (PSI)

PSI is a Michigan-based holding company for several PEOs that during the period from 2001 through 2005 provided comprehensive and integrated resource management services, including payroll services, to small and medium sized companies.   Prior to July of 2005, PSI was a wholly owned subsidiary of Presidion Corporation, a publicly traded company, which was later de-listed.

AMODEO did not become involved with PSI until 2004.  Prior to his involvement, PSI had already acquired seven (7) PEOs, which made up PSI's "PEO book of business" (i.e. the contracts PSI had with its PEO clients). In or about May 2001, PSI acquired Sunshine Staff Leasing, Sunshine Companies I, II, III, and IV (collectively referred to as the Sunshine Companies).   Post-acquisition, these entities did business as Presidion Solutions I, II, III, IV, and V, respectively. PSI acquired Paradyme in or about January 2002, which subsequently did business as Presidion Solutions VI. PSI then acquired certain PEO customer contracts from BST, Inc. in or about June 2002. Lastly, PSI acquired PBS in or about January 2005, which subsequently did business as Presidion Solutions VII. With the acquisitions of the Sunshine Companies, Paradyme and PBS, PSI had at least 2,200 clients and approximately 29,700 worksite employees.

Defendant's Initials _____    27    Chief's Initials _____

The clients of the PEOs entered into contracts, or service agreements, with PSI (or its subsidiaries). Initially the clients entered into the agreement with the Sunshine Companies; then later on, the clients either entered into an agreement with Paradyme or PBS. According to the contracts signed by the clients when PSI (or its subsidiaries) started providing services to the clients, PSI became the co-employer of its clients' employees and assumed the liabilities and responsibilities for reporting and paying over to the Internal Revenue Service the payroll wages and the payroll taxes of the worksite employees. At the end of a client's payroll cycle, a client would e-mail, fax or mail the number of hours worked by the worksite employee(s) to PSI. After receiving the information, PSI computed the amount of FICA, Medicare (HITS), Withholding Taxes, Worker's Compensation Insurance, and 401K contributions to be added to the clients' bill, along with PSI's administrative fee. PSI would then e-mail, fax or mail this information back to the clients, who would either direct debit, mail or wire the funds to PSI.

Beginning in July 2004, AMODEO began negotiating with the principals of PSI to assist them in the reduction of their corporate debt, which included unpaid payroll taxes totaling at least $13,000,000.00 (including interest, penalties and taxes), which were accrued by the Sunshine Companies. At the time, the parent corporation of PSI, Presidion Corporation, was preparing for an annual audit. In an attempt to have Presidion Corporation appear more profitable as a publicly traded company, PSI wanted the Sunshine Companies' payroll tax liabilities removed from Presidion Corporation's financial statements.

Defendant's Initials _____

Chief's Initials _____

28

To that end, on October 18, 2004, PSI signed a consulting agreement with AMODEO, as the president of AQMI. The consulting agreement called for AMODEO to provide tax advice to PSI for a non refundable fee in the amount of $150,000.00 and an additional fee of 25% of any tax savings of the company's current payroll tax liability, which at the time, was at least $13,000,000.00 (including interest, penalties and taxes).

AMODEO's plan was to have Wellington, a corporation he controlled, purchase the Sunshine Companies from PSI and thereby relieve PSI's financial statements of the Sunshine Companies' accumulated payroll tax liabilities. On December 1, 2004, AQMI provided a line of credit in the amount of approximately $3,000,000.00 to Wellington. On December 8, 2004, AMODEO, through Wellington agreed to purchase the Sunshine Companies for approximately $500,000.00.

During December 2004, PSI transferred approximately $8.9 million to AQMI. Witnesses for the government who were associated in a management capacity with PSI will testify that they expected AMODEO to use the $8.9 million to remit payments to the Internal Revenue Service in satisfaction of outstanding payroll tax obligations of the Sunshine Companies. AMODEO contends that he and AQMI took the position that for tax purposes all of the funds constituted payment pursuant to the Consulting Agreement. Wellington used a portion of the funds received from AQMI to purchase multiple cashier's checks to complete the purchase of the Sunshine Companies.

AMODEO's purchase of the Sunshine Companies did not include PSI's book of business, which was transferred to Paradyme, a wholly owned subsidiary of PSI. Wellington acquired the Sunshine Companies on or about December 31, 2004 and

Defendant's Initials _____    Chief's Initials _____

29

subsequently dissolved the Sunshine Companies. Since the purchase of the Sunshine Companies by Wellington, AMODEO caused to be paid approximately $3.2 million to the Internal Revenue Service towards the Sunshine Companies' payroll tax liabilities, which currently totals over $37,000,000.00 (including interest, penalties and taxes).

III.    AMODEO's purchase of PSI, Paradyme and PBS

On or about May 18, 2005, AMODEO was again approached by principals of PSI regarding further problems with the company, including a severe shortage of working capital, other liabilities totaling millions of dollars, and potential cancellation of its workers compensation insurance policy. AMODEO and other members of the conspiracy devised a reorganization strategy for the aggregate PSI book of business. In or about July 2005, Wellington, at AMODEO's direction, acquired PSI, and consequently acquired control of PSI's subsidiaries and remaining PEOs, Paradyme and PBS.

Thereafter, between June 2005 and December 2005, AMODEO directed that the payroll taxes collected from the clients not be paid over to the Internal Revenue Service, but instead be used to pay secured creditors (both arm's length third parties and entities AMODEO controlled), critical vendors of PBS and Paradyme, and to purchase commercial and business assets for the benefit of AMODEO and the other co-conspirators. It was Amodeo's "grand plan" to not remit the payroll taxes in order to grow Mirabilis to the point that it could become a publicly trade company. Once that was accomplished, Mirabilis would be able to repay the payroll taxes.

Defendant's Initials _____    Chief's Initials _____

30

Pursuant to this plan, AMODEO directed that funds PBS should have used to pay payroll taxes instead be transferred from a PSI account maintained at Bank of America (the "Ultimate Master account"), which collected the payroll tax funds from PBS, to a PSI account maintained at First Southern Bank (the "Reserve account"). The funds were later disbursed from the Reserve account at AMODEO's direction for purposes unrelated to the payment of payroll tax liabilities to the IRS. From June 10, 2005 until December 31, 2005, AMODEO caused to be transferred approximately $64,600,000.00 to the Reserve account from the Ultimate Master account for the purpose of rehabilitating PSI's book of business, acquiring other businesses and paying operating expenses, which enabled AMODEO, companies he controlled, and other members of the conspiracy to acquire personal assets, such as real estate and automobiles.

IV.    Transfer of Paradyme and PBS business to AEM

In late 2005, negotiations occurred to sell the book of business of Paradyme and PBS to AEM, Inc. ("AEM") effective January 1, 2006. A major purpose of the sale was to shift the apparent responsibility for the payment of the payroll taxes to AEM and its parent company, Mirabilis, a private equity fund, one of the consequences of which was to make it more difficult for the Internal Revenue Service to determine which company was responsible for the payroll taxes. Although the sale was never fully consummated, AEM thereafter had effective operational control over the book of business of Paradyme and PBS. Mirabilis was originally formed by AMODEO in 2004 to buy distressed businesses, and eventually evolved into a business that specialized in acquisitions of

Defendant's Initials _____          31          Chief's Initials _____

and mergers with other businesses in various industries.  By late 2006, Mirabilis had grown to be a conglomerate of approximately 70 companies involved in various industries, including consulting, corporate security, employee leasing and hotel ownership.  Although AMODEO was never an officer, director or employee of Mirabilis, he created Mirabilis, brought in the officers to run the company and funded the company with diverted payroll tax funds that should have been paid over to the Internal Revenue Service.

In most instances, AMODEO exercised or attempted to exercise considerable control over both the long term and short term management of the company.  For example, during a March 21, 2006 Mirabilis Board of Directors meeting attended by AMODEO, he told the Board that they had a fiduciary obligation to him as the company's sole common stock shareholder and senior secured creditor, recommended various changes to the composition of the Board of Directors that were subsequently implemented by the Board, laid out recommended changes in operational procedures that were also implemented by the Board, and proposed future acquisition strategies which were to be funded by cash infusions which he would supply.  The cash infusions made by AMODEO were derived from payroll tax funds.  Mirabilis used these funds to fund acquisitions of other businesses, pay substantial salaries and make investments in businesses in which certain members of the conspiracy held separate interests.

In connection with the anticipated January 2006 purchase by AEM of the Paradyme and PBS book of business, a member of the conspiracy signed a hold harmless agreement on behalf of PSI, promising to pay Mirabilis $50,000,000 by

Defendant's Initials _____    Chief's Initials _____

32

December 31, 2005 in return for Mirabilis' agreement to hold PSI harmless for any subsequent claims against the company, up to a maximum of $70,000,000. This obligation effectively diverted to Mirabilis $50,000,000 of funds owed to the Internal Revenue Service, with the additional advantage of creating a $70,000,000 debt owed by Mirabilis that could be used in negotiating with the Internal Revenue Service for deferment of the payment of the rapidly escalating unpaid trust fund taxes. This was part of and consistent with AMODEO'S overall plan of circumventing the Internal Revenue Service's immediate collection of accrued trust fund tax obligations by transferring collected trust fund taxes from corporation to corporation and concomitantly creating offsetting inter-corporate liabilities that were used to justify nonpayment and to create leverage in ongoing negotiations with the Internal Revenue Service.

    In or about January, 2006, AMODEO requested that a legal memorandum be prepared by the outside law firm of general counsel for Mirabilis on the law applicable to the reporting and payment of payroll taxes to the Internal Revenue Service. On February 2, 2006, a final version of the memorandum was submitted to AMODEO regarding the relationship between current trust fund obligations, after acquired funds and willfulness under I.R.C. Section 6672. The memorandum described in detail the legal obligation to hold payroll tax funds for the Internal Revenue Service and specified civil and criminal penalties (including criminal penalties under Section 7202) for failure to follow the applicable law. AMODEO knew that the memorandum had in fact been completed and admits that he received it, but it is his position that he never read it and never requested that anyone summarize its contents to him. AMODEO submitted the

Defendant's Initials _____        Chief's Initials _____

memorandum, still allegedly unread by him, to the general counsel for Mirabilis immediately upon receiving it and directed that a copy be provided to the Mirabilis Board of Directors. AMODEO also personally delivered a copy of the memorandum to the Internal Revenue Service in July 2006.

Although AMODEO is a former attorney and experienced with debtor-creditor law, in failing to read the memorandum or inquire further into its contents, AMODEO deliberately and consciously tried to avoid learning what specific statutes prohibited his conduct and deliberately closed his eyes to what he had every reason to believe was the fact, i.e., that he was legally prohibited from permitting collected trust fund taxes to be used for any purpose other than the transmission in due course to the Internal Revenue Service. Consequently, AMODEO accepts full responsibility for intentionally and willfully violating 26 U.S.C. Section 7202 by failing to remit payroll taxes collected by PBS to the Internal Revenue Service during quarterly periods in 2006 in which AMODEO was in control of PBS, including the first, second and fourth quarters of 2006 referred to in Counts Seven, Eight and Ten of the Indictment.

V.    Use of AEM to misappropriate PBS' payroll taxes

During 2006, members of the conspiracy used AEM to misappropriate PBS' payroll taxes. During the 2006 year, the funds intended to pay the payroll taxes for PBS were held in a Bank of America account in the name of AEM along with funds to pay the payroll taxes for AEM, which had its own minuscule book of business. Instead of paying the payroll taxes for PBS, AMODEO and members of the conspiracy directed that funds be transferred from the AEM Bank of America account to an account at SunTrust Bank

Defendant's Initials _____

34

Chief's Initials _____

in the name of PSI (the "Capital account"). During 2006, approximately $23,750,000.00 was transferred from the AEM Bank of America account to the SunTrust Capital account. After the funds were transferred to the Capital account, the funds were used by AMODEO and members of the conspiracy to purchase, fund, and grow additional businesses.

In addition to the funds transferred to the Capital account during 2006, funds were also directly transferred from the AEM Bank of America account to companies controlled by AMODEO and members of the conspiracy, such as Common Paymaster Corporation ("CPC"), Nexia Strategy Corporation ("Nexia") and Mirabilis, to fund the companies' operations and to acquire other companies. In December 2006, after the receipt of the grand jury subpoenas, AMODEO knowingly permitted payroll taxes collected on a daily basis from the PEO book of business to be used to fund net payroll and health claims of Mirabilis and its affiliates.

VI.    Total unpaid payroll taxes

It is the position of the government that AMODEO and other members of the conspiracy knowingly failed to remit to the Internal Revenue Service payroll taxes totaling in excess of $181,000,000. However, AMODEO believes that the figure is no higher than $172,000,000. The exact amount will be determined by the Court at sentencing.

VII.    Obstruction of an agency investigation - Count Twenty-Seven

Commencing in early 2005, AMODEO and others were in contact with the Internal Revenue Service concerning the Sunshine Companies' tax liabilities, but

Defendant's Initials _____        Chief's Initials _____

35

withheld information about PBS' tax liabilities from the Internal Revenue Service until February 2006, by means that included the late filing of Forms 941, at which time PBS' payroll tax liabilities exceeded $100,000,000.

On or about June 26, 2006, a co-conspirator advised an Internal Revenue Service revenue officer that payroll tax money not paid to the Internal Revenue Service was used to purchase two other companies, when, in fact, the money was used to purchase, among other things, several companies, cars, a plane and real estate.

On or about August 29, 2006, AMODEO and members of the conspiracy met to conduct a "mock deposition" of AMODEO to prepare him for a meeting with Internal Revenue Service revenue officers.  During a recess in the mock deposition, AMODEO was advised by a co-conspirator that his account might expose them to prosecution for federal offenses. As a result of that conversation, AMODEO subsequently changed his account to conceal material aspects of their activity.  This revised version of his account was communicated to Internal Revenue Service representatives by one or more members of the conspiracy, at AMODEO's direction, in an attempt to obstruct and impede the Internal Revenue Service's investigation of PBS.

10.    **Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____          Chief's Initials _____

11.    **Certification**

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this _22_ day of September, 2008.

ROBERT E. O'NEILL
United States Attorney

By: _____
FRANK L. AMODEO                    I. Randall Gold, AUSA
Defendant                          Deputy Chief, Orlando Division

By: _____
Harrison T. Slaughter, Jr.         Roger Handberg, AUSA
Attorney for Defendant Amodeo      Chief, Orlando Division

Defendant's Initials _____          37          Chief's Initials _____