**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE: MIRABILIS VENTURES, INC.,
Bankruptcy Case No. 6:08-Bk-4327-KSJ
Adversary Case No. 6:08-Ap-222-KSJ

---

**MIRABILIS VENTURES, INC.,**

     **Plaintiff,**

-vs-                 Case No.  6:09-cv-175-Orl-31DAB

**RICHARD E. BERMAN; BERMAN, KEAN**
**& RIGUERA, P.A.; and ELENA**
**WILDERMUTH,**

     **Defendants.**

---

# ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 32) filed by the Defendants and the response (Doc. 46) filed by the Plaintiff, Mirabilis Ventures, Inc. ("Mirabilis").

**I. Background**

This is a professional liability case, involving allegations that Defendant Richard Berman ("Berman"), Defendant Elena Wildermuth ("Wildermuth"), and their firm, Defendant Berman, Kean, & Riguera, P.A. ("BKR"), provided unsound legal advice, resulting in harm to Mirabilis.

According to the allegations of the Second Amended Complaint (Doc. 25), which are accepted as true for purposes of resolving the instant motion, a consulting company known as AQMI Strategy Corporation ("AQMI") was approached in May 2005 by Presidion Corporation ("Presidion"). (Doc. 25 at 5). Presidion sought to reorganize its operations to solve cash-flow

problems among some of its subsidiaries, including Professional Benefits Solutions, Inc. ("PBS"). (Doc. 25 at 5). AQMI proposed a plan – henceforth, the "PBS Plan" – under which a Mirabilis subsidiary known as AEM, Inc. ("AEM") would acquire the subsidiaries' book of business. (Doc. 25 at 6). In addition, pursuant to the plan, PBS would pay certain operating expenses with funds that should have been used to pay federal employment taxes, in the hope that this would allow the business to continue "until it was restored to a position where it could pay all of its outstanding liabilities, including the outstanding tax liabilities". (Doc. 25 at 6).

Some months prior to the formulation of the PBS Plan, Presidion had hired AQMI for consulting work regarding the divestiture and liquidation of a different group of Presidion subsidiaries, known as the Sunshine Companies. (Doc. 25 at 4). Both Presidion and the Sunshine Companies had large outstanding payroll tax liabilities. (Doc. 25 at 4). The strategy AQMI proposed – henceforth, the Sunshine Companies Plan – involved, among other things, liquidating the Sunshine Companies and using the resulting funds to pay creditors, including the IRS. (Doc. 25 at 4). Berman was hired by AQMI to provide legal advice in regard to the Sunshine Companies Plan. (Doc. 25 at 6-7). At some point, Berman and Wildermuth began providing legal advice to Mirabilis as well. (Doc. 25 at 6-9).

In July 2005, AEM and Mirabilis put the PBS Plan into effect. (Doc. 25 at 9). Sometime prior to November 2006, a federal grand jury began investigating the operations of Presidion and Mirabilis. (Doc. 25 at 10). Bad press, criminal convictions, and civil forfeiture proceedings forced Mirabilis to file a voluntary petition for relief in May 2008 in the United States Bankruptcy Court for the Middle District of Florida. (Doc. 25 at 10).

In its Second Amended Complaint, Mirabilis has asserted seven claims.  Mirabilis asserts that the Defendants were negligent (Count I) in failing to notify the company that both the PBS Plan and the Sunshine Companies Plan, as well as Mirabilis' operations, could result in criminal and civil liability for the company, its subsidiaries and related companies.  (Doc. 25 at 11). In Count II, Mirabilis alleges that the Defendants breached their fiduciary duty to the company by failing to advise it that its failure to make sure the payroll taxes were properly paid could result in civil and criminal liability.  (Doc. 25 at 12).  Mirabilis also contends that the Defendants made negligent misrepresentations (Count III) to Mirabilis, its subsidiaries and related companies, and essentially the same allegations are recast as a professional negligence claim against all of the Defendants (Count IV).  The Plaintiff also contends that BKR failed to properly supervise Berman and Wildermuth (Count V).  Finally, the Plaintiff demands an equitable accounting (Count VI) of the funds in BKR's trust accounts, and that the Defendants turn over (Count VII) any of its money that remains in the accounts.

**II.    Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court must view the complaint in the light most favorable to the Plaintiff,. *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto.  FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  The Court will liberally construe the complaint's allegations in the

Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).  In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**III.   Analysis**

The Defendants seek dismissal of the Second Amended Complaint on a number of different bases.

**A.   Inconsistency**

Defendants contend that a number of the exhibits attached to the Second Amended Complaint are inconsistent with its allegations.  Exhibits are considered part of the pleading to which they are attached for all purposes. Fed.R.Civ.P. 10(c).  When attached exhibits contradict the allegations of a pleading, the exhibits govern. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).  However, the exhibits cited by the Defendants do not contradict the allegations of the Second Amended Complaint.  At worst, they may be interpreted in a way that does not support those allegations.

For example, Exhibit L to the Second Amended Complaint is a printout of an email from Paul Glover ("Glover"), the CFO of Mirabilis, to three people including Defendant Berman. Glover reports having read a legal memorandum on payroll-tax liability prepared by Defendant Wildermuth, in which she concludes that the IRS is unlikely to impose liability on Presidion for payroll-tax issues at the Sunshine Companies.  (Doc. 25-3 at 3).  Glover compares the situation at

AEM to the situation described in Wildermuth's memorandum and concludes that it is even less likely for the IRS to impose liability on AEM for the payroll-tax issues at the Sunshine Companies. (Doc. 25-3). According to the Defendants, this email contradicts one of the fundamental bases of the Second Amended Complaint – that the Defendants provided legal advice to Mirabilis on payroll-tax issues – because it shows the Defendants providing advice to Presidion, not Mirabilis. (Doc. 32 at 5-6). However, it is obviously possible for the Defendants to have advised both entities. Establishing that advice was provided to Presidion does not contradict the notion that advice was provided to Mirabilis. Moreover, if it were established that the CFO of Mirabilis sent an email to Berman discussing payroll-tax liability issues – something Exhibit L appears to demonstrate – it would tend to support the assertion that the Defendants provided legal advice to Mirabilis on payroll-tax issues. Standing alone, the document is not enough to establish the point, but Mirabilis need not clear that hurdle yet. At this stage, it is enough that the exhibit does not necessarily contradict that point.[1]

### B.    Failure to State a Cause of Action

The Defendants contend that Mirabilis has failed to allege the essential elements of a legal malpractice claim. In particular, they argue that Mirabilis failed to allege the existence of privity between themselves and the Plaintiff. But the Second Amended Complaint contains allegations,

---

[1]The Defendants also argue that some of the attached exhibits are not complete, and therefore should not be relied upon in assessing the sufficiency of the Second Amended Complaint. But the rule that they cite applies to summary judgments. *See Lugue v. Hercules, Inc.*, 12 F.Supp.2d 1351, 1358 (S.D.Ga. 1997) (stating that documents "which are not authenticated and which are incomplete should not be used for purposes of summary judgment). The Defendants have not cited any authority for applying this standard on a motion to dismiss for failure to state a claim. The Court also notes that the Defendants have not argued that the meaning of the attached exhibits would change in a material way if their missing portions were taken into consideration.

among other things, that Berman was retained by AQMI to provide advice regarding the Sunshine Companies Plan, that he began providing advice to Mirabilis and its subsidiaries on similar matters, and that he served as counsel for Mirabilis.  (Doc. 25 at 6-7).  The Defendants respond that there is no allegation that Berman was retained specifically to provide legal advice to Mirabilis regarding payroll tax issues, but ignore the allegations that Berman actually *did* provide such legal advice, which is sufficient for purposes of the instant motion.

The Defendants also argue that the pleading lacks sufficient allegations of proximate cause.  However, Mirabilis alleges that Berman knew or should have known that the company was relying on his advice when determining whether the PBS Plan should be approved (Doc. 25 at 8), and that Mirabilis board members would have taken corrective steps if the Defendants had advised them that Mirabilis would be responsible for the payroll taxes under the PBS Plan and that the PBS Plan could subject the company to criminal and civil penalties.  For present purposes, that is enough.

**C.     Standing**

According to the Defendants, Mirabilis is improperly seeking to recover damages incurred by other companies.  A review of the Second Amended Complaint shows that although Mirabilis refers to harms suffered by affiliates and subsidiaries, there are no counts in which it is seeking to recover for such harm.  For example, in Count I – the negligence count – Mirabilis alleges that, as a result of Defendants' (alleged) negligence, "Mirabilis, its subsidiaries and related companies have suffered damage to their business, property, as well as its creditors, and accordingly seek compensatory damages."  (Doc. 25 at 11).  However, the *ad damnum* clause of that count seeks only "the amount of principal damages incurred by Mirabilis due to Defendants' actions".  (Doc.

25 at 12). There is no demand for recovery of damages incurred by any other party in that count, or any of the other counts in which damages are sought.

### D.     Negligent Misrepresentation (Count III) and Rule 9(b)

Under Florida law, to recover on a claim of negligent misrepresentation, a plaintiff must establish: (1) a misrepresentation of a material fact; (2) knowledge by the representor as to the truth or falsity of the representation; (3) intent by the representor that the representation induce another to act on it; and (4) injury to the plaintiff as a result of acting in justifiable reliance on the misrepresentation. *C & J Sapp Pub. Co. v. Tandy Corp.*, 585 So. 2d 290, 292 (Fla. 2d DCA 1991). Under Florida law, negligent misrepresentation is considered tantamount to actual fraud. *Ostreyko v. B.C. Morton Organization, Inc.*, 310 So. 2d 316, 318 (Fla. 3d DCA 1975). As such, the stricter pleading requirements of Fed.R.Civ.P. 9(b) apply to the negligent misrepresentation claim. *See Johnson v. Amerus Life Ins. Co.*, 2006 WL 3826774 (S.D.Fla. Dec. 27, 2006) and cases cited therein.

After reviewing the allegations of Count III, the Court finds that Mirabilis has failed to "state with particularity the circumstances constituting fraud or mistake," as required by Rule 9(b). Within the count itself, Mirabilis asserts that the Defendants made "material negligent misrepresentations and omissions described above". (Doc. 25 at 14). However, the remainder of the Second Amended Complaint does not list any such misrepresentations, or describe, with any sort of particularity, any omissions that could rise to the level of a misrepresentation. Count III also fails to assert, in even general terms, that Mirabilis relied on any misrepresentation to its detriment, much less identify the steps taken in reliance and the consequences of doing so. Instead, the Plaintiff simply asserts that it suffered damages "[a]s a direct and proximate result of

the negligent misrepresentations made by Defendants". (Doc. 25 at 14). Elsewhere in the Second Amended Complaint, Mirabilis alleges that certain steps were taken in reliance on the advice of the Defendants, such as "[taking] over the PEO book of business, its financial affairs and the PEO operations." (Doc. 25 at 9). But there are no descriptions of any actions taken in reliance on *misrepresentations* made by the Defendants, or a description of the particular harm resulting from such action. Count III will therefore be dismissed without prejudice.

### E. Negligent supervision

Negligent supervision occurs when "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness and the employer fails to take further action such as investigating, discharge, or reassignment." *Garcia v. Duffy*, 492 So. 2d 435, 438-39 (Fla. 2d DCA 1986). The Defendants contend that Mirabilis has failed to allege facts showing that BKR knew or should have known of problems with Berman or Wildermuth, requiring BKR to take further supervisory action. Mirabilis responds only by pointing out that Berman was a partner in BKR – although this assertion does not appear in the Second Amended Complaint.

Assuming that Berman was a partner during the time at issue here, it is not clear that the relationship between a professional association and a partner gives rise to the same duty to supervise as a traditional employer/employee relationship. Mirabilis has not produced any authority for this proposition, and the Court's research has not uncovered any.[2] Even if a

---

[2]It is difficult to see what purpose such a duty would serve, as the association is already liable for the on-the-job misdeeds of its members and its employees. Florida Statute Section 621.07 provides, in pertinent part, that the professional association "shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, agents,

professional association does have such a duty, the Court has not uncovered any authority for the proposition that a partner's knowledge of his own misbehavior is imputed to the professional association, so as to give rise to the obligation to investigate, discharge, or reassign. And even if the law were to require that a partner's knowledge be imputed to a professional association, it would not establish that BKR knew or should have known of any alleged problems with Wildermuth, because she is not alleged to have been a partner. For these reasons, Count V will be dismissed without prejudice.

### F.   Indispensable parties and other defenses

The remainder of the Defendants' contentions do not warrant extended discussion. The Defendants argue that the Plaintiff has failed to sue certain indispensable parties, such as other professionals that allegedly provided advice to the Plaintiff, and subsidiaries and related companies that allegedly suffered damages. But other than asserting it, the Defendants have made no effort to demonstrate that these parties are indispensable. The Defendants also argue that the Plaintiff's claims are barred by the defenses of imputation, collateral estoppel, and *in pari delicto*. Although such defenses may eventually allow the Defendants to prevail, they rely on facts outside

---

members, managers or employees while they are engaged on behalf of" the professional association in the rendering of professional services.

of the four corners of the Second Amended Complaint and therefore cannot serve as the basis for granting a motion to dismiss.

### IV.     Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 32) is **GRANTED IN PART AND DENIED IN PART**, as follows.  Count III and Count V are **DISMISSED WITHOUT PREJUDICE**.  In all other respects, the motion is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 27, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party