UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re: MIRABILIS VENTURES, INC.
Bankruptcy Case No. 6:08-Bk-4327-KSJ
Adversary Case No. 6:08-Ap-222-KSJ

MIRABILIS VENTURES, INC.,

              Plaintiff,

-vs-                                          Case No. 6:09-cv-175-Orl-31DAB

RICHARD E. BERMAN, BERMAN, KEAN,
& RIGUERA, P.A., and
ELENA WILDERMUTH,

              Defendants.

## THIRD AMENDED COMPLAINT

Plaintiff, Mirabilis Ventures, Inc. ("MVI" or "Mirabilis"), by and through its undersigned counsel, hereby files its Third Amended Complaint, and sues Defendants BERMAN, KEAN & RIGUERA, P.A. ("BKR"), RICHARD E. BERMAN ("Berman"), and ELENA WILDERMUTH ("Wildermuth"), (collectively, "Defendants"), and in support, states as follows:

### I. NATURE OF THE ACTION

This is an action for compensatory damages against the Defendants stemming from their involvement and representation of MVI and its subsidiaries including but not limited to

1

AEM, Inc. ("AEM"). Berman and Wildermuth, as attorney/agents of BKR, provided legal advice and otherwise consulted with Mirabilis regarding the legality and treatment of the acquisition of other entities' payroll tax funds that were to be paid to the IRS as payroll taxes. BKR failed to properly supervise the activities of Berman and Wildermuth. Due to the actions and inactions of the Defendants, Mirabilis sustained damages and is seeking compensation from the Defendants for same.

## II. JURISDICTION AND VENUE

1. The United States Bankruptcy Court, Middle District, Orlando Division, had original subject matter jurisdiction over the original adversary proceedings pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157 because it arose in and was related to a case under Title 11 of the United States Code.

2. By Order entered on October 19, 2009 in the United States District Court for the Middle District of Florida granting Defendants' Motion to Withdraw Reference, the adversary proceeding filed in the United States Bankruptcy Court, Middle District, Orlando Division, Case No. 6:08-Ap-222-KSJ was transferred to the District Court for the Middle District of Florida for all future proceedings.

3. Defendants are subject to the personal jurisdiction of this Court because many of the tortious acts alleged herein occurred in the State of Florida. Furthermore, Defendants are also subject to personal jurisdiction pursuant to 18 U.S.C. §1965(d). Defendant, BKR, is a Florida professional association with its principal place of business in Broward County, Florida.

4. Venue is proper in this district pursuant to 28 U.S.C. §1409, 28 U.S.C.

1391(b), and 18 U.S.C. §1965(c).

5. This is a non-core proceeding as Plaintiff's causes of action are founded in personal injury tort law, pursuant to 28 U.S.C. §157(b)(5).

### III. THE PARTIES AND OTHER RELEVANT ENTITIES

6. Plaintiff, Mirabilis, is a Nevada corporation with its principal place of business located at 341 N. Maitland Ave., Suite 210 in Maitland, Florida.

7. Defendant, BKR, is a full service law firm located in Broward County, Florida and doing business throughout Florida.

8. Defendant, Berman, is a resident of the State of Florida and an attorney licensed to practice law in the State of Florida and at all times material hereto was an agent of BKR. Berman's acts, representations, and omissions alleged herein were made within the course and scope of his agency with BKR. As a result, BKR is liable for all acts, representations, and omissions made by Berman in connection with its representation of MVI, its related companies and its subsidiaries, including AEM, during the term of Berman's employment by BKR.

9. Defendant, Wildermuth, is a resident of the State of Florida and an attorney licensed to practice law in the State of Florida and at all times material hereto was an agent of BKR. Wildermuth's acts, representations, and omissions alleged herein were made within the course and scope of her agency with BKR. As a result, BKR is liable for all acts, representations, and omissions made by Wildermuth in connection with its representation of MVI, its related companies and its subsidiaries, including AEM, during the term of Wildermuth's employment by BKR.

10. All conditions precedent to the bringing of this action have occurred, or their performance has been waived by the Defendants.

## IV. THE SUNSHINE COMPANIES

11. In 2004, Presidion Corporation ("Presidion") entered into a consulting agreement with AQMI Strategy Corporation ("AQMI") to provide consulting work regarding the divestiture and liquidation of certain wholly owned subsidiaries of Presidion.

12. The Presidion subsidiaries are more commonly known as The Sunshine Companies ("Sunshine Companies").[1]

13. The deal was an arms-length transaction and both parties were represented by counsel.

14. During this time, Presidion and the Sunshine Companies had a large amount of outstanding payroll tax liabilities.

15. AQMI's engagement and proposed resolution centered on the deconsolidation, divestiture and liquidation of the Sunshine Companies.

16. AQMI's strategy regarding liquidations involved using the funds resulting from the divestiture to pay creditors, including the Internal Revenue Service ("IRS").

17. The proposed strategy allowed Presidion to deconsolidate its financials and separate itself from the excessive liabilities associated with its subsidiaries, allowing it to continue to conduct business as a going concern ("Sunshine Companies Plan").

## V. THE PRESIDION REORGANIZATION PLAN AND MIRABILIS VENTURES, INC.

---

[1] Consisting of (1) Sunshine Staff Leasing, Inc.; (2) Sunshine Companies II, Inc.; (3) Sunshine Companies III, Inc.; and (4) Sunshine Companies IV, Inc.

18. On October 28, 2004, the entity known as Stellar Industries, Inc. changed its name to Mirabilis Ventures, Inc. At its inception, Mirabilis had only one shareholder (Yaniv Amar) and only one director (Gailie Hartman).

19. Mirabilis was a private equity company, which acquired companies that had a strategic fit into its unique business model. Acquired companies either fit into the four primary specialization categories – real estate, construction, chain store development, and human resources – or they provided necessary goods and services to the core companies.

20. In May, 2005 AQMI was approached again by Presidion regarding further problems with Presidion's remaining professional employer organization ("PEO") operations, particularly Presidion Solutions, Inc. ("PSI") and its wholly-owned PEO operating subsidiaries, Professional Benefit Solutions, Inc. a/k/a Presidion Solutions, VII, Inc. ("PBS") and Paradyme, Inc. ("Paradyme") a/k/a Presidion Solutions, VI, Inc.

21. The problems stemmed from the threatened cancellation of worker's compensation insurance coverage, shortfall of working capital for PEO operations, and a tax liability which had increased to over Three Million Dollars ($3,000,000.00) since January, 2005.

22. Drawing from what appeared to be the success of the previous Sunshine Companies Plan, AQMI proposed a plan of reorganization designed to restore, preserve and maximize the inherent value of Presidion's assets ("PBS Plan").

23. The PBS plan would utilize Mirabilis, and specifically, AEM, to acquire and rehabilitate the Presidion PEO Book of Business.

24. A key element of the reorganization plan called for the interim nonpayment of federal employment taxes by PBS.

25. The collected taxes would then be truthfully reported but not remitted.

26. The collected, yet unpaid, taxes would then be used to fund the PEO operations, particularly paying workers' compensation insurance premiums, reorganize, and to compensate advisors and secured creditors.

27. This would allow the business to continue until it was restored to a position wherein it could pay all of its outstanding liabilities, including the outstanding tax liabilities.

28. In order for the PBS Plan to be accomplished, the Sunshine Plan would also have to be finalized, drawing the two plans together.

## VI. RETENTION AND INVOLVEMENT OF RICHARD BERMAN AND ELENA WILDERMUTH BY MIRABILIS VENTURES, INC. AND ITS SUBSIDIARIES AND THE APPROVAL OF THE PBS PLAN

29. Upon information and belief, Berman and Wildermuth were employed by BKR at all times herein relevant.

30. In 2004 Berman and BKR were retained, upon information and belief by Frank Amodeo of AQMI, to give advice regarding the legality of the Sunshine Companies Plan.

31. On December 21, 2004, drawing upon his knowledge of the common issues of fact and law from the Sunshine Companies Plan among other represented qualifications, Berman began consulting or otherwise advising Mirabilis and its subsidiaries.

32. During this time, Berman began providing legal advice to Mirabilis and its subsidiaries while Berman was employed by BKR. A true and correct copy of a

6

January 4, 2005 memorandum prospectively detailing some of Berman's preliminary tasks and duties under the PBS Plan and Sunshine Companies Plan is attached hereto as Exhibit A. In addition, a true and correct copy of correspondence from Berman regarding the reissuance of stock certificates to Mirabilis in Presidion, and its legality, is attached hereto as Exhibit B.

33. On April 13, 2005 Berman and Wildermuth sent a tax memorandum discussing and advising as to whether the IRS was likely to impose liability for payroll taxes of the Sunshine Companies ("First Tax Memorandum"). A true and correct copy of the First Tax Memorandum is attached hereto as Exhibit C.

34. By this time it was abundantly clear that Berman was representing the interests of Mirabilis in negotiating the PBS Plan and Sunshine Companies Plan. True and correct copies of the meeting minutes and attendance records of several of Presidion's Board of Director's meetings are attached hereto as Exhibit D. Both the minutes and attendance records show that Berman was representing Mirabilis as its counsel at those meetings.

35. Berman, as counsel for Mirabilis, also discussed the tax memorandum with officers of other organizations and corporations. A true and correct copy of correspondence reflecting such discussions is attached hereto as Exhibit E.

36. Berman knew or should have known that Mirabilis relied on the tax memoranda and Berman's advice when determining whether the PBS plan should be approved.

37. Upon information and belief, on or about May 12, 2005 Berman prepared a UCC Financing Statement that provided Mirabilis an interest in personal intangible property belonging to Presidion. A true and correct copy of the UCC Financing Statement is attached

hereto as Exhibit F.

38. On September 3, 2005 Berman began discussing what was labeled as "Extremely Confidential" information regarding FBI investigations of Mirabilis' letter of credit agreement with Presidion. A true and correct copy of correspondence reflecting those discussions is attached hereto as Exhibit G.

39. In December, 2005 Berman became so involved with Mirabilis' operations that he became an officer of Mirabilis. At or about that time he began discussing the intimate details of the audit of Mirabilis. A true and correct copy of documents reflecting those discussions is attached hereto as Exhibit H.

40. In addition, Berman, in representing Mirabilis, and while employed by BKR, attended meetings with the IRS concerning the legality of the PBS Plan.

41. After those meetings, Berman began regular discussions regarding the tax plan and tax memoranda with Mirabilis' officers and Board members. A true and correct copy of correspondence between Berman and Paul Glover, an officer of Mirabilis, and others, is attached hereto as Exhibit I.

42. On July 28, 2005, after receiving advice from Berman, Mirabilis and AEM began managing the PEO book of business, its financial affairs and the PEO operations.

43. In the Spring of 2006, AEM, a MVI subsidiary, purchased the PEO businesses of PSI, but rescinded the sale within the month of acquisition. AEM began managing the PSI PEO businesses for PSI.

44. AEM and Mirabilis took over the PEO book of business with the belief that their actions were legal and proper based on the representations of Berman and other

professionals.

45.     Upon information and belief, and at all times relevant hereto, independent members of the Board of Directors of Mirabilis and/or shareholders of Mirabilis would have taken appropriate remedial actions if the Defendants had disclosed that Mirabilis would be responsible for the subject payroll taxes and that the PBS Plan would subject Mirabilis to possible criminal and civil penalties.

46.     On July 13, 2006 Berman took the initiative to provide "redline" comments and responses to the IRS regarding the legality of the PBS Plan and its effect on Mirabilis and its subsidiaries. A true and correct copy of the email and "redlined" letter are attached hereto as Exhibit J.

47.     On November 2, 2006, while employed by BKR, Wildermuth sent a confidential memorandum to Mirabilis in which the limit of Mirabilis' tax obligation under the PBS Plan was discussed. A true and correct copy of that memorandum is attached hereto as Exhibit K.

48.     Through 2005 and 2006, BKR invoiced and Mirabilis paid to BKR over One Million Dollars ($1,000,000.00) (the "Funds") for legal fees. A true and correct copy of accounting statement and email evidencing payments made by Mirabilis to BKR for such legal fees is attached hereto as Exhibit L.

## V. THE UNITED STATES OF AMERICA'S CIVIL FORFEITURE ACTION AGAINST MIRABILIS

49.     In late November 2006, Mirabilis executives were notified that a federal grand jury investigation had commenced with regard to the operations of Presidion and Mirabilis.

50. Subsequent to this time, the United States of America filed an *in rem* civil forfeiture action against the assets of Mirabilis.

51. By January, 2007 Mirabilis and AEM had laid off all non-key employees, including a number of officers and managers, and had closed a majority of its businesses.

52. This allowed Mirabilis to sustain operations and remain current with its taxes.

53. Unfortunately, news of the federal grand jury investigation and nonpayment of payroll taxes leaked to the press, resulting in several negative articles, which decimated the PEO book of business and destroyed the operations of Mirabilis.

54. On or about May 1, 2007, Mirabilis was forced to liquidate its operations and sold the PEO book of business to O2HR, LLC for approximately Two and One Half Million Dollars ($2,500,000.00).

55. On May 27, 2008, the Debtor filed its voluntary petition for relief with the Middle District of Florida Bankruptcy Court (the "Petition Date")

56. The Chapter 11 filing came primarily as a result of an in rem civil forfeiture action filed by the United States of America against certain assets of Mirabilis, which effectively caused Mirabilis to be unable to pursue claims and litigation against various third parties.

57. In an effort to preserve equity for all of its creditors and other potential creditors, Mirabilis deemed a Chapter 11 liquidation plan as in the best interests of all its creditors.

## VI. COUNT I — PROFESSIONAL NEGLIGENCE (ALL DEFENDANTS)

58. Mirabilis re-alleges and re-states paragraphs 1 through 57 as if fully set forth

herein.

59.     This is a cause of action against Defendants for professional negligence.

60.     At all times material hereto, an attorney-client relationship existed between Mirabilis and the Defendants.

61.     By accepting employment to render legal advice to MVI, Defendants had a duty to use such skill, prudence, and diligence as other attorneys of ordinary skill and capacity commonly possesses and exercise in the performance of the tasks they undertake.

62.     Defendants owed a duty to MVI, its subsidiaries and related companies to exercise reasonable care, skill, and diligence in order to ensure that all of the information obtained and supplied to MVI, in connection with their legal representation, was true and accurate.

63.     As a result of their legal representation of MVI, its subsidiaries and related companies, Defendants knew or should have known that MVI and its entities were relying on their work product, representations, and statements in deciding how to operate and conduct their businesses.

64.     Defendants breached their aforementioned duties and deviated from the applicable standards of professional care and violated Florida's Rules of Professional Conduct by virtue of their conduct described hereinabove, including but not limited to, Defendants failure to advise MVI, its subsidiaries and related companies that the Sunshine Companies Plan, PBS Plan and MVI's operations could result in criminal and civil liability for MVI, its subsidiaries and related companies.

65.     Furthermore, Defendants actions aided and abetted Amodeo in formulating

and carrying out the Sunshine Companies Plan and PBS Plan.

66. As a direct and proximate result of the professional negligence of the Defendants' MVI, its subsidiaries and related companies have suffered damage to their business, property, including an allowed claim in bankruptcy against it in the sum of Two Hundred Million Dollars ($200,000,000), adverse tax consequences, including interest and penalties, incurred legal and expert fees and costs, and accordingly seeks compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) the forfeiture and disgorgement of all payments and benefits received by the Defendants from MVI; (3) an accounting; (4) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (5) awarding court costs; and (6) awarding any other relief this Court deems appropriate.

### VII. <u>COUNT II— BREACH OF FIDUCIARY DUTY<br>(ALL DEFENDANTS)</u>

67. MVI re-alleges and re-states paragraphs 1 through 66 as if fully set forth herein.

68. At all times material hereto, a fiduciary relationship existed between MVI, its subsidiaries and related companies and Defendants, particularly, an attorney-client relationship existed between MVI, its subsidiaries and related companies and Defendants.

69. Defendants each breached their aforementioned fiduciary duties to MVI, its subsidiaries and related companies and deviated from the applicable standards of professional care, by virtue of their conduct described hereinabove, including but not limited

to, Defendants failure to advise MVI, its subsidiaries and related companies that the Sunshine Companies Plan, PBS Plan and MVI's operations could result in criminal and civil liability for MVI, its subsidiaries and related companies.

70. Furthermore, Defendants actions aided and abetted Frank Amodeo in formulating and the implementation of the Sunshine Companies Plan and PBS Plan.

71. As a direct and proximate result of the Defendants' breach of their fiduciary duties, MVI, its subsidiaries and related companies have suffered damage to their business, property, including an allowed claim in bankruptcy against it in the sum of Two Hundred Million Dollars ($200,000,000), adverse tax consequences, including interest and penalties, incurred legal and expert fees and costs, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) the forfeiture and disgorgement of all payments and benefits received by the Defendants from MVI; (3) an accounting; (4) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (5) awarding court costs; and (6) awarding any other relief this Court deems appropriate.

### X. COUNT III— NEGLIGENT SUPERVISION (AGAINST BKR)

72. MVI re-alleges and re-states paragraphs 1 through 71 as if fully set forth herein.

73. This is a cause of action against BKR for the negligent supervision of Berman and Wildermuth.

74. Upon information and belief, at all times relevant herein Berman was a

partner in BKR and Wildermuth an attorney associated with that firm.

75. That BKR billed Mirabilis substantial amounts for legal services and received payment for such legal services rendered by Berman and Wildermuth on behalf of BKR.

76. That BKR knew or should have known the nature, extent and type of legal services purportedly rendered by Berman and Wildermuth to Mirabilis, its subsidiaries and related companies.

77. As a result BKR owed MVI, its subsidiaries and related companies a duty to use reasonable care in supervising the conduct and activities of Berman and Wildermuth in connection with their representation of MVI, its subsidiaries and related companies.

78. BKR breached its duty of reasonable care by negligently failed to properly supervise Berman and Wildermuth to ensure that their conduct and activities were not fraudulent or deceptive and that all of their work product and representations on behalf of MVI were true and accurate, especially concerning the Sunshine Companies Plan and PBS Plan, and the potential civil and criminal consequences of the implementation of those Plans.

79. In addition, BKR breached its duty of reasonable care by failing to supervise the trust accounts of Mirabilis and its related entities.

80. As a direct and proximate result of Defendants' breach of their duty of reasonable care and negligent failure to supervise the activities of Berman and Wildermuth, MVI, its subsidiaries and related companies have suffered damage to their business, property, including an allowed claim in bankruptcy against it in the sum of Two Hundred Million Dollars ($200,000,000), adverse tax consequences, including interest and penalties, incurred legal and expert fees and costs, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendant BKR: (1) awarding the amount of principal damages incurred by MVI due to BKR's actions; (2) the forfeiture and disgorgement of all payments and benefits received by BKR from MVI; (3) an accounting; (4) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (5) awarding court costs; and (6) awarding any other relief this Court deems appropriate.

### X. COUNT IV— ACCOUNTING (ALL DEFENDANTS)

81. MVI re-alleges and re-states paragraphs 1 through 80 as if fully set forth herein.

82. This is a cause of action to compel the Defendants to account for the management and disposition of trust funds.

83. At all times material hereto, a fiduciary relationship existed between Mirabilis, its subsidiaries and related companies and Defendants, particularly, an attorney-client relationship existed between Mirabilis, its subsidiaries and related companies and the Defendants.

84. Defendants managed approximately $25,758,448.00 in escrow funds deposited into BKR's trust account by Mirabilis and related entities during 2005 and 2006.

85. Mirabilis has made multiple requests for a full accounting of the aforementioned trust account deposits, but Defendants have failed and continue to fail to provide same.

86. Upon information and belief, Defendants have dissipated and/or wrongfully utilized such trust account funds.

87.     Irreparable injury will be sustained by Mirabilis, its subsidiaries and related companies if this Court does not order an accounting of the Defendants' use of the aforementioned trust account monies, so that Mirabilis might discover the extent of Defendants' improper conduct and/or recover the assets and the profits made by the Defendants therefrom.

88.     Mirabilis lacks an adequate remedy at law.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) granting an accounting of any and all accounts in Mirabilis' name and/or those of its related entities; (2) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (3) the forfeiture and disgorgement of all payments and benefits received by the Defendants from the use of Mirabilis' and related entities trust funds; (4) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (5) awarding court costs; and (6) awarding any other relief this Court deems appropriate.

## X. COUNT V— CONVERSION (BKR)

89.     MVI re-alleges and re-states paragraphs 1 through 88 as if fully set forth herein.

90.     This is a cause of action against BKR for conversion.

91.     BKR has operated and currently operates a trust account that contains sums of money that belong to Mirabilis (the "Escrow Funds").

92.     BKR is in possession, custody and control of Mirabilis' Escrow Funds and, upon information and belief, has converted same to its own use.

93.     Mirabilis has requested an accounting from BKR regarding the Escrow Funds,

but BKR has failed and continue to fail to provide the same.

94. The Escrow Funds are Mirabilis' property.

95. Mirabilis demands that BKR return the Escrow Funds currently held in its trust account to Mirabilis.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against BKR: (1) granting an accounting of any and all Escrow Funds belonging to Mirabilis; (2) ordering BKR to pay over to Mirabilis all Escrow Funds belonging to Mirabilis; (3) ordering BKR to pay over to Mirabilis all rents, profits and interest derived by BKR from such Escrow Funds; (4) awarding the amount of principal damages incurred by MVI due to BKR's actions; (5) the forfeiture and disgorgement of all payments and benefits received by BKR from the use of Mirabilis' and related entities trust funds; (6) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (7) awarding court costs; and (8) awarding any other relief this Court deems appropriate.

Respectfully submitted this 1st day of February, 2010.

/s/ Robert C. Widman
Robert C. Widman, Esq.
Widmor48@mwk-law.com
Morris & Widman, P.A.
245 N. Tamiami Trail, Suite E
Venice, FL 34285
941-484-0646 (Tel)
941-496-8870 (Fax)
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of February, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF filing system.

                                            s/ Robert C. Widman
                                            Robert C. Widman
                                            Florida Bar No.: 0170014
                                            Attorneys for Plaintiffs
                                            MORRIS & WIDMAN, P.A.
                                            245 N. Tamiami Trail, Ste. E
                                            Venice, FL  34285
                                            Telephone: (941) 484-0646
                                            Facsimile: (941) 496-8870
                                            E-mail address: widmor48@mwk-law.com