UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re: MIRABILIS VENTURES, INC.,       Bankruptcy Case No. 6:08-bk-4327-KSJ
     Adv. Pro. No.  6:08-ap-222-KSJ

         Debtor

_____/

MIRABILIS VENTURES, INC.       Case No.: 6:09-cv-175-Orl-31DAB

         Plaintiff,

v.

RICHARD E. BERMAN, BERMAN, KEAN &
RIGUERA, P.A., ELENA WILDERMUTH,

         Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendants, RICHARD E. BERMAN ("Berman"), BERMAN, KEAN & RIGUERA,

P.A. ("BKR"), and ELENA WILDERMUTH ("Wildermuth") (collectively "Defendants"), move

for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and state:

**I.**     **Motion**

Mirabilis Ventures, Inc. was at the center of Frank Amodeo's ("Amodeo") massive

criminal tax fraud scheme to collect payroll taxes and use them to operate Mirabilis rather than

pay them to the government.  The legal responsibility of both Amodeo and Mirabilis for their

criminal conduct was adjudicated in related criminal proceedings.  The criminal prosecution of

Mirabilis resulted in a criminal Forfeiture Money Judgment, and a conviction which provided for

restitution, determining its joint responsibility with Amodeo for repayment of $200 million in

collected unpaid payroll taxes.  Amodeo, the controlling shareholder of Mirabilis, pled guilty as

the "leader and organizer" of the conspiracy and was convicted and sentenced to 270 months in prison, and ordered to pay restitution of $181,810,518.66.

The essence of this case is an attempt by Mirabilis, a convicted defendant, to shift blame for its criminal conduct to outside professionals based on claims of malpractice and breach of fiduciary duty.[1]  Based on the criminal convictions of Amodeo and Mirabilis, the claims asserted are legally barred because: (1) absent exoneration, a convicted criminal defendant is precluded from suing its attorneys for professional misconduct leading to its conviction; (2) Amodeo's criminal conduct is imputed to Mirabilis and bars recovery; (3) even accepting as true the allegations that Defendants engaged in the alleged wrongdoing (which they expressly deny), Mirabilis, as a convicted defendant, was "at greater or equal fault" thus barring its claims based on the *in pari delicto* doctrine; (4) the claims are barred by collateral estoppel, and (5) to the extent Mirabilis seeks equitable relief, any such claims are barred by the unclean hands defense.[2] Finally, Mirabilis is precluded from obtaining the damages it claims because they are the direct result of Mirabilis's own criminal conduct.

## II.   Memorandum of Law

### A.   Standard for Summary Judgment

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"

---

[1] This is one of several similar cases filed by Mirabilis in the Middle District seeking the same or similar relief from numerous professionals.  *See Mirabilis v. Rachlin Cohen Holtz LLP, et a*l., Case No. 6:09-cv-271; *Mirabilis v. Saxon Gilmore, et al.*, Case No. 6:09-cv-1974; and *Mirabilis v. James Moore & Co.*, Case No. 6:09-cv-176.  In this case, Mirabilis also asserts claims for conversion, for which there is no record evidence, and for an equitable accounting.  Mirabilis also seeks the equitable remedy of disgorgement in each Count of its Fourth Amended Complaint.

[2] *See* Defendants' Answer to Fourth Amended Complaint [D.E. 68] at section II, ¶¶ 1-4.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56); *see also Van Voorhis v. Hillsborough County Bd. of County Comm'rs*, 512 F.3d 1296, 1299 (11th Cir. 2008) (same). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The summary judgment standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**B.     Undisputed Facts Establishing Basis for Summary Judgment**

Amodeo controlled Mirabilis. This issue was conclusively adjudicated in the case of *Mirabilis v. Palaxar Holdings, et al.*, Case No.6:07-cv-1788-JA-GJK, where the Court found that Amodeo "exercised tight control over the affairs of . . . Mirabilis." (*See* August 6, 2010 Order Granting Defendants' Motion for Summary Judgment, D.E. 285, p. 2). Amodeo's control of Mirabilis was also established on at least three other occasions in related cases in the Middle District. First, in the criminal prosecution of Mirabilis, the Court found: "This case is a stale and anemic remnant of the once robust prosecution of Defendant Frank <u>Amodeo and the many corporate Defendants once under his control</u> . . . . In the beginning, the focus was on the individual Defendant <u>Amodeo, who was responsible for the criminal conduct of all of the original corporate Defendants</u>." (*See U.S. v. AEM, Inc., et al.,* Case No. 6:08-cr-231-JA-KRS, Order Granting Defendants' Motion for Court's Consent to Withdraw Plea of Not Guilty and Enter Plea of Nolo Contendere, D.E. 149, p.1) (emphasis supplied).[3] Second, in another case

---

[3] On November 30, 2009, Defendants filed an Unopposed Request for Judicial Notice of the proceedings in *U.S. v. AEM, Inc*. [D.E. 44].

3

against professionals accused of facilitating the criminal conduct of Mirabilis, Amodeo's control was conclusively determined by this Court. "Mirabilis was controlled by Frank Amodeo ('Amodeo'), who used the company and a web of subsidiaries and related companies as vehicles for an enormous tax fraud and money laundering scheme." (*See Mirabilis Ventures, Inc. v. Saxon Gilmore, et al.*, Case No. 6:09-cv-1974-Orl-31DAB, D.E. 33, p. 1) (emphasis supplied).[4] This Court came to the same conclusion in its Order on Appeal from Order Denying Motion to Dismiss Bankruptcy Petition of Mirabilis, stating "Mirabilis was controlled by Frank Amodeo ('Amodeo') who used the company and its subsidiaries as vehicles for an enormous tax fraud and money laundering scheme." (*see In re Mirabilis Ventures, Inc.*, Case No. 6:08-bk-04237-KSJ, D.E. 576, p.1).

Amodeo admitted his criminal responsibility and control of Mirabilis, the company he used to engineer his massive criminal tax fraud, under oath at his Change of Plea hearing:

> **THE COURT**: Sir, in your own words, what is it that you did that may make you guilty of Count 1, the conspiracy count, sir?
> **THE DEFENDANT** (Amodeo): I agreed to transfer funds that came from unpaid payroll taxes.
> **THE COURT**: And you knew that those funds should have been paid to the government?
> **THE DEFENDANT**: Yes, sir.
> **THE COURT**: You knew that they were payroll tax funds?
> **THE DEFENDANT**: I did.
> **THE COURT**: All right. And you did that voluntarily, did you, sir?
> **THE DEFENDANT**: Yes.
> **THE COURT**: No one threatened you, did they?
> **THE DEFENDANT**: No.
> **THE COURT**: No one threatened you or coerced you in any way to do that, sir, did they?
> **THE DEFENDANT**: No.

---

[4] On September 7, 2010, Defendants filed an Unopposed Request for Judicial Notice of the proceedings in *Mirabilis Ventures, Inc. v. Saxon Gilmore*, as well as the proceedings in *In re Mirabilis Ventures, Inc.*, Case No. 6:08-bk-04237-KSJ and *Mirabilis v. Palaxar Holdings, et al*., Case No.6:07-cv-1788-JA-GJK [D.E. 72]. The Court granted the Request on September 8, 2010 [D.E. 73].

4

**THE COURT**: All right. Similarly, with respect to Count 2 - well, I'm sorry, <u>with respect to Counts 7, 8, and 10, which allege failure to collect and remit payroll taxes</u>, again sir, <u>what is it that you did in your own words that may make you guilty of those counts</u>, sir?

**THE DEFENDANT**: <u>I was the owner of a company, which owned a PEO</u>, that allowed a third party to collect the payroll taxes, and <u>I had asked for a memorandum to make sure it was okay to use that money to pay other things</u>. <u>I chose not to read the memorandum when it came in, because I was concerned about the conclusions</u> the memorandum might arrive at. Therefore, <u>I violated a duty to make sure the payroll taxes were paid</u>.

**THE COURT**: <u>You knew that you had that duty</u>, sir?

**THE DEFENDANT**: <u>Yes</u>.

**THE COURT**: Okay. And <u>you willfully violated that duty</u>, did you?

**THE DEFENDANT**: <u>Yes</u>.

**THE COURT**: And again, that's something that you did voluntarily without anyone forcing you to do it, sir?

**THE DEFENDANT**: Yes.

\*     \*     \*     \*     \*     \*     \*

**THE COURT**: Sir, <u>do you want to plead guilty, because you are guilty</u> or is there some other reason?

**THE DEFENDANT**: <u>Because I am guilty</u>, Your Honor.

\*                    \*     \*     \*     \*

**THE COURT**: Do you feel that you have a clear understanding of the decision that you're about to make and the consequences of that decision, sir?

**THE DEFENDANT**:          I do.

**THE COURT**: Sir, then, I'm going to ask you <u>how do you plead with respect to Counts 7, 8, 10, and 27 of the indictment</u>, sir?

**THE DEFENDANT**: <u>Guilty</u>.

**THE COURT**: You plead <u>guilty to each and every count</u>, sir?

**THE DEFENDANT**:          <u>Yes</u>, sir.

**THE COURT**: All right. Are you doing that freely and voluntarily without any coercion or intimidation, sir?

**THE DEFENDANT**:          I am.

*See U.S. v. Amodeo*, Case No. 6:08-cr-176-Orl-28GJK [D.E. 41], excerpts of Change of Plea Hearing Sept. 23, 2008, attached as Exhibit A, pp. 77-81 (emphasis supplied).[5]   Amodeo also affirmed his control of Mirabilis in his Amended Plea Agreement [*U.S. v. Amodeo*, D.E. 38], attached as Exhibit B, stating that "he created Mirabilis, brought in the officers to run the company and funded the company with diverted payroll tax funds," informing the board of

---

[5] Defendants previously requested that this Court take Judicial Notice of the proceedings in *U.S. v. Amodeo*.  Mirabilis did not object. [D.E. 44].

directors that he was the "sole common stock shareholder and senior secured creditor" who funded acquisitions "by cash infusions . . . derived from payroll tax funds." Exhibit B, p. 32.

Nowhere in his sworn testimony does Amodeo claim that he did not know his conduct, on behalf of Mirabilis ("I was the owner of a company [Mirabilis] which owned a PEO . . . "), was illegal because his counsel failed to inform him of that fact. Rather, Amodeo acknowledged that he knew then what Mirabilis now claims it did not - that it is illegal to fail to remit collected payroll taxes to the government. That is the crime to which Amodeo pled guilty and for which he was convicted (and to which Mirabilis pled *nolo contendere* and was also convicted), and for which Mirabilis seeks to blame Defendants. Amodeo's admissions and the adjudication of his control of Mirabilis require that his actions be imputed to Mirabilis.

Even if Defendants' advice fell below the standard of care or was a breach of fiduciary duty because of Defendants' alleged failure to inform Mirabilis that its conduct was illegal or could lead to civil and criminal liability (Comp. ¶¶ 64, 69) (which Defendants expressly deny), it is irrelevant because: (1) the conduct of Mirabilis led to its criminal conviction, and it did not seek or obtain post-conviction relief; and (2) Amodeo's actions are imputed to Mirabilis, and he repeatedly admitted to willfully and intentionally stealing payroll taxes, breaking the chain of causation. Amodeo admitted to knowingly violating Internal Revenue Code section 7202 and, through counsel, acknowledged and admitted his own criminal conduct as the "leader and organizer" of the criminal conspiracy. *See* May 19, 2009 Transcript of Sentencing Hearing, pp. 42-44, excerpts attached as Exhibit C.[6] Amodeo's admitted criminal violations on behalf of the

---

[6] It is well settled in Florida that an attorney acts as an agent for his client and that he can speak and act for his client in those matters necessary or incidental to the accomplishment of the attorney's retention. *See Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So. 2d 963, 965 (Fla. 4th DCA 2002); *Lipsig v. Ramlawi*, 760 So. 2d 170, 186 (Fla. 3d DCA 2000). *See also* Fla. R. Admin. P. 2.505(h) (providing "Attorney as Agent of Client. In all matters concerning the prosecution or defense of any proceeding in the court, the attorney of record shall be the

company he controlled preclude a finding that Defendants caused Mirabilis to fail to remit payroll taxes.[7]   Based on Amodeo's admissions, Mirabilis cannot establish that Defendants' actions caused any damages.

Moreover, in the Mirabilis criminal proceeding, the Court stated that "[t]he Government has established guilt through the plea of Amodeo, and the Government was able to provide a factual basis for the nolo contendere pleas in this case." *U.S. v. AEM, Inc.,* D.E. 149, p.8.  As a result, the Court entered a criminal judgment against Mirabilis.  And the Court adjudicated the charges against Mirabilis in the Forfeiture Money Judgment:  "the Court hereby finds that the United States has established that the defendants obtained at least $200,000,000.00 as the result of the conspiracy to commit wire fraud charged in Count One, and the wire fraud charged in Counts Two through Twenty of the Superseding Indictment, in violation of 18 U.S.C. §§ 371 and 1343." *U.S. v. AEM, Inc., et al.,* D.E. 153 (emphasis supplied).  There is no dispute that Amodeo and Mirabilis are each legally responsible for their criminal conduct.

---

agent of the client . . . ."). Here, statements of Amodeo's counsel during sentencing were made in the scope of his representation at Amodeo's criminal sentencing and are admissible against Mirabilis under Rule 801(d)(2)(A)(C) and (D), Fed. R. Evid.

[7] Although nothing more is required, in addition to Amodeo's express admissions of intentional criminal conduct on behalf of the company, the chain of causation is also broken because both Daniel Myers, CPA (former Vice-President and CFO of Mirabilis), and James Sadrianna (former President, Vice President and director of Mirabilis, a CPA licensed in Florida and New York, and member of the New York Bar), each admitted that they knew the rules regarding the collection, reporting, and remittance of payroll taxes, precluding the possibility that Defendants' alleged failure to advise the company of its exposure to criminal or civil liability caused Mirabilis to be criminally charged and convicted. *See* Daniel Myers Depo, pp. 1-10, 14-15, 20-25, 28-44, 56-57, 86-95, 166-168, 172; James Sadrianna's Depo, pp. 1-34, 109-115, 118-119, 129-133, 142-145, 155-162, 171-175, 224-226, attached as Composite Exhibits D and E.  When asked about their own knowledge of the massive criminal tax fraud, each of them invoked their Fifth Amendment rights.  Ex. D, pp. 45-49, 53-56, 64-78, 99-100, 103-107, 110-111,  117, 122-126, 138-141, 146, 156-157, 169-172, 174-175, 178-180, 200-211, 222-226; Ex. E, pp. 106-107, 226-227, 247-250. Summary Judgment may not be predicated exclusively on adverse inference based on corporate representatives invoking the Fifth Amendment, but the Court has discretion to consider same in conjunction with other evidence of record. *S.E.C. v. Monterosso,* --F.Supp.2d --, 2010 WL 3833845, *7 (S.D. Fla. September 28, 2010); Cole v. American Capital Partners Ltd., Inc., 2008 WL 2986444, *5-6 (S.D. Fla. 2008) (holding court may consider on summary judgment adverse inference against corporate employer based on former officers invoking Fifth Amendment as to conduct while in scope of employment).

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

The undisputed facts establish as a matter of law that this action is barred based on the conviction of Mirabilis, and on the defenses of imputation, *in pari delicto*, and collateral estoppel. Additionally, Plaintiff's equitable claims for accounting, and for disgorgement (which Mirabilis pleads in each Count) are barred by the unclean hands doctrine. Finally, Mirabilis is legally prohibited from recovering the damages it is claiming in this case.

### C.   Legal Argument

#### 1.   Absent exoneration, the conviction of Mirabilis bars its claims

Defendants are entitled to summary judgment because Mirabilis was not exonerated. *Steele v. Kehoe*, 747 So. 2d 931, 933 (Fla. 1999). The June 17, 2010 Order Granting Defendants' Motion to Enter Plea of Nolo Contendere in *U.S. v. AEM, Inc.*, and the resulting Forfeiture Money Judgment dated July 2, 2010 and Criminal Judgment dated July 27, 2010, determined the criminal liability of Mirabilis. *U.S. v. AEM, Inc*., D.E. 149, 153, 158, copies attached as Exhibits F, G and H. Mirabilis has been sentenced to re-pay $200 million jointly and severally with Amodeo based on its joint and several criminal responsibility with Amodeo for failing to remit payroll taxes. *U.S. v. AEM, Inc.,* D.E. 153, attached as Exhibit G, 158, Exhibit H.

*Steele* is the landmark Florida case on legal malpractice claims by convicted criminal defendants. In *Steele*, the Florida Supreme Court expressly held that a "convicted criminal defendant must obtain appellate or post-conviction relief as a precondition to maintaining a legal malpractice action." *Steele*, 747 So. 2d at 933. The *Steele* Court reasoned that "without obtaining relief from the conviction or sentence, the criminal defendant's own actions must be presumed to be the proximate cause of the injury." *Id. See also Orr v. Black & Furci, P.A.*, 876 F. Supp. 1270 (M.D. Fla. 1995) (holding appellate or post-conviction relief is a prerequisite to malpractice claim by convicted defendant); *Rowe v. Schreiber*, 725 So. 2d 1245 (Fla. 4th DCA

1999), *aff'd and approved of*, 814 So. 2d 396 (Fla. 2002) (same); *Cira v. Dillinger*, 903 So. 2d 367, 372 (Fla. 2d DCA 2005) (affirming dismissal of legal malpractice action where client failed to demonstrate that criminal case against him was finally disposed of in his favor). The adjudicated criminal acts of Mirabilis break the chain of causation.

    *Steele* involved a claim against a criminal defense attorney, while this case involves claims against civil lawyers, a distinction without a difference.  The result here should be no different. It is the criminal conduct of Mirabilis and its controlling shareholder, Amodeo, that placed it in the predicament of answering for that conduct. Although no Florida case has addressed this issue in the context of a suit against civil lawyers, courts in other states have applied the reasoning of *Steele* to professional liability claims against civil lawyers. *See Butler v. Mooers*, 771 A.2d 1034 (Me. 2001) (reversing denial of attorney's motion for summary judgment in legal malpractice action and holding that former client's guilty plea in criminal action and acknowledgement that he acted knowingly and willfully precluded a finding that his criminal conduct was caused by attorney's advice); *Allen v. Martin*, 203 P.3d 546, 562 (Colo. App. 2008) (affirming entry of summary judgment for attorneys in legal malpractice action based on collateral estoppel, holding former client's guilty plea had preclusive effect in civil case).

    Mirabilis has not been exonerated. The criminal conspiracy between Mirabilis and Amodeo - as established by Amodeo's admissions, the two convictions, the forfeiture judgment and the determination of joint responsibility between Mirabilis and Amodeo - breaks the chain of causation required to establish civil liability against Defendants.

    The claim of Mirabilis is also directly contrary to its principal's sworn admissions under oath.  Mirabilis cannot legally impose civil liability on others for its own criminal conduct. And the damages sought – reimbursement for a criminal forfeiture and restitution judgment for $200

million - arise as a direct result of a Judgment in a Criminal Case and a Forfeiture Money Judgment in federal court. Mirabilis's claims are expressly contrary to the conduct for which it was convicted, and it is prohibited from recovering absent relief from the conviction.

### 2.    Imputation

The imputation defense also bars the claims asserted by Mirabilis.  A corporation's claims against a third party are barred where a corporate agent's fraud benefitted the corporation because the fraud is imputed to the corporation.  In *Seidman & Seidman v. Gee*, 625 So. 2d 1 (Fla. 3d DCA 1992), a corporation sued its accounting firm for malpractice based on an alleged negligent audit of the company.  The Third District reversed a judgment for the corporation, holding, "Where it is shown, without dispute, that a corporate officer's fraud intended to and did benefit the corporation, to the detriment of outsiders, the fraud is imputed to the corporation and is an absolute defense to the corporation's action against its accounting firm for negligent failure to discover the fraud." *Id.* at 3.

Amodeo, who controlled Mirabilis,[8] has been convicted of failing to remit nearly $200 million in collected payroll taxes for the benefit of himself and the company. The conviction was based on his guilty plea and related admissions that he diverted payroll tax funds to PEOs he controlled, directed all companies involved, directed payroll taxes not be paid to the IRS from 2005 through  2006, directed payroll taxes for PBS to be transferred to an account opened for the purpose of concealing the source of the funds from the IRS and others, directed the disbursement of funds, and that he used the diverted taxes for the benefit of Mirabilis, one of the companies he

---

[8] The Order Granting Summary Judgment in the *Palaxar* case is sufficiently final to have preclusive effect. *See Christo v. Padgett*, 223 F.3d 1324, 1339 and n.47 (11th Cir. 2000); *see also Pincus v. Law Offices of Erskine & Fleisher*, 617 F. Supp. 2d 1265, 1269 (S.D. Fla. 2009).  This Court should also follow that decision based on intra-court comity. *U.S. v. Anaya*, 509 F. Supp. 289, 294 (S.D. Fla. 1980) (the intra-court comity doctrine "establishes a general rule that, absent unusual or exceptional circumstances, judges of coordinate jurisdiction within a jurisdiction should follow brethren judges' rulings.").

controlled. *See* Ex. B, pp. 31-5, and  Indictment, *U.S. v. Amodeo*, Count I,¶¶ 12-13, attached as Exhibit I.   Amodeo's guilty plea necessarily admitted the averments in the indictment.  *See Newalk v. U.S.*, 254 F.2d 869, 870 (5th Cir. 1958) ("A plea of guilty admits all the averments of an indictment.").[9]   Amodeo's express admissions of these facts unequivocally establishes his control of Mirabilis and his willful criminal conduct in failing to remit the payroll tax funds.

Several courts have concluded that Amodeo controlled Mirabilis, and it benefitted from his scheme to steal payroll taxes, hence the criminal forfeiture judgment requiring joint repayment of the collected unpaid payroll taxes.   Mirabilis is collaterally estopped from re-litigating the issue of Amodeo's control. *Opteum Fin. Servs. LLC v. Kolbe*, 2010 WL 3766470, *5 (M.D. Fla. Sept. 22, 2010) (stating, "[c]ollateral estoppel precludes a party from relitigating an issue of fact or law that was fully litigated in a previous action."). The imputation doctrine applies to corporate agents acting within the course and scope of their agency. Amodeo's actions are imputed to Mirabilis as the principal beneficiary of his conduct. His "tight control over the affairs of . . . Mirabilis" (to quote this Court's *Palaxar* Summary Judgment Order) makes this case indistinguishable from *Seidman*.

Additionally, the fact that the fraud ultimately may have resulted in bankruptcy for Mirabilis is of no effect here. The Court in *Seidman* addressed this exact inquiry, quoting from *Security America Corp. v. Schacht,* No. 82-C-2132, (N.D.Ill.1983): "'It is the short-term benefit or detriment to Security America that is important. Whether liability ultimately may fall on Security America, once the fraud has been unmasked, is not the relevant inquiry.'"  *Seidman*, 625 So. 2d at 3 (quoting *Schacht*). Mirabilis received the benefit of Amodeo's admitted

---

[9] In *Bonner v. City of Prichard, Ala*., 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

wrongdoing.  It is barred from asserting claims based on its own illegal conduct, and that of Amodeo.

### 3.    *In Pari Delicto*

Mirabilis's claims are also barred by the doctrine of *in pari delicto*. The essence of its allegations is not just that it received incorrect or improper legal advice, but that Defendants allegedly knew and approved of the illegal scheme to defraud the government and steal payroll taxes, and assisted in carrying it out. (Comp. ¶¶ 30-6, 39-42, 44-7, 65, 70).  Defendants expressly deny these allegations, but, along with the Mirabilis and Amodeo convictions, they establish the *in pari delicto* defense.

"*In pari delicto* means in equal fault. The phrase appears in the legal maxim: Where both parties are equally in the wrong, the position of the defendant is the stronger. *In pari delicto* refers to the plaintiff's participation in the same wrongdoing as the defendant." *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1044 (Fla. 2d DCA 2007)(citations and quotations omitted). "Broadly speaking, the defense prohibits plaintiffs from recovering damages resulting from their own wrongdoing." *Id.* (quoting *Nisselson v. Lernout*, 469 F.3d 143, 151 (1st Cir. 2006)).

A Delaware court thoroughly analyzed the *in pari delicto* defense in *American International Group, Inc. v. Greenberg*, 976 A.2d 872 (Del. Ch. 2009). In *Greenberg*, the issue was "to what extent may a corporation like AIG recover from its co-conspirators for the damage the corporation suffered due to its own illegal conduct?" *Id.* at 876. The court held that *in pari delicto* barred the suit against the defendants stating that, "[I]n this context there is no societal interest in making sure that each party gets its 'fair' share of the conspirators' societally unfair bargain." *Id.* at 877. *See also Turner v. Anderson*, 704 So. 2d 748, 752 (Fla. 4th DCA

1998)(affirming summary judgment in favor of attorneys on ground that client's claim for legal malpractice was barred based on *in pari delicto* defense where client had sophisticated background and admitted that he knew what he was doing in committing perjury); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150-52 (11th Cir. 2006) (holding that the *in pari delicto* defense is available against a trustee in a bankruptcy proceeding and precluding a sham company from recovery based on the *in pari delicto* defense where the company's main objective was to perpetrate fraud); *Kirschner v. KPMG LLP*, 2010 WL 4116609 (N.Y. Oct. 21, 2010) (expressly limiting application of the adverse interest exception to the imputation doctrine to circumstances where the corporate agent's actions are entirely opposed to the corporation's own interests, and holding that the *in pari delicto* doctrine barred derivative action against an independent auditor because the agent's actions were not entirely adverse to the corporation); *see also Baena v. KPMG, LLP*, 453 F.3d 1 (1st Cir. 2006)(affirming dismissal of accounting malpractice action alleging accountant participated in company's fraud, had access to company's financial records, and failed to warn independent directors of scheme, holding that *in pari delicto* doctrine barred  company's claims).

Additionally, many courts find that where the plaintiff in a subsequent civil action committed an intentional wrong, *in pari delicto* bars a claim against the plaintiff's professional for failing to advise of the consequences of that wrong.  *See In re Gosman*, 382 B.R. 826, 838 (S.D. Fla. 2007)(affirming dismissal of professional malpractice claim in adversary proceeding by trustee against debtor's attorney where debtor acted with intent to defraud creditors); *see also Choquette v. Isacoff*, 836 N.E.2d 329, 334-35 (Mass. App. Ct. 2005) (affirming summary judgment in favor of attorney in action by client for negligence and misrepresentation where client knowingly gave false information on bankruptcy schedules). Mirabilis was convicted of

engaging in criminal conduct and it is prohibited from profiting from its own wrongdoing. *See In re Parmalat Sec. Litig*., 659 F. Supp. 2d 504, 521 (S.D.N.Y. 2009) (barring claim by corporation in reorganization proceedings against outside auditor and bank where corporation intentionally concocted massive fraud creating the appearance of financial health, and stating that in determining whether an agent's action should be imputed to the corporation, the critical determination should be "while the theft from the company of even a pencil is an act solely for the benefit of the employee, the raising of capital for a corporation is part of the corporate business.  That is so despite the fact that the financing ultimately provides the money to buy the pencil that the employee then steals.")[10]; *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 454 (7th Cir. 1982) (holding that jury instruction stating company could not recover against auditors based on the company agent's own fraudulent conduct was proper where agents were using the company as an "engine of theft").

The Mirabilis conviction establishes the *in pari delicto* defense, because the facts underlying the nolo contendere plea and the resulting conviction are admissible for this purpose. *See U.S. v. Wyatt*, 762 F.2d 908, 911 (11th Cir. 1985) (holding that a nolo contendere plea does not insulate the facts underlying it from admissibility under Fed. R. Evid. 404(b))*; see also U.S. v. Adedoyin*, 369 F.3d 337, 343-44 (3d Cir. 2004) (Fed. R. Evid. 410 does not prohibit the admission of a conviction on a plea of nolo contendere as opposed to the plea itself, because the plea "has the same legal consequences as a plea of guilty and results in a conviction"); *Burrell v. U.S.*, 2002 WL 31051594, * 3, n. 3 (E.D.N.Y. Aug. 19, 2002) (a conviction based upon a nolo plea is a final adjudication, and thus "the admissibility and the collateral consequences of the conviction are not determined by Rule 410").  The Forfeiture Money Judgment punctuates this

---

[10] This is exactly what Amodeo did with Mirabilis. *See* Exhibits A, B, C, and I.

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

conclusion with the Court finding "that the United States has established that the defendants obtained at least $200,000,000.00 as the result of" the criminal conspiracy charged in Counts One through Twenty of the Mirabilis Indictment.  The criminal acts of Mirabilis bar this action.

Moreover, the criminal conduct of Amodeo has also been determined based on his plea and conviction, and his conduct is imputed to the company.  His admitted criminal conduct for the benefit of Mirabilis, provides an additional basis for the *in pari delicto* defense.

Allowing Mirabilis to pursue this suit in light of Amodeo's plea and conviction, and the criminal conviction of Mirabilis itself, would turn the public policy of Florida (and all states) on its head, allowing two convicted felons to use the courts to profit from the criminal misconduct which forms the foundation of this action.  "[N]o public policy should allow appellant to recover damages as a result of engaging in criminal conduct such as occurred in this case." *Turner,* 704 So. 2d at 751. Public policy mandates rejection of Mirabilis's claims.

### 4.    Collateral Estoppel

#### a.    Collateral Estoppel Law

Mirabilis's no contest plea and conviction, and the related Forfeiture Money Judgment, have the same legal effect and consequence as Amodeo's conviction. Mirabilis is precluded from blaming Defendants for damages resulting from its intentional criminal acts and conviction.

The preclusive effect of Mirabilis's conviction and criminal forfeiture judgment is governed by federal law. Federal law does not require identity of parties for purposes of collateral estoppel. *Parklane Hosiery Co., Inc.   v. Shore*, 439 U.S. 322, 328 (1979). *See also Agripost, Inc. v. Miami-Dade County, ex. rel. Manager*, 195 F.3d 1225, 1230 n.11(11th Cir. 1999) (federal law governing collateral estoppel does not require identity of parties). "Collateral estoppel bars a defendant who is convicted in a criminal trial from contesting this conviction in a

15

subsequent civil action with respect to issues necessarily decided in the criminal trial." *U.S. v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005). "Collateral estoppel applies where the '(1) the issue was identical in both the prior and current action; (2) the issue was actually litigated in the prior action; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.'" *Dennis v. U.S. Bureau of Prisons,* 325 F. App'x 744, 747 (11th Cir. 2009) (quoting *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003)). Collateral estoppel "is grounded on the premise that 'once an issue has been resolved in a prior proceeding, there is no further fact-finding function to be performed.'" *Murray v. Alaska Airlines, Inc.,* 237 P.3d 565, 566 (Cal. 2010)(quoting *Parklane Hosiery*, 439 U.S. at 336 n.23). "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery*, 439 U.S. at 326. Collateral estoppel is also referred to as issue preclusion. *Burstein v. Rumball*, 297 F. App'x 918, 920 (11th Cir. 2008).

Many federal courts have held that former defendants were precluded from denying they knowingly and willfully violated the law based on guilty pleas and admissions in criminal cases. *See e.g., In re Edgewater Med. Ctr.*, 332 B.R. 166, 174 (Bankr. N.D. Ill. 2005) (holding that defendants were estopped from denying they knowingly and willfully executed a scheme to commit Medicare fraud where they entered a guilty plea in a criminal proceeding which required admission of knowing and willful conduct); *Johnson v. Sawyer*, 47 F.3d 716 (5th Cir. 1995) (holding that taxpayer who was convicted, pursuant to a guilty plea, of knowingly and willfully attempting to evade taxes by filing false income tax returns was collaterally estopped from

claiming in subsequent civil litigation that he was unaware that items on tax returns were false and fraudulent); *In re Raiford*, 695 F.2d 521 (11th Cir. 1983)(holding that debtor's guilty plea to bankruptcy crime and subsequent conviction collaterally estopped him from relitigating factual issues in common between criminal and bankruptcy matters). The same premise holds true where a defendant is convicted based on a *nolo contendere* plea, as set forth below.

### b.  Preclusive Effect of Criminal Proceedings for Collateral Estoppel

The Forfeiture Money Judgment estops Mirabilis from contesting the findings of the Court regarding its criminal conduct. *U.S. v. Weiss*, 467 F.3d 1300, 1308-10 (11th Cir. 2006) (upholding collateral estoppel effect of criminal forfeiture order).  And convictions based on no contest pleas have preclusive effect where the convicted defendant becomes the civil plaintiff. The preclusive effect of no contest pleas was determined in *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir.1988), which is directly on point.  *Walker* expressly held that a conviction based on a no contest plea has collateral estoppel effect in subsequent civil litigation in which the criminal defendant is the civil plaintiff, as Mirabilis is here. *Walker* dealt with a criminal defendant's section 1983 claims against the officers who arrested him. The Court in *Walker* determined that Federal Rule of Evidence 410 was not meant to prohibit the use of a *nolo contendere* plea against the pleader in a subsequent civil action <u>in which he is the plaintiff</u>, stating:

> We find a material difference between using the nolo contendere plea to subject a former criminal defendant to subsequent civil or criminal liability and using the plea as a defense against those submitting a plea interpreted to be an admission which would preclude liability. Rule 410 was intended to protect a criminal defendant's use of the nolo contendere plea to defend himself from future civil *liability*. We decline to interpret the rule so as to allow the former defendants to use the plea offensively, in order to obtain damages, after having admitted facts which would indicate no civil liability on the part of the arresting police.

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

*Id.* at 143 (emphasis in original). *Walker* was followed in *Morrison v. Board of Trustees of Green Tp.*, 529 F. Supp. 2d 807, 818-19 (S.D. Ohio 2007); *Daubenmire v. City of Columbus*, 452 F. Supp. 2d 794, 807 (S.D. Ohio 2006), *reversed in part on other grounds by* 507 F.3d 383 (6th Cir. 2007); and *Shelton v. City of Taylor*, 92 F. App'x 178, 183 (6th Cir. 2004).

A number of courts have followed *Walker*. *Brown v. Theos*, 550 S.E.2d 304 (S.C. 2001), a legal malpractice case, involved a criminal defendant, who pled no contest to trafficking and distribution of cocaine. He sued his attorneys for legal malpractice alleging but for their negligent representation he would not have been convicted, through a no contest plea or otherwise. The trial court dismissed the case because Brown's no contest plea collaterally estopped him from suing his attorneys. On appeal to the South Carolina Supreme Court, the Court affirmed, stating, "In the context of a legal malpractice case, we find a claimant's plea of no contest to the same charges (or charges arising from the same conduct) should operate as a bar to a legal malpractice action against the attorney who originally represented the claimant." *Id.* at 306. The Court cited *Walker* stating:

> Some Federal courts have held that a plea of nolo contendere in a state criminal action may have collateral estoppel effect in a later federal civil action brought by the criminal defendant because the defendant in the criminal action had a reasonable and fair opportunity to litigate the criminal charges, and because the nolo plea constituted an admission of the truth of the facts underlying the criminal charge.

*Id.* at 307, n.1.[11]

Similarly, in *Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1220-21 (10th Cir. 2000), the Tenth Circuit followed *Walker*, finding that a criminal defendant's *nolo contendere* plea was admissible in a subsequent civil proceeding in which he or she is the plaintiff. The

---

[11] In reaching this conclusion the Court relied on SCRE 410, which mirrors the current version of FRE 410.

Court found, as the Court in *Walker* did, that the *nolo contendere* plea was not being used "against the defendant" within the meaning of Rule 410 (to establish liability against the criminal defendant). And, in *Oman v. Davis School Dist.*, 2004 WL 724447 (D. Utah 2004), the Court interpreted Rule 410 to permit the use of no contest pleas against criminal defendants as plaintiffs in subsequent civil litigation.

Although this appears to be an issue of first impression within the Eleventh Circuit, the Florida Fifth District Court of Appeal has also addressed this issue, interpreting Rule 410 to permit the introduction of no contest pleas in subsequent civil litigation brought by the criminal defendant. In *Behm v. Campbell*, 925 So. 2d 1070 (Fla. 5th DCA 2006), Karl Behm pled no contest to resisting arrest without violence. He and his wife then sued the Sheriff and three deputies for battery, false arrest, and trespass based on the same incident involving the criminal case. Both sides moved for summary judgment and the trial court granted the defendants' motion.  The Fifth District affirmed, and analyzed Rule 410 in the context of its Florida counterpart, section 90.410, Florida Statutes. The Court stated, "Section 90.410 seems intended to protect the criminal defendant who pleads no contest from future <u>liability</u>. It does not appear to us that it was intended to shield a defendant from his own actions in entering a no contest plea in a criminal setting and then repudiating that declaration in a civil setting." *Id.* at 1075 (emphasis supplied).  The court relied on *Walker* as well as *Alatraqchi v. City and County of San Francisco*, 2001 WL 637429 (N.D.Cal. May 30, 2001) (holding that Rule 410 does not prohibit the use of a no contest plea against a civil plaintiff bringing a section 1983 action), and *Delong v. State ex rel. Oklahoma Dept. of Public Safety*, 956 P.2d 937 (Okla.Civ.App.1998) (holding that no contest plea was admissible against plaintiff in action for false arrest).

19

Unlike Mirabilis, which is pursuing affirmative claims, cases following the general rule that no contest pleas are inadmissible under Rule 410(2), Fed. R. Evid., involve former criminal defendants as civil <u>defendants</u>. *See Johnson v. Sawyer,* 47 F.3d 716 (5th Cir. 1995) (taxpayer filed Federal Tort Claims Act Case for wrongful disclosure of income tax information in connection with criminal prosecution); *Blohm v. C.I.R.*, 994 F.2d 1542 (11th Cir. 1993); *In re Raiford,* 695 F.2d 521 (11th Cir. 1983).  This is not Mirabilis.[12]   While a no contest plea would preclude the use of estoppel to establish liability <u>against</u> Mirabilis as a <u>defendant</u> in a civil case, the prevailing law holds that a no contest plea and conviction collaterally estops a criminal defendant from pursuing <u>affirmative</u> civil claims against third parties based on the facts giving rise to the plea and conviction.

### c.    All of the Elements of Collateral Estoppel are Met

All of the elements for collateral estoppel are met. First, the issue in question is identical in both the prior and current action – Mirabilis's criminal culpability for the actions for which it is now attempting to blame Defendants. Just as in *Walker*, *Behm*, and *Brown*, this issue has been finally litigated and adjudicated in the Mirabilis's criminal case, in which the Court determined that there were sufficient facts established by the United States to support the Forfeiture Money Judgement, and acceptance of the *nolo contendere* plea on which Mirabilis was convicted, and which formed the basis for the criminal sentence requiring Mirabilis to repay the collected unpaid payroll taxes jointly with Amodeo. Mirabilis's criminal culpability has been fully and finally decided.  Mirabilis cannot relitigate this issue here.

---

[12] Both Federal Circuit Courts addressing this issue held that a no contest plea was admissible in a civil proceeding where the criminal defendant became a plaintiff seeking affirmative relief. However, several lower federal courts and state courts have disagreed and distinguished *Walker. See Karttunen v. Clark,*  2007 WL 2902872 (E.D. Mich. 2007); *Lichon v. American Universal Ins. Co.*, 459 N.W.2d 288, 296 n.13 (Mich. 1990); *Levin v. State Farm Fire & Casualty Co.,* 735 F. Supp. 236 (E.D. Mich. 1990).

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

Second, as in *Walker*, *Behm*, and *Brown*, the issue of Mirabilis's criminal conduct was actually litigated in the criminal trial through the criminal forfeiture process, and on its *nolo contendere* plea agreement and conviction. Third, the determination of the issue – Mirabilis's criminal responsibility - was critical and necessary to the judgment and sentence entered in the criminal case, including both the forfeiture and restitution ordered by the court. *See Irvin v. U.S.*, 2009 WL 1579789 (11th Cir. 2009)(holding that collateral estoppel applied where district court in earlier proceeding made determination that it did not have subject matter jurisdiction and that determination was critical and necessary to that suit). Finally, Mirabilis had a full and fair opportunity to litigate the issues in the earlier proceedings as it was the defendant and represented by counsel.

> **5.    To the extent Plaintiff seeks equitable relief, its claims are barred by the doctrine of unclean hands**

Mirabilis seeks disgorgement, an equitable remedy, in each Count of its Complaint. *See In re Wiand*, 2007 WL 963162, at *15 (M.D. Fla. Jan. 12, 2007) ("Disgorgement is an equitable remedy") (quotations omitted). Additionally, Plaintiff has asserted a claim for an accounting which is equitable in nature. Comp. Count IV. The claims for an accounting and disgorgement are subject to equitable defenses - including unclean hands. *See generally Monks v. Smith*, 609 So. 2d 740, 743 (Fla. 1st DCA 1992) ("[U]nclean hands is an equitable defense.").

The equitable defense of unclean hands has been recognized in Florida for over fifty years.  Intentional criminal conduct is more than sufficient to establish the defense as a matter of law.  "[O]ne who comes into equity must come with clean hands else all relief will be denied him regardless of the merit of his claim. It is not essential that the act be a crime; it is enough that it be condemned by honest and reasonable men." *Roberts v. Roberts*, 84 So. 2d 717, 720 (Fla.

1956) (emphasis supplied). "Unclean hands may be asserted by a defendant who claims that the plaintiff acted toward a third party with unclean hands with respect to the matter in litigation." *Quality Roof Sevs., Inc. v. Intervest Nat'l Bank*, 21 So. 3d 883, 885 (Fla. 4th DCA 2009) (citing *Yost v. Rieve Enters., Inc.*, 461 So. 2d 178 (Fla. 1st DCA 1984)).

Defendants vigorously dispute and deny the allegations they knew of or were complicit in Amodeo's and Mirabilis's criminal misconduct.  But the doctrine of unclean hands applies to bar Mirabilis's equitable claims regardless of whether Defendants knew or should have known of the intentional fraudulent criminal misconduct of Mirabilis and Amodeo, or even if Defendants were parties to it.  *See Yost*, 461 So. 2d at 180, 184 (holding that trial court properly denied broker's claim for unpaid balance of commission based on unclean hands where there was evidence that broker was a party to fraud); *Faber v. Landman*, 123 So. 2d 405, 407-08 (Fla. 3d DCA 1960) (holding that trial court properly dismissed complaint based on unclean hands even though both plaintiff and defendant were parties to the fraudulent transaction).

"Generally, the conduct constituting the 'unclean hands' must be connected with the matter in litigation ...." *Pennington v. Pennington*, 390 So. 2d 809, 810 (Fla. 5th DCA 1980), (citing *Faber,* 123 So. 2d at 405).  The advice relating to Mirabilis's actions for which it has been convicted and Mirabilis's actions themselves, form the central theme of its Complaint.  Despite its conviction, Mirabilis seeks disgorgement based on Defendants' alleged failure to prevent the criminal conduct resulting in its conviction.  The criminal conviction of Mirabilis and the related restitution and forfeiture based on that conviction, provide a textbook example of the unclean hands defense.  *See Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) (dismissing plaintiff's claim for unjust enrichment because of plaintiff's unclean hands based on his criminal misconduct and conviction, dismissing claim and granting Rule 11

Sanctions); *see also Brooks v. Bank of Boulder*, 911 F. Supp. 470, 476 (D. Colo. 1996)(impliedly asserting that  criminal conduct could serve as a basis for unclean hands and stating the following, "Criminal conduct, however, is not necessary for a finding of unclean hands. Such a finding merely requires improper conduct and a party may be guilty of unclean hands even if his or her behavior does not rise to the level of bad faith." (citing *Hocker v. New Hampshire Ins. Co.*, 922 F.2d 1476, 1486 (10th Cir. 1991)).   As noted, even conduct short of a conviction is sufficient to establish the defense of unclean hands as a matter of law.  Here, Mirabilis's relevant conduct, as alleged in the Complaint and determined in its criminal case, resulted in a conviction, and is directly related to its claims.  The Mirabilis conviction is more than sufficient to establish the "unclean hands" defense.

Finally, summary judgment is appropriate based on the defense of unclean hands.  *See Sponder v. Equity Capital Co*., 248 So. 2d 251 (Fla. 3d DCA 1971)(affirming summary judgment against plaintiff based on doctrine of unclean hands where no issues of fact existed as to whether plaintiff acted with unclean hands in matters related to litigation). Based on its conviction, the defense of unclean hands expressly bars any equitable claims by Mirabilis.

### 6.     Plaintiff cannot state a claim for damages

Not only are Mirabilis's claims against Defendants barred as a matter of law under the *in pari delicto* doctrine, Mirabilis is prohibited from recovering the specific damages it seeks, based upon related legal principles.  Mirabilis claims that it is seeking an "allowed claim in bankruptcy against it" totaling $200,000,000. Comp. ¶¶ 66, 71, 80**.**  This "allowed claim" is for the monies Mirabilis owes to the United States by virtue of the Forfeiture Money Judgment in the criminal case. *U.S. v. AEM. Inc*., D.E. 153. In fact, Mirabilis's current President, R.W. Cuthill testified in the case of *Mirabilis v. Rachlin Cohen Holtz LLP, et al*., Case No. 6:09-cv-271, that Mirabilis's

claims against the Defendants are "just a manner of trying to raise money to pass through to the government." *See* Deposition of R.W. Cuthill,   p. 303,   ln. 3 – 6, attached as Exhibit J. Mirabilis's claims do not represent compensable damages. *See Illinois Cent. R. Co. v. Crail*, 281 U.S. 57, 63 (1930) (the purpose of common law remedies is that "they shall afford only compensation for the injury suffered"); *Bidon v. Dept. of Prof'l Regulation, Fla. Real Estate Comm'n*, 596 So. 2d 450, 452 (Fla. 1992) (actual or compensatory damages are those "necessary to compensate adequately an injured party for losses sustained . . ."); *Phillips v. Ostrer*, 481 So. 2d 1241, 1246 (Fla. 3d DCA 1986) (the purpose of an award of compensatory damages is to make the injured party whole). Mirabilis has suffered no compensable damages, it does not even allege that it has paid all or any part of the $200,000,000.00 Forfeiture Money Judgment. Rather, it seeks to have Defendants indemnify it for the consequences of its illegal conduct.

Under Florida law, a party cannot prevail on a claim of common-law indemnity unless it is without fault, and unless its liability is vicarious and solely for the wrong of another. *See Dade County Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999); *see also Safecare Medical Ctr. v. Howard*, 670 So. 2d 1020, 1022 (Fla. 4th DCA 1996) (explaining that there can be no indemnity between joint tortfeasors because a "weighing of the relative fault of tortfeasors" has no place in the concept of indemnity). Based on its own conviction and that of its principal, Amodeo, Mirabilis is not without fault. Its liability for unpaid payroll taxes for its illegal conduct is not vicarious – it is a direct result of its own criminal conduct. Mirabilis is precluded from seeking damages from Defendants that will serve no purpose but to indemnify it for the consequences of its own illegal actions.[13]

---

[13] Even if this Court concludes that Mirabilis's fault, by itself or through Amodeo, is less than Defendants, and that the doctrine of *in pari delicto* does not apply to preclude its claims, Mirabilis's damage claims would still be barred. In common-law indemnification, there is no weighing of the parties' relative fault. Unless the plaintiff is

Just as a bad actor cannot hold another *liable* if the bad actor is in equal or greater fault under the doctrine of *in pari delicto*, a corporation convicted of a federal crime for which it is subject to criminal forfeiture may not seek recovery of the penalty from others.  Federal courts will prohibit its *damages*.  *See UCAR Int'l, Inc. v. Union Carbide Corp.*, 2004 WL 137073, at *9-10 (S.D.N.Y, Jan. 26, 2004)(barring claims on the basis of *in pari delicto*, holding that where a corporation's damage claims against third parties are the result of a common set of operative facts through which it committed wrongdoing, those damages are "nothing more than a veiled and improper attempt to seek contribution and indemnification" that will not be allowed). Mirabilis is claiming damages that it incurred because of its own criminal conduct and it cannot recover these damages from Defendants.

III.    **Conclusion**

Mirabilis is barred from making claims against Defendants based on its conviction, lack of exoneration, and the doctrines of imputation, *in pari delicto*, collateral estoppel, and unclean hands. Mirabilis is attempting to blame Defendants for its own criminal conduct, and that of Amodeo. Its claims are legally barred. Defendants are entitled to Final Summary Judgment.

WHEREFORE, Defendants respectfully request that this Court enter an order granting this Motion for Summary Judgment, and for such other and further relief as the Court deems just and proper.

---

*completely without fault* – which Mirabilis is not – indemnification is improper.  *See Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490, 493 (Fla. 1979) (in determining whether indemnification is proper, courts in Florida do not weigh relative fault, but simply determine whether the party seeking indemnification is completely *without* fault).

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

WE HEREBY CERTIFY that a copy of the foregoing has been furnished via Electronic Transmission on **November 9th, 2010** to: **Roy S. Kobert, Esq. and Todd K. Norman**, Broad and Cassel, Counsel for Plaintiff, 390 North Orange Avenue, Suite 1400, Orlando, FL 32801, Telephone: (407) 839-4200; Facsimile: (407) 425-8377, Email: rkobert@broadandcassel.com and tnorman@broadandcassel.com.

<div style="margin-left:40%">

KELLER LANDSBERG PA
Trial Counsel for Defendants
Broward Financial Centre, Suite 1400
500 East Broward Boulevard
Fort Lauderdale, FL 33394
Telephone: (954) 761-3550
Facsimile: (954) 525-2134
Email: david.keller@kellerlandsberg.com

By:      *D. David Keller*
         D. David Keller
         Fla. Bar No.: 288799

and

Bradley M. Saxton, Esq.
Winderweedle, Haines, Ward & Woodman, P.A.
Co-counsel for Defendants
Post Office Box 1391
Orlando, FL 32802-1391
Telephone:  (407) 423-4246
Facsimile: (407) 423-7014
Email: bsaxton@whww.com
Fla. Bar No.: 855995

</div>