lawyer or affect the extradisciplinary consequences of violating an existing substantive legal or ethical duty; nor shall any matter set forth in the Statement of Insured Client's Rights give rise to an independent cause of action or create any presumption that an existing legal or ethical duty has been breached.

## STATEMENT OF INSURED CLIENT'S RIGHTS

An insurance company has selected a lawyer to defend a lawsuit or claim against you. This Statement of Insured Client's Rights is being given to you to assure that you are aware of your rights regarding your legal representation. This disclosure statement highlights many, but not all, of your rights when your legal representation is being provided by the insurance company.

1. *Your Lawyer*. If you have questions concerning the selection of the lawyer by the insurance company, you should discuss the matter with the insurance company and the lawyer. As a client, you have the right to know about the lawyer's education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer's actual experience dealing with cases similar to yours and give you this information in writing, if you request it. Your lawyer is responsible for keeping you reasonably informed regarding the case and promptly complying with your reasonable requests for information. You are entitled to be informed of the final disposition of your case within a reasonable time.

2. *Fees and Costs*. Usually the insurance company pays all of the fees and costs of defending the claim. If you are responsible for directly paying the lawyer for any fees or costs, your lawyer must promptly inform you of that.

3. *Directing the Lawyer*. If your policy, like most insurance policies, provides for the insurance company to control the defense of the lawsuit, the lawyer will be taking instructions from the insurance company. Under such policies, the lawyer cannot act solely on your instructions, and at the same time, cannot act contrary to your interests. Your preferences should be communicated to the lawyer.

4. *Litigation Guidelines.* Many insurance companies establish guidelines governing how lawyers are to proceed in defending a claim. Sometimes those guidelines affect the range of actions the lawyer can take and may require authorization of the insurance company before certain actions are undertaken. You are entitled to know the guidelines affecting the extent and level of legal services being provided to you. Upon request, the lawyer or the insurance company should either explain the guidelines to you or provide you with a copy. If the lawyer is denied authorization to provide a service or undertake an action the lawyer believes necessary to your defense, you are entitled to be informed that the insurance company has declined authorization for the service or action.

5. *Confidentiality.* Lawyers have a general duty to keep secret the confidential information a client provides, subject to limited exceptions. However, the lawyer chosen to represent you also may have a duty to share with the insurance company information relating to the defense or settlement of the claim. If the lawyer learns of information indicating that the insurance company is not obligated under the policy to cover the claim or provide a defense, the lawyer's duty is to maintain that information in confidence. If the lawyer cannot do so, the lawyer may be required to withdraw from the representation without disclosing to the insurance company the nature of the conflict of interest which has arisen. Whenever a waiver of the lawyer-client confidentiality privilege is needed, your lawyer has a duty to consult with you and obtain your informed consent. Some insurance companies retain auditing companies to review the billings and files of the lawyers they hire to represent policyholders. If the lawyer believes a bill review or other action releases information in a manner that is contrary to your interests, the lawyer should advise you regarding the matter.

6. *Conflicts of Interest.* Most insurance policies state that the insurance company will provide a lawyer to represent your interests as well as those of the insurance company. The lawyer is responsible for identifying conflicts of interest and advising you

of them. If at any time you believe the lawyer provided by the insurance company cannot fairly represent you because of conflicts of interest between you and the company (such as whether there is insurance coverage for the claim against you), you should discuss this with the lawyer and explain why you believe there is a conflict. If an actual conflict of interest arises that cannot be resolved, the insurance company may be required to provide you with another lawyer.

7. *Settlement.* Many policies state that the insurance company alone may make a final decision regarding settlement of a claim, but under some policies your agreement is required. If you want to object to or encourage a settlement within policy limits, you should discuss your concerns with your lawyer to learn your rights and possible consequences. No settlement of the case requiring you to pay money in excess of your policy limits can be reached without your agreement, following full disclosure.

8. *Your Risk.* If you lose the case, there might be a judgment entered against you for more than the amount of your insurance, and you might have to pay it. Your lawyer has a duty to advise you about this risk and other reasonably foreseeable adverse results.

9. *Hiring Your Own Lawyer.* The lawyer provided by the insurance company is representing you only to defend the lawsuit. If you desire to pursue a claim against the other side, or desire legal services not directly related to the defense of the lawsuit against you, you will need to make your own arrangements with this or another lawyer. You also may hire another lawyer, at your own expense, to monitor the defense being provided by the insurance company. If there is a reasonable risk that the claim made against you exceeds the amount of coverage under your policy, you should consider consulting another lawyer.

10. *Reporting Violations.* If at any time you believe that your lawyer has acted in violation of your rights, you have the right to report the matter to The Florida Bar, the agency that oversees the

practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar call (850) 561-5839 or you may access the Bar at www.FlaBar.org.

**IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS,**

**PLEASE ASK FOR AN EXPLANATION.**

CERTIFICATE

The undersigned hereby certifies that this Statement of Insured Client's Rights has been provided to..... (name of insured/client (s)).....
by ..... (mail/hand delivery)..... at .....(address of insured/client(s) to which mailed or delivered, on ..... (date)......

______________________________

[Signature of Attorney]

______________________________

[Print/Type Name]

Florida Bar No.: ____________________

**(k) Imputation of Conflicts.** While lawyers are associated in a firm, a prohibition in the foregoing subdivisions (a) through (i) that applies to any one of them shall apply to all of them.

**Comment**

**Business transactions between client and lawyer**

A lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property, or financial transaction with a client. The requirements of subdivision (a) must be met even when the transaction is not closely related to the subject matter of the representation. The rule applies to lawyers engaged in the sale of goods or services related to the practice of law. See rule 4-5.7. It does not apply to ordinary fee arrangements between client and lawyer, which are governed by rule 4-1.5, although its

requirements must be met when the lawyer accepts an interest in the client's business or other nonmonetary property as payment for all or part of a fee. In addition, the rule does not apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions the lawyer has no advantage in dealing with the client, and the restrictions in subdivision (a) are unnecessary and impracticable. Likewise, subdivision (a) does not prohibit a lawyer from acquiring or asserting a lien granted by law to secure the lawyer's fee or expenses.

Subdivision (a)(1) requires that the transaction itself be fair to the client and that its essential terms be communicated to the client, in writing, in a manner that can be reasonably understood. Subdivision (a)(2) requires that the client also be advised, in writing, of the desirability of seeking the advice of independent legal counsel. It also requires that the client be given a reasonable opportunity to obtain such advice. Subdivision (a)(3) requires that the lawyer obtain the client's informed consent, in a writing signed by the client, both to the essential terms of the transaction and to the lawyer's role. When necessary, the lawyer should discuss both the material risks of the proposed transaction, including any risk presented by the lawyer's involvement, and the existence of reasonably available alternatives and should explain why the advice of independent legal counsel is desirable. See terminology (definition of informed consent).

The risk to a client is greatest when the client expects the lawyer to represent the client in the transaction itself or when the lawyer's financial interest otherwise poses a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's financial interest in the transaction. Here the lawyer's role requires that the lawyer must comply, not only with the requirements of subdivision (a), but also with the requirements of rule 4-1.7. Under that rule, the lawyer must disclose the risks

associated with the lawyer's dual role as both legal adviser and participant in the transaction, such as the risk that the lawyer will structure the transaction or give legal advice in a way that favors the lawyer's interests at the expense of the client. Moreover, the lawyer must obtain the client's informed consent. In some cases, the lawyer's interest may be such that rule 4-1.7 will preclude the lawyer from seeking the client's consent to the transaction.

If the client is independently represented in the transaction, subdivision (a)(2) of this rule is inapplicable, and the subdivision (a)(1) requirement for full disclosure is satisfied either by a written disclosure by the lawyer involved in the transaction or by the client's independent counsel. The fact that the client was independently represented in the transaction is relevant in determining whether the agreement was fair and reasonable to the client as subdivision (a)(1) further requires.

**Gifts to lawyers**

A lawyer may accept a gift from a client, if the transaction meets general standards of fairness and if the lawyer does not prepare the instrument bestowing the gift. For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If a client offers the lawyer a more substantial gift, subdivision (c) does not prohibit the lawyer from accepting it, although such a gift may be voidable by the client under the doctrine of undue influence, which treats client gifts as presumptively fraudulent. In any event, due to concerns about overreaching and imposition on clients, a lawyer may not suggest that a substantial gift be made to the lawyer or for the lawyer's benefit, except where the lawyer is related to the client as set forth in subdivision (c). If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide and the lawyer should advise the client to seek advice of independent counsel. Subdivision (c) recognizes an exception where the client is related by blood or marriage to the

donee or the gift is not substantial.

This rule does not prohibit a lawyer from seeking to have the lawyer or a partner or associate of the lawyer named as personal representative of the client's estate or to another potentially lucrative fiduciary position. Nevertheless, such appointments will be subject to the general conflict of interest provision in rule 4-1.7 when there is a significant risk that the lawyer's interest in obtaining the appointment will materially limit the lawyer's independent professional judgment in advising the client concerning the choice of a personal representative or other fiduciary. In obtaining the client's informed consent to the conflict, the lawyer should advise the client concerning the nature and extent of the lawyer's financial interest in the appointment, as well as the availability of alternative candidates for the position.

**Literary rights**

An agreement by which a lawyer acquires literary or media rights concerning the conduct of the representation creates a conflict between the interests of the client and the personal interests of the lawyer. Measures suitable in the representation of the client may detract from the publication value of an account of the representation. Subdivision (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer's fee shall consist of a share in ownership in the property if the arrangement conforms to rule 4-1.5 and subdivision (a) and (i).

**Financial assistance**

Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation. These dangers do not warrant a prohibition on a lawyer advancing a client court costs

and litigation expenses, including the expenses of diagnostic medical examination used for litigation purposes and the reasonable costs of obtaining and presenting evidence, because these advances are virtually indistinguishable from contingent fees and help ensure access to the courts. Similarly, an exception allowing lawyers representing indigent clients to pay court costs and litigation expenses regardless of whether these funds will be repaid is warranted.

**Person paying for lawyer's services**

Lawyers are frequently asked to represent a client under circumstances in which a third person will compensate the lawyer, in whole or in part. The third person might be a relative or friend, an indemnitor (such as a liability insurance company), or a co-client (such as a corporation sued along with one or more of its employees). Because third-party payers frequently have interests that differ from those of the client, including interests in minimizing the amount spent on the representation and in learning how the representation is progressing, lawyers are prohibited from accepting or continuing such representations unless the lawyer determines that there will be no interference with the lawyer's independent professional judgment and there is informed consent from the client. See also rule 4-5.4(d) (prohibiting interference with a lawyer's professional judgment by one who recommends, employs or pays the lawyer to render legal services for another).

Sometimes, it will be sufficient for the lawyer to obtain the client's informed consent regarding the fact of the payment and the identity of the third-party payer. If, however, the fee arrangement creates a conflict of interest for the lawyer, then the lawyer must comply with rule 4-1.7. The lawyer must also conform to the requirements of rule 4-1.6 concerning confidentiality. Under rule 4-1.7(a), a conflict of interest exists if there is significant risk that the lawyer's representation of the client will be materially limited by the lawyer's own interest in the fee arrangement or by the lawyer's responsibilities to the third-party payer (for example,

when the third-party payer is a co-client). Under rule 4-1.7(b), the lawyer may accept or continue the representation with the informed consent of each affected client, unless the conflict is nonconsentable under that subdivision. Under rule 4-1.7(b), the informed consent must be confirmed in writing or clearly stated on the record at a hearing.

**Aggregate settlements**

Differences in willingness to make or accept an offer of settlement are among the risks of common representation of multiple clients by a single lawyer. Under rule 4-1.7, this is one of the risks that should be discussed before undertaking the representation, as part of the process of obtaining the clients' informed consent. In addition, rule 4-1.2(a) protects each client's right to have the final say in deciding whether to accept or reject an offer of settlement and in deciding whether to enter a guilty or nolo contendere plea in a criminal case. The rule stated in this subdivision is a corollary of both these rules and provides that, before any settlement offer or plea bargain is made or accepted on behalf of multiple clients, the lawyer must inform each of them about all the material terms of the settlement, including what the other clients will receive or pay if the settlement or plea offer is accepted. See also terminology (definition of informed consent). Lawyers representing a class of plaintiffs or defendants, or those proceeding derivatively, must comply with applicable rules regulating notification of class members and other procedural requirements designed to ensure adequate protection of the entire class.

**Acquisition of interest in litigation**

Subdivision (i) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. This general rule, which has its basis in common law champerty and maintenance, is subject to specific exceptions developed in decisional law and continued in these rules, such as the exception for reasonable contingent fees set forth in rule 4-1.5 and the

exception for certain advances of the costs of litigation set forth in subdivision (e).

This rule is not intended to apply to customary qualification and limitations in legal opinions and memoranda.

**Representation of insureds**

As with any representation of a client when another person or client is paying for the representation, the representation of an insured client at the request of the insurer creates a special need for the lawyer to be cognizant of the potential for ethical risks. The nature of the relationship between a lawyer and a client can lead to the insured or the insurer having expectations inconsistent with the duty of the lawyer to maintain confidences, avoid conflicts of interest, and otherwise comply with professional standards. When a lawyer undertakes the representation of an insured client at the expense of the insurer, the lawyer should ascertain whether the lawyer will be representing both the insured and the insurer, or only the insured. Communication with both the insured and the insurer promotes their mutual understanding of the role of the lawyer in the particular representation. The Statement of Insured Client's Rights has been developed to facilitate the lawyer's performance of ethical responsibilities. The highly variable nature of insurance and the responsiveness of the insurance industry in developing new types of coverages for risks arising in the dynamic American economy render it impractical to establish a statement of rights applicable to all forms of insurance. The Statement of Insured Client's Rights is intended to apply to personal injury and property damage tort cases. It is not intended to apply to workers' compensation cases. Even in that relatively narrow area of insurance coverage, there is variability among policies. For that reason, the statement is necessarily broad. It is the responsibility of the lawyer to explain the statement to the insured. In particular cases, the lawyer may need to provide additional information to the insured.

Because the purpose of the statement is to assist laypersons in

understanding their basic rights as clients, it is necessarily abbreviated. Although brevity promotes the purpose for which the statement was developed, it also necessitates incompleteness. For these reasons, it is specifically provided that the statement shall not serve to establish any legal rights or duties, nor create any presumption that an existing legal or ethical duty has been breached. As a result, the statement and its contents should not be invoked by opposing parties as grounds for disqualification of a lawyer or for procedural purposes. The purpose of the statement would be subverted if it could be used in such a manner.

The statement is to be signed by the lawyer to establish that it was timely provided to the insured, but the insured client is not required to sign it. It is in the best interests of the lawyer to have the insured client sign the statement to avoid future questions, but it is considered impractical to require the lawyer to obtain the insured client's signature in all instances.

Establishment of the statement and the duty to provide it to an insured in tort cases involving personal injury or property damage should not be construed as lessening the duty of the lawyer to inform clients of their rights in other circumstances. When other types of insurance are involved, when there are other third-party payors of fees, or when multiple clients are represented, similar needs for fully informing clients exist, as recognized in rules 4-1.7 (c) and 4-1.8(f).

**Imputation of prohibitions**

Under subdivision (k), a prohibition on conduct by an individual lawyer in subdivisions (a) through (i) also applies to all lawyers associated in a firm with the personally prohibited lawyer. For example, 1 lawyer in a firm may not enter into a business transaction with a client of another member of the firm without complying with subdivision (a), even if the first lawyer is not personally involved in the representation of the client.

[Revised: 02/01/2010 ]

## Lawyer Regulation

### Rules Regulating The Florida Bar

4 RULES OF PROFESSIONAL CONDUCT
4-1 CLIENT-LAWYER RELATIONSHIP

# *RULE 4-1.10 IMPUTATION OF CONFLICTS OF INTEREST; GENERAL RULE*

RULE 4-1.10 IMPUTATION OF CONFLICTS OF INTEREST; GENERAL RULE

**(a) Imputed Disqualification of All Lawyers in Firm.** While lawyers are associated in a firm, none of them shall knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

**(b) Former Clients of Newly Associated Lawyer.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.

**(c) Representing Interests Adverse to Clients of Formerly Associated Lawyer.** When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information

© 2005 The Florida Bar

protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.

**(d) Waiver of Conflict.** A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.

**(e) Government Lawyers.** The disqualification of lawyers associated in a firm with former or current government lawyers is governed by rule 4-1.11.

## Comment

### Definition of "firm"

With respect to the law department of an organization, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct. However, there can be uncertainty as to the identity of the client. For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed. A similar question can arise concerning an unincorporated association and its local affiliates.

Similar questions can also arise with respect to lawyers in legal aid. Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units. As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved and on the specific facts of the situation.

Where a lawyer has joined a private firm after having represented the government, the situation is governed by rule 4-1.11(a) and (b); where a lawyer represents the government after having served private clients, the situation is governed by rule 4-1.11(c)(1). The individual lawyer involved is bound by the rules generally, including rules 4-1.6, 4-1.7, and 4-1.9.

Different provisions are thus made for movement of a lawyer from 1 private firm to another and for movement of a lawyer between a private firm and the government. The government is entitled to protection of its client confidences and, therefore, to the protections provided in rules 4-1.6, 4-1.9, and 4-1.11. However, if the more extensive disqualification in rule 4-1.10 were applied to former government lawyers, the potential effect on the government would be unduly burdensome. The government deals with all private citizens and organizations and thus has a much wider circle of adverse legal interests than does any private law firm. In these circumstances, the government's recruitment of lawyers would be seriously impaired if rule 4-1.10 were applied to the government. On balance, therefore, the government is better served in the long run by the protections stated in rule 4-1.11.

**Principles of imputed disqualification**

The rule of imputed disqualification stated in subdivision (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially 1 lawyer for purposes of the rules governing loyalty to the client or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated. Subdivision (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from 1 firm to another the situation is governed by subdivisions (b) and (c).

The rule in subdivision (a) does not prohibit representation where neither questions of client loyalty nor protection of confidential information are presented. Where 1 lawyer in a firm could not effectively represent a given client because of strong political beliefs, for example, but that lawyer will do no work on the case and the personal beliefs of the lawyer will not materially limit the representation by others in the firm, the firm should not be disqualified. On the other hand, if an opposing party in a case were owned by a lawyer in the law firm, and others in the firm

would be materially limited in pursuing the matter because of loyalty to that lawyer, the personal disqualification of the lawyer would be imputed to all others in the firm.

The rule in subdivision (a) also does not prohibit representation by others in the law firm where the person prohibited from involvement in a matter is a nonlawyer, such as a paralegal or legal secretary. Such persons, however, ordinarily must be screened from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyers and the firm have a legal duty to protect. See terminology and rule 4-5.3.

**Lawyers moving between firms**

When lawyers have been associated in a firm but then end their association, however, the problem is more complicated. The fiction that the law firm is the same as a single lawyer is no longer wholly realistic. There are several competing considerations. First, the client previously represented must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule of disqualification should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to 1 field or another, and that many move from 1 association to another several times in their careers. If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from 1 practice setting to another and of the opportunity of clients to change counsel.

Reconciliation of these competing principles in the past has been attempted under 2 rubrics. One approach has been to seek per se rules of disqualification. For example, it has been held that a

partner in a law firm is conclusively presumed to have access to all confidences concerning all clients of the firm. Under this analysis, if a lawyer has been a partner in one law firm and then becomes a partner in another law firm, there is a presumption that all confidences known by a partner in the first firm are known to all partners in the second firm. This presumption might properly be applied in some circumstances, especially where the client has been extensively represented, but may be unrealistic where the client was represented only for limited purposes. Furthermore, such a rigid rule exaggerates the difference between a partner and an associate in modern law firms.

The other rubric formerly used for dealing with vicarious disqualification is the appearance of impropriety and was proscribed in former Canon 9 of the Code of Professional Responsibility. This rubric has a two-fold problem. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" is question-begging. It therefore has to be recognized that the problem of imputed disqualification cannot be properly resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.

A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two functions are involved: preserving confidentiality and avoiding positions adverse to a client.

**Confidentiality**

Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions, or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general

access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not information about other clients.

Application of subdivisions (b) and (c) depends on a situation's particular facts. In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

Subdivisions (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by rules 4-1.6 and 4-1.9(b). Thus, if a lawyer while with 1 firm acquired no knowledge or information relating to a particular client of the firm and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the 2 clients conflict.

Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See rules 4-1.6 and 4-1.9.

**Adverse positions**

The second aspect of loyalty to client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by rule 4-1.9(a). Thus, if a lawyer left 1 firm for another, the new affiliation would not

preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters so long as the conditions of rule 4-1.10(b) and (c) concerning confidentiality have been met.

Rule 4-1.10(d) removes imputation with the informed consent of the affected client or former client under the conditions stated in rule 4-1.7. The conditions stated in rule 4-1.7 require the lawyer to determine that the representation is not prohibited by rule 4-1.7(b) and that each affected client or former client has given informed consent to the representation, confirmed in writing or clearly stated on the record. In some cases, the risk may be so severe that the conflict may not be cured by client consent. For a definition of informed consent, see terminology.

Where a lawyer is prohibited from engaging in certain transactions under rule 4-1.8, subdivision (k) of that rule, and not this rule, determines whether that prohibition also applies to other lawyers associated in a firm with the personally prohibited lawyer.

[Revised: 05/22/2006 ]

# Lawyer Regulation

## Rules Regulating The Florida Bar

4 RULES OF PROFESSIONAL CONDUCT
4-1 CLIENT-LAWYER RELATIONSHIP

## *RULE 4-1.13 ORGANIZATION AS CLIENT*

**(a) Representation of Organization.** A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

**(b) Violations by Officers or Employees of Organization.** If a lawyer for an organization knows that an officer, employee, or other person associated with the organization is engaged in action, intends to act, or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization or a violation of law that reasonably might be imputed to the organization and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. In determining how to proceed, the lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer's representation, the responsibility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters, and any other relevant considerations. Any measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization. Such measures may include among others:

(1) asking reconsideration of the matter;

(2) advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and

(3) referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter,

© 2005 The Florida Bar

referral to the highest authority that can act in behalf of the organization as determined by applicable law.

**(c) Resignation as Counsel for Organization.** If, despite the lawyer's efforts in accordance with subdivision (b), the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law and is likely to result in substantial injury to the organization, the lawyer may resign in accordance with rule 4-1.16.

**(d) Identification of Client.** In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.

**(e) Representing Directors, Officers, Employees, Members, Shareholders, or Other Constituents of Organization.** A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 4-1.7. If the organization's consent to the dual representation is required by rule 4-1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

**Comment**

**The entity as the client**

An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders, and other constituents. Officers, directors, employees, and shareholders are the constituents of the corporate organizational client. The duties defined in this comment apply equally to unincorporated associations. "Other constituents" as used in this comment means the positions equivalent to officers, directors, employees, and shareholders held by persons acting for organizational clients that

are not corporations.

When 1 of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by rule 4-1.6. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client's employees or other constituents are covered by rule 4-1.6. This does not mean, however, that constituents of an organizational client are the clients of the lawyer. The lawyer may not disclose to such constituents information relating to the representation except for disclosures explicitly or impliedly authorized by the organizational client in order to carry out the representation or as otherwise permitted by rule 4-1.6.

When constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer's province. However, different considerations arise when the lawyer knows that the organization may be substantially injured by action of a constituent that is in violation of law. In such a circumstance, it may be reasonably necessary for the lawyer to ask the constituent to reconsider the matter. If that fails, or if the matter is of sufficient seriousness and importance to the organization, it may be reasonably necessary for the lawyer to take steps to have the matter reviewed by a higher authority in the organization. Clear justification should exist for seeking review over the head of the constituent normally responsible for it. The stated policy of the organization may define circumstances and prescribe channels for such review, and a lawyer should encourage the formulation of such a policy. Even in the absence of organization policy, however, the lawyer may have an obligation to refer a matter to higher authority, depending on the seriousness of the matter and whether the constituent in question has apparent motives to act at variance with the organization's interest. Review

by the chief executive officer or by the board of directors may be required when the matter is of importance commensurate with their authority. At some point it may be useful or essential to obtain an independent legal opinion.

The organization's highest authority to whom a matter may be referred ordinarily will be the board of directors or similar governing body. However, applicable law may prescribe that under certain conditions highest authority reposes elsewhere; for example, in the independent directors of a corporation.

**Relation to other rules**

The authority and responsibility provided in this rule are concurrent with the authority and responsibility provided in other rules. In particular, this rule does not limit or expand the lawyer's responsibility under rule 4-1.6, 4-1.8, 4-1.16, 4-3.3, or 4-4.1. If the lawyer's services are being used by an organization to further a crime or fraud by the organization, rule 4-1.2(d) can be applicable.

**Government agency**

The duty defined in this rule applies to governmental organizations. However, when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful official act is prevented or rectified, for public business is involved. In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulation. Defining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context and is a matter beyond the scope of these rules. Although in some circumstances the client may be a specific agency, it may also be a branch of the government, such as the executive branch, or the government as a whole. For example, if the action or failure to act involves the head of a bureau, either the department of which the bureau is a part or the relevant branch of government may be the client for

purposes of this rule. Moreover, in a matter involving the conduct of government officials, a government lawyer may have authority under applicable law to question such conduct more extensively than that of a lawyer for a private organization in similar circumstances. This rule does not limit that authority.

**Clarifying the lawyer's role**

There are times when the organization's interest may be or becomes adverse to those of 1 or more of its constituents. In such circumstances the lawyer should advise any constituent whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest that the lawyer cannot represent such constituent and that such person may wish to obtain independent representation. Care must be taken to assure that the constituent understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent and that discussions between the lawyer for the organization and the constituent may not be privileged.

Whether such a warning should be given by the lawyer for the organization to any constituent may turn on the facts of each case.

**Dual representation**

Subdivision (e) recognizes that a lawyer for an organization may also represent a principal officer or major shareholder.

**Derivative actions**

Under generally prevailing law, the shareholders or members of a corporation may bring suit to compel the directors to perform their legal obligations in the supervision of the organization. Members of unincorporated associations have essentially the same right. Such an action may be brought nominally by the organization, but usually is, in fact, a legal controversy over management of the organization.

The question can arise whether counsel for the organization may defend such an action. The proposition that the organization is the lawyer's client does not alone resolve the issue. Most derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit. However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board. In those circumstances, rule 4-1.7 governs who should represent the directors and the organization.

**Representing related organizations**

Consistent with the principle expressed in subdivision (a) of this rule, a lawyer or law firm who represents or has represented a corporation (or other organization) ordinarily is not presumed to also represent, solely by virtue of representing or having represented the client, an organization (such as a corporate parent or subsidiary) that is affiliated with the client. There are exceptions to this general proposition, such as, for example, when an affiliate actually is the alter ego of the organizational client or when the client has revealed confidential information to an attorney with the reasonable expectation that the information would not be used adversely to the client's affiliate(s). Absent such an exception, an attorney or law firm is not ethically precluded from undertaking representations adverse to affiliates of an existing or former client.

[Revised: 05/22/2006 ]

## Lawyer Regulation

### Rules Regulating The Florida Bar

4 RULES OF PROFESSIONAL CONDUCT
4-1 CLIENT-LAWYER RELATIONSHIP

# *RULE 4-1.16 DECLINING OR TERMINATING REPRESENTATION*

**(a) When Lawyer Must Decline or Terminate Representation.** Except as stated in subdivision (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or law;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client;

(3) the lawyer is discharged;

(4) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent, unless the client agrees to disclose and rectify the crime or fraud; or

(5) the client has used the lawyer's services to perpetrate a crime or fraud, unless the client agrees to disclose and rectify the crime or fraud.

**(b) When Withdrawal Is Allowed.** Except as stated in subdivision (c), a lawyer may withdraw from representing a client if:

(1) withdrawal can be accomplished without material adverse effect on the interests of the client;

(2) the client insists upon taking action that the lawyer considers repugnant, imprudent, or with which the lawyer has a fundamental disagreement;

© 2005 The Florida Bar

(3) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(4) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(5) other good cause for withdrawal exists.

**(c) Compliance With Order of Tribunal.** A lawyer must comply with applicable law requiring notice or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

**(d) Protection of Client's Interest.** Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers and other property relating to or belonging to the client to the extent permitted by law.

## Comment

A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest, and to completion. Ordinarily, a representation in a matter is completed when the agreed-upon assistance has been concluded. See rule 4-1.2, and the comment to rule 4-1.3.

### Mandatory withdrawal

A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or law. The

lawyer is not obliged to decline or withdraw simply because the client suggests such a course of conduct; a client may make such a suggestion in the hope that a lawyer will not be constrained by a professional obligation. Withdrawal is also mandatory if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent, unless the client agrees to disclose and rectify the crime or fraud. Withdrawal is also required if the lawyer's services were misused in the past even if that would materially prejudice the client.

When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also rule 4-6.2. Similarly, court approval or notice to the court is often required by applicable law before a lawyer withdraws from pending litigation. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may request an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient. Lawyers should be mindful of their obligations to both clients and the court under rules 4-1.6 and 4-3.3.

**Discharge**

A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.

Whether a client can discharge appointed counsel may depend on applicable law. A client seeking to do so should be given a full explanation of the consequences. These consequences may include a decision by the appointing authority that appointment of successor counsel is unjustified, thus requiring the client to be

self-represented.

If the client is mentally incompetent, the client may lack the legal capacity to discharge the lawyer, and in any event the discharge may be seriously adverse to the client's interests. The lawyer should make special effort to help the client consider the consequences and may take reasonably necessary protective action as provided in rule 4-1.14.

**Optional withdrawal**

A lawyer may withdraw from representation in some circumstances. The lawyer has the option to withdraw if it can be accomplished without material adverse effect on the client's interests. The lawyer also may withdraw where the client insists on taking action that the lawyer considers repugnant, imprudent, or with which the lawyer has a fundamental disagreement.

A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation.

**Assisting the client upon withdrawal**

Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client. The lawyer may retain papers and other property as security for a fee only to the extent permitted by law.

**Refunding advance payment of unearned fee**

Upon termination of representation, a lawyer should refund to the client any advance payment of a fee that has not been earned. This does not preclude a lawyer from retaining any reasonable nonrefundable fee that the client agreed would be deemed earned when the lawyer commenced the client's representation. See also rule 4-1.5.

[Revised: 05/22/2006 ]