UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re: MIRABILIS VENTURES, INC.,   Bankruptcy Case No. 6:08-bk-4327-KSJ
             Adv. Pro. No.  6:08-ap-222-KSJ

   Debtor

           /

MIRABILIS VENTURES, INC.     Case No.: 6:09-cv-175-Orl-31DAB

   Plaintiff,

v.

RICHARD E. BERMAN, BERMAN, KEAN &
RIGUERA, P.A., ELENA WILDERMUTH,

   Defendants.

            /

**DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DAVID RICHARDSON AS
AN EXPERT AND MEMORANDUM OF LAW IN SUPPORT**

   Defendants, RICHARD E. BERMAN ("Berman"), BERMAN, KEAN & RIGUERA,

P.A. ("BKR"), and ELENA WILDERMUTH ("Wildermuth") (collectively "Defendants"), file

this Motion to Exclude  Testimony of David Richardson as an Expert and Memorandum of Law

in Support, and state:

**I.  INTRODUCTION**

   Twenty-four.  Twenty-four is the number of times Mirabilis' standard of care expert,

David Richardson, disclaims his opinions in his Expert Witness Report ("Report") with terms

such as "might," "may," and "perhaps."[1]  Richardson's expert report fails to include any

admissible expert opinion that would actually assist the trier of fact.  In this legal malpractice

matter, Mirabilis seeks to blame Defendants for its own criminal conduct based on its central role

---

[1] Report, pp. 2, 3, 12, 13, 21, 22, 28, 34, 42, 46, 47.

1

in a $200,000,000 payroll tax fraud conspiracy.  The objectionable report (with Exhibits)[2] is attached as Exhibit A (the "Report").  Since the Report does not pass muster under the Federal Rules of Evidence, Richardson's "opinions" are inadmissible and any expert testimony by him must be excluded.

## II.     MEMORANDUM OF LAW

### A.     Federal Rule of Evidence 702 and *Daubert* Standard

The admissibility of Richardson's testimony is governed by the standards set forth in Federal Rule of Evidence 702 and the Supreme Court's dictates in *Daubert v. Merrell Dow Pharms.*, *Inc.*, 509 U.S. 579 (1993); *see Moore v. Club at Orlando Condo. Ass'n., Inc.*, 2009 WL 3669641, at * 1 (M.D. Fla. 2009); *Grupo Televisa S.A. v. Telemundo Commc'ns. Group, Inc.*, 2008 WL 125601, at *1 (S.D. Fla. 2008); *Young v. Eslinger*, 2006 WL 2802001, at * 2 (M.D. Fla. 2006). The standard applies not only to scientific testimony, but to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999); *Williams v. Michelin N. Am., Inc.,* 381 F. Supp. 2d 1351, 1359 n.12 (M.D. Fla. 2005).

### 1.     Federal Rule of Evidence 702

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[2]   Richardson references on p. 48 of the Report a list of documents he "referred to," along with other materials reviewed.  However, Exhibit A to the Report received by Defendants is a copy of Richardson's curriculum vitae. No other list of documents reviewed (besides the 7 Exhibits attached to the Report, and the reference to Exhibits to Defendant Berman's deposition) was provided with the Report.

Expert testimony must satisfy three requirements under Rule 702 for admission at trial. This Court must inquire whether: "(1) the expert is sufficiently qualified to testify on the issues he intends to address; (2) the expert's methodology is sufficiently reliable…; and (3) the testimony assists the trier of fact." *Guinn v. AstraZeneca Pharms., LP,* 602 F.3d 1245, 1252 (11th Cir. 2010). To assist the trier of fact, there must be an "application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* Moreover, "[t]he party offering the expert testimony has the burden of demonstrating that the testimony is 'relevant to the task at hand' and 'logically advances a material aspect' of its case." *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp*., 582 F.3d 1227, 1232 (11th Cir. 2009) (citing *Daubert,* 509 U.S. at 597 and *Allison v. McGhan Med. Corp*., 184 F.3d 1300, 1312 (11th Cir. 1999)).

## 2.      *Daubert* Standard

According to the Supreme Court, to ensure that a proper foundation is made in light of the proposed expert testimony, trial courts are to act as gatekeepers and "screen expert testimony to determine if it is relevant and reliable." *Daubert,* 509 U.S. at 589). Likewise, "[e]xpert testimony must be excluded if the reasoning or methodology underlying the opinion is scientifically invalid, or if the methodology cannot properly be applied to the facts." *Daubert*, 509 U.S. at 592.

The Court's "gatekeeping obligations applies not only to testimony based on scientific knowledge, but also to testimony based on technical and other specialized knowledge." *Grupo Televisa S.A*., 2008 WL 125601, at *1 (S.D. Fla. 2008) (citing *Rink v. Cheminova*, 400 F.3d 1286, 1291-92 (11th Cir. 1999)) (internal citations and quotations omitted). The party seeking to introduce expert testimony must prove by a preponderance of the evidence that the expert's

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

opinion meets the criteria set forth in *Daubert*, "including reliable methodology and helpfulness to the fact finder in understanding the evidence or determining a fact." *Boca Raton Cmty. Hosp.*, 582 F.3d at 1232; *Moore,* 2009 WL 3669641, at * 2; *Young*, 2006 WL 2802001, at * 2.

If the party seeking to introduce expert testimony fails one prong of the test under Rule 702 or fails the "rigorous inquiry" required by *Daubert*, the expert's testimony must be excluded. *See Rink*, 400 F.3d at 1291-92 (excluding expert testimony and stating the party offering the evidence must prove each element by a preponderance of the evidence); *Allison*, 184 F.3d at 1306; *Grupo Televisa S.A.*, 2008 WL 125601, at *1. Furthermore, "a trial court has broad discretion in determining how to perform its gatekeeper function." *Club Car, Inc.,* 362 F.3d at 780.

**B.      Richardson's Report and Opinions are Too Speculative to be Admissible**

The gravamen of Richardson's opinion is found at page 13 of the Report:

> …BERMAN, WILDERMUTH and their law firm could have and should have either stopped implementation of the scheme or withdrawn from representation of the parties involved.  Had they done so before steps were taken to implement the scheme, Amodeo **might have** avoided conviction and a twenty-two year imprisonment, Mirabilis **might not** have been charged for criminal conduct, the United States **might not** have suffered the loss of over tens of millions of dollars in trust fund taxes and numerous lawsuits and their consequent professional fees, **might have** been avoided.

(emphasis added).  Given the admissions of Amodeo in his Plea Agreement (D.E. 44, Exhibit D), and the admissions of at least two officers and directors of Mirabilis that they knew the rules on payroll tax collection and remittance (see pp. 10-14, *infra*) there is no basis on which to conclude what "might have" occurred with respect to Amodeo's conviction.  It is even more speculative to

4

opine on what "might have" happened with respect to Mirabilis, the United States or in various unspecified lawsuits.

Richardson's entire report consists of "might have," "perhaps," and "could have." Speculation is not a proper basis for an expert opinion. "It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). *See also Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) ("*Daubert* requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury.") (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)); *Waste Services, Inc. v. Waste Management, Inc.,* 283 Fed. Appx. 702 (11th Cir. 2008) (affirming trial court striking expert testimony that was conjectural).   Other examples of the speculation found in the Report include:

- BERMAN should have recognized that the plan was fraudulent and either stopped it or opted out of representing any of the players.  If he had taken either action, **perhaps** the personal and financial disasters that followed would not have happened. (Report, p. 21) (emphasis added).

- The question then becomes, if the law firm's opinion was to be used by Presidion Corporation's accountants in the preparation of an audited statement for the company, why would BERMAN and WILDERMUTH not address these important exceptions to their opinion?  Failing to do so **could have** easily misled the auditors and, in turn, the officers, directors, shareholders, and the public as to the financial stability of Presidion Corporation.  (Report, p. 28)(emphasis added).[3]

---

[3] Contrary to Richardson's  opinion that the auditors "could have" been misled by Defendants, Mirabilis sued the auditors for negligence in *Mirabilis Ventures, Inc. v. James Moore & Co.*, and alleged that the "PBS plan…called for the interim nonpayment of federal employment taxes by PBS" and that the auditors "knew about…the details of the PBS Plan." (Case No. 6:09-cv-176-Orl-31DAB D.E. 33-1, ¶¶23, 30). Defendants request the Court take Judicial Notice of the referenced case pursuant to Rule 201, Fed. R. Evid. The allegations by Mirabilis in its case against the auditors are admissions of a party, and not hearsay. Rule 801(d)(1)(A),(C), and (D), Fed. R. Evid. Richardson clearly was not informed that the auditors knew of the illegal plan. The auditors could not have been misled by any action or inaction by these Defendants because according to Mirabilis they had actual knowledge of the plan.

- [I]f BERMAN, Wildermuth and their law firm had pointed out that the Sunshine Companies Plan was based on a fraudulent transfer of assets . . . as the Sunshine Companies book of business was passed around companies that Amodeo owned or controlled, **might not** have happened. (Report, p. 32) (emphasis added).

Opinions A, B, and D at page 3 of the Report are other prime examples of Richardson's speculation. They allege the existence of conflicts of interest by Defendants representing multiple entities owned or controlled by Amodeo. (Report, p. 3). However, Richardson provides no opinion of how any alleged conflict actually breached a duty or caused Mirabilis any damage. Rather, he provides more qualified opinions, such as "Every transaction between Mirabilis and either Amodeo or one of his wholly owned companies **potentially** involved conflicts of interest" (Report, p. 47)(emphasis added) and Berman's "salary from Mirabilis and his stock interest in that company **might well have** affected his ability to give Mirabilis detached advice." (Report, p. 48) (emphasis added). He did not provide any basis as to why any alleged conflict of interest was an **actual** breach or **actually** caused damages. His opinions are useless to a trier of fact.

Richardson's opinions fail to articulate any clear cut duty, or how Defendants violated the nebulous duty.[4] In fact, the opinions negate any proximate cause relationship between the alleged breaches of duty and claimed damages since he declares that the damages "might not" have occurred. This is insufficient to meet the basic threshold of admissibility to establish a claim. *Gooding v. University Hospital Building, Inc.,* 445 So.2d 1015, 1020 (Fla.1984) (holding issue of causation in a malpractice lawsuit requires the plaintiff to show that the injury complained of more likely than not resulted from the defendant's negligence."); *Proto v. Graham*

---

[4] Expert testimony is generally required to establish the standard of care in a legal malpractice action. *Evans v. McDonald*, 313 Fed. Appx. 256 (11th Cir. 2009); *Urbanek v. Cohn*, 531 So. 2d 427, 428 (Fla. 4th DCA 1988); *Willage v. Law Offices of Wallace and Breslow, P. A*., 415 So.2d 767 (Fla. 3d DCA 1982). *Urbanek v. Cohn*, 531 So. 2d 427, 428 (Fla. 4th DCA 1988).

6

788 So.2d 393 (Fla. 5th DCA 2001) (holding that mere possibility, conjecture or speculation of causation is not enough to support action) (*citing* PROSSER, LAW OF TORTS § 41 (4th ed.1971)); *Freeman v. Rubin*, 318 So.2d 540 (Fla. 3d DCA 1975) (plaintiff in legal malpractice action must show that, but for the attorney's negligence, the plaintiff had a good cause of action in the underlying suit).  Contrary to the required legal standard, the opinions expressed in the Report are speculative and inadmissible.

      C.      **Richardson's Report Is Not Based on Sufficient Facts**

"[A]n expert opinion is also inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions ...." *McDowell v. Brown*, 392 F.3d 1283, 1301-02 (11th Cir. 2004).  In violation of this Eleventh Circuit precedent, the Report is a vehicle for Mirabilis to reach factual conclusions without any definitive opinion as to whether the alleged act is a violation of any standard of care.  For instance, opinions G and H of the Report accuse Defendants of using diverted payroll tax trust funds to help Mirabilis with acquisitions, including through their trust account. (Report, p. 3).  However, Richardson candidly admits that he did not perform an "independent analysis of the flow of cash." (Report, p. 10). Nor did Steven Yoakum, Mirabilis' economic expert, who "analyzed" Berman's trust account in his "Evaluation and Analysis of Berman Trust Transactions," perform such an analysis. As Yoakum testified in deposition:

> Q. Did you go behind the origin of those funds, that is, what company or entity or individual the money came from, to determine how much, if any of that money, was unpaid collected payroll taxes?
>
> A. I did not.
>
> Q. Has anyone done that, to your knowledge?

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

A. I believe Mr. Cuthill has to some extent.

Q. But you have not?

A. I have not.

Q. And intend to offer no opinions about that?

A. That's correct. My understanding is that if funds, for example, Presidion, that went into the Berman trust account, whether those funds from Presidion was, in fact, unpaid payroll taxes or not, I don't know. I've done no analysis to determine that.

Deposition of Steven Yoakum, pp. 51-52, relevant excerpts attached as Exhibit B. Thus Richardson may not properly rely on any hypothetical based on conclusions or opinions from Yoakum.

Without any record cite for his conclusions that Defendants knew of the illegal diversion of trust fund taxes and facilitated illegal activity by allowing Mirabilis to use their trust account, Richardson hypothesizes, "Berman must have wondered where this money was going to come from..." (Report, p. 44).   This is just more of his pure speculation, not a *bona fide* opinion.

Additionally, after fifteen pages (pp. 22-37) of describing the process of a tax memorandum drafted by Wildermuth, Richardson does not opine that incorrect legal advice was rendered or that the memorandum indicated that diverting payroll taxes for other uses was somehow permissible.[5]   Richardson merely concludes that undertaking the assignment and not

---

[5]  Nor could Richardson make this assertion because in the subject memo from Defendants to Amodeo, dated March 29, 2005, Wildermuth expressly advised the reader that the IRS has available as a collection tool civil and criminal penalties against officers and employees of corporate employers who fail to timely remit payroll withholding taxes. A true and correct copy of the March 29, 2005 memo is attached as Exhibit C.  The Report addresses at pp. 22-37 the March 29, 2005 memo, and later drafts or versions of it through May of 2005, but Richardson cites no memorandum from Defendants which ever informed the reader that it was legal or permissible to divert payroll taxes.  There is no such memorandum.

8

recognizing that it was part of Amodeo's tax fraud scheme was "unprofessional." (Report, p.

34).[6] "Unprofessional" is not an element of any causes of action in this matter.[7]

Richardson's proposed testimony is entirely unreliable because his conclusions are not

logically supported by the facts of this case. As the Supreme Court explained in *General Electric*

*Company v. Joiner*, "nothing in either *Daubert* or the Federal Rules of Evidence requires a

district court to admit opinion evidence which is connected to existing data only by the *ipse dixit*

of the expert. A court may conclude that there is simply too great an analytical gap between the

data and the opinion proffered." 522 U.S. 136, 146 (1997). Florida law is in accord with this

concept. As stated by the Florida Supreme Court in *Arkin Consruction Co. v. Simpkins*, 99 So.

2d 557, 561 (Fla. 1957):

---

[6] In addition to the tax memorandum assignment, the other main "fact" upon which Richardson relies is Berman's attendance at a December 21, 2004 meeting at Rachlin, Cohen. Richardson acknowledges that Berman "testified that he did not attend the meeting." Report, p. 20. The attendance sheet attached to Richardson's report upon which Richardson hinges his opinion is for an April 2005 meeting, not the December 2004 meeting in question.

[7] A legal malpractice claim "has three elements: 1) the attorney's employment, 2) the attorney's neglect of a reasonable duty, and 3) the attorney's negligence as the proximate cause of loss to the client." *Law Office of David J. Stern, P.A. v. Security National Servicing*, 969 So. 2d 962 (Fla. 2007). Similarly, on a claim of breach of fiduciary duty, a plaintiff must prove three elements: the existence of a fiduciary duty, a breach of that duty, and plaintiff's damages proximately caused by the breach. *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). Contrary to Richardson's inference, a lawyer is not required to challenge the client's statements or to conduct exhaustive "due diligence" as to the factual content of conversations with the client in order to "reasonably rely" on those statements. *See In re Cascade Intl Sec. Litig.*, 840 F. Supp. 1558, 1564-65 (S.D. Fla. 1993) (finding that a law firm had no duty to "investigate" its client, and in fact such investigation would be contrary to the attorney-client relationship); *see also* Fed. R. Civ. P. 11(b) & (b)(3) (1983) (requiring an attorney to conduct "an inquiry reasonable under the circumstances" into whether factual contentions made during litigation have evidentiary support); *see also* Fla. Rules of Prof'l Conduct (Chapter 4, Preamble) (defining "[r]easonable belief' or "[r]easonably believes" when used in reference to a lawyer as "the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable."). All that is required of lawyers is that they "inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions." ABA Model Rule of Prof'l Conduct R. 3.1 cmt.

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL 33394

> **It is elementary that the conclusion or opinion or [sic] an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value.** It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion.

(Emphasis supplied). *See also Schindler Elevator Corp. v. Carvalho*, 895 So. 2d 1103 (Fla. 4th DCA 2005) (same); *Carnival Corp. v.* Stowers, 834 So. 2d 386, 386 (Fla. 3d DCA 2003) ("To be admissible, an expert's opinion must be based on valid underlying data which has a proper factual basis."); *Husky Industries, Inc. v. Black*, 434 So. 2d 988, 993 (Fla. 4th DCA 1983) (holding that in order for an expert opinion to be admissible, it must be based on relevant facts).

Richardson's opinions are not really opinions at all.  They are conclusions of fact based on conjecture. Tellingly, Richardson admits at page 49 of his Report:

> Also as of the time of writing this report, I have not read the transcripts of two individuals involved in some manner with the events that gave rise to this case but who, I am told, declined to answer some, or any, questions during their deposition. [8]

Richardson fails to identify the individuals to whom he refers.  He could only be referring to James Sadrianna, President, Vice President and Director of Mirabilis, and Daniel Myers, CFO, Vice President and Director of Mirabilis (or possibly Susan Schumacher, Vice President of

---

[8]  In the Report, Richardson states, "Information from any of these, or other, sources might have a bearing on this opinion." Report, p. 49. However, Plaintiff cannot amend or add to the Report. As explained in Section 1.E. of this Court's November 13, 2009 Case Management and Scheduling Order, "Expert testimony on direct examination at trial will be limited to the opinions, bases, reasons, data, and other information disclosed in the written expert report[.]" (D.E. 35). *See* Fed.R.Civ.P. 26(e) and 37(c)(1); *see also*, *Air Turbine Tech. v. Atlas Copco AB*, 410 F.3d 701, 711 (Fed. Cir. 2005) (excluding proposed amendment and supplement to expert report); *Omega Patents, LLC v. Fortin Auto Radio, Inc.,* 2007 WL 4373110, at *2 (M.D. Fla. 2007) (same).

Finance of Presidion).   Sadrianna, Myers, and Schumacher, all CPAs,[9] and in the case of Sadrianna, also a lawyer, did not merely "decline" to answer questions.  When asked about their own knowledge and participation in the Amodeo-Mirabilis tax fraud conspiracy they each repeatedly asserted their Fifth Amendment right against self-incrimination.

However, Myers and Sadrianna did answer some relevant questions about their own personal knowledge of IRS rules on payroll tax collection and remittance, the seminal issue in this case given their status as senior officers and directors of Mirabilis.  By failing to consider their testimony on the critical facts of the case – whether senior executives and directors of Mirabilis knew the rules on payroll tax collections, reporting and remittance, and who at Mirabilis participated in the massive tax fraud engineered by Amodeo - Richardson missed fundamental facts to his analysis, particularly the basis of his opinions C, E and F which accuse Defendants of failing to advise Mirabilis directors that it was illegal to divert payroll tax trust funds for other purposes.  (Report, pp. 2-3). Two Directors, Myers and Sadrianna, testified as follows:

> Q. Are virtually all employers required to complete and submit 940s and 941s?
>
> A. If they have payroll, yes.
>
> Q. Is that something that you knew when you first became an accountant in 2002?
>
> A. Yes, it is.

Myers Depo, Exhibit E, p. 4.

> ***

---

[9] Schumacher testified that she is no longer licensed since she did not keep up with her required education classes. Attached as Exhibit D are relevant excerpts from her August 26, 2010 deposition, pp. 20-21.

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

Q.   What would be involved in managing money that was withheld from payroll as withholding taxes and was required to be paid to the Government within three days? What would you do to manage that money?

A. Just make sure I note that it needs to be moved.

Q. Needs to be maintained in a depository account at a financial institution?

A. Oh, generally, yes.

Q. And it needs to be moved over to the Government's account almost immediately, is that right?

A. That's correct.

Q. And you've known that since you were a licensed CPA?

A. Yes.

Q. And even before that?

A. Yes.

Ex. E, p. 39.

\*\*\*

Q.   All right. Was it your understanding that the Sunshine Companies Plan included as an element in whole or in part the collection and nonpayment of  payroll taxes?

MR. RHODES [Counsel for Myers]: I am instructing him not to answer on the same [Fifth Amendment] grounds.

Q. Was it your understanding that the PBS Plan included as an element in whole or in part the collection and nonpayment of payroll taxes?

MR. RHODES: I'm going to instruct him not to answer on the same grounds.

Ex. E, p. 125.

12

***

And responding to questions about his role in a management representation letter he signed in

connection with an audit of Mirabilis in 2006, Myers stated:

> Q. Okay. Did you sign the management representation letter that was given to James Moore & Company in order to allow them to issue their audited financial statements for Mirabilis Ventures, Inc. and its subsidiaries in July of 2006?
>
> A. Yes.

Ex. E, p. 181

> Q. Number four says, on Page 2, "There are no material transactions that have not been properly recorded in the accounting records underlying the financial statements." Well, you knew as of the time of this letter that Mirabilis and Amodeo were in control of Presidion Solutions VI and VII, which was wildly out of compliance with its payroll tax obligations, didn't you?
>
> MR. WIDMAN: Object to the form.
>
> MR. RHODES: Same instructions [Fifth Amendment].
>
> Q. And you knew this statement not to be true at the time you signed this letter, is that right?
>
> MR. RHODES: Same instructions [Fifth Amendment].

***

> Q. Number seven. "We have no knowledge of any fraud or suspected fraud affecting the company involving management, employees who have significant roles in internal control or others where the fraud could have a material effect on the financial statements." You knew when you sent this letter that Frank Amodeo was involved in a massive tax fraud scheme, didn't you? [sic]
>
> MR. RHODES: Same instructions [Fifth Amendment].[10]

---

[10]  The Court may consider Myers and Sadrianna's invocation of their Fifth Amendment rights to substantive questions as adverse inferences against Mirabilis.  *S.E.C. v. Monterosso*, --F.Supp.2d --, 2010 WL 3833845, *7

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

Ex. E, pp. 204-06.

Sadrianna testified that:

> Q. As an accountant at that time and as the CFO of the company at that time you were familiar with Internal Revenue Service payroll tax issues?
>
> A. Yes.
>
> Q. You knew that employers were required, when making payroll, to withhold and set aside federal withholding income taxes?
>
> A. Yes.
>
> ***
> Q. You're familiar with the concept that federal payroll tax withholding is a trust fund issue, that is that the monies withheld from employees' paychecks for payment of federal payroll taxes is held by the employer in trust for the government, is that right?
>
> A. Yes.
>
> Q. And you've known that since long before you were affiliated with Mirabilis, is that right?
>
> A. Yes.

Sadrianna Depo, Exhibit F, pp.18-20.

> ***
>
> Q. Did you advise your clients regarding the importance of federal payroll withholding taxes?
>
> A. Yes.
>
> Q. And the significance of failing to pay them?
>
> A. I don't know.

(S.D. Fla. September 28, 2010); *Cole v. American Capital Partners Ltd., Inc*., 2008 WL 2986444, *5-6 (S.D. Fla. 2008) (holding court may consider adverse inference against corporate employer based on former officers invoking Fifth Amendment as to conduct while in scope of employment).

Q. Back then you were familiar with penalties for failure to withhold and pay over federal payroll withholding taxes?

A. Yes

\*\*\*

Q. You knew that there were rules requiring employers to set aside payroll withholding tax monies?

A. Yes.

Q. You knew that they were required to hold those funds in trust for the government?

A. Yes.

Q. And you knew that the employer was required to pay them over promptly to the government without using them for any other purpose?

A. Yes.

Ex. F, pp. 22-24.

\*\*\*

Q. You knew in 2005 and 2006, while you were with Mirabilis, that it was a criminal violation to collect payroll taxes and not pay them over to the government?

A. I'll invoke the Fifth.

Ex. F, p. 141.

\*\*\*

Q. And you, as the president of the company, participated in that criminal conspiracy?

A. I'll be invoking the Fifth.

Q. And you, as a director of the company, participated in that criminal conspiracy?

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

A. I'll be invoking the Fifth Amendment.

Q. And you, as the vice president of the company, participated in that criminal conspiracy?

A. I'll be invoking the Fifth.

Ex. F, p. 152.

***

Q. Were you ever present when any officer or director of Mirabilis reported the existence of a criminal conspiracy involving the use of payroll taxes by Mirabilis to its general counsel?

A. I'll be invoking the Fifth.

Q. Were you ever present when it was reported to the board of directors?

A. I'll be invoking the Fifth.

Ex. F, p. 155.

Schumacher's assertion of her Fifth Amendment rights with respect to her knowledge and

participation in the payroll tax fraud conspiracy is also quite telling:

Q. Were you ever told of any plan by Mr. Amodeo or Mirabilis, or anyone else who became affiliated with Presidion Corporation at the end of 2004, that there was a plan which included, as an element, the collection of payroll taxes and the use of that money for purposes other than paying them to the government.

A. I take the Fifth.

Q.  You know that the Internal Revenue Code requires employers to withhold and collect payroll taxes; is that right?

A. I take the Fifth.

Q. You know that when the amounts exceed a certain level, that those taxes must be paid over to the government within two or three business days; is that right?

A. I take the Fifth.

Schumacher, Exhibit D, p. 106.

Summarily dismissing the import of these crucial depositions by Mirabilis officers and directors as well as Schumacher, an officer of Presidion, a Mirabilis affiliate through which the payroll taxes flowed (See Fourth Amended Complaint, D.E. 67, ¶¶ 11-28), Richardson ignored established uncontroverted facts. Richardson accuses Defendants of failing to inform Mirabilis officers and directors about the propriety of using payroll tax trust funds for operating capital. But Richardson ignored the undisputed testimony of two key officers and directors of Mirabilis who admitted they knew the rules regarding withholding, collection, and remittance of payroll taxes.

Richardson's opinion hinges on the assumption that Defendant did not inform Mirabilis directors that stealing payroll taxes was illegal. There are two problems with this conclusion. First, this is a fact at least two of the directors clearly knew. Had Richardson read these key depositions, he would have known this. Ignoring the testimony of at least "two individuals involved in some manner with the events that gave rise to this case" creates an enormous "analytical gap between the data and the opinion proffered" which renders Richardson's opinions and testimony inadmissible according to *General Electric*. Even if Richardson's "opinions" were not merely speculative factual conclusions on their face, which they are, they are still inadmissible because he ignored crucial record evidence.

**D.    Richardson's Opinions Include Officer and Director Liability Claims where only Professional Liability Claims are at Issue.**

Curiously, Richardson also bases his opinions in part on Berman's "numerous responsibilities with the company, including being an employee, a member of Mirabilis' Board

17

of Directors and Mirabilis' General Counsel." (Report p. 45). However, Mirabilis is not suing Berman for officer or director liability. He is being sued in his capacity as outside counsel. (See D.E. 67, ¶¶ 8, 29-35, 40, 60-64, 68, 69) ("Defendant, Berman, is a resident of the State of Florida and an attorney licensed to practice law in the State of Florida and at all times material hereto was an agent of BKR. Berman's acts, representations, and omissions alleged herein were made within the course and scope of his agency with BKR," Complaint ¶ 8).

Each Count of the Fourth Amended Complaint is directly related to representation provided by Berman and Wildermuth as employees of BKR, not as officers or directors of Mirabilis (Wildermuth was neither). (D.E. 67) (alleging counts for Professional Negligence, Breach of Fiduciary Duty, Negligent Supervision, Accounting and Conversion). To the extent that Richardson opines as to breach of some nebulous duty based on Berman's positions with Mirabilis other than as their outside counsel, Richardson's "opinions" yet again do not provide any assistance to the trier of fact to the extent his opinions go outside the ruling pleadings and are therefore irrelevant.

## II.   CONCLUSION

"[E]xpert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the ... court… must take care to weigh the value of such evidence against its potential to mislead or confuse." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004). The Richardson Report is fraught with disclaimers of what Mirabilis seeks to pass off as "opinions." In his report Richardson speculates what might have been, could have been, or perhaps would have happened if certain things had occurred. His report is simply inadmissible pontification. The Report is also an amalgamation of factual summaries. These speculative

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

conclusions would only mislead and not assist a trier a fact.  Richardson's testimony and report must be excluded.

WHEREFORE, Defendants respectfully request that this Court enter an order granting this Motion to Exclude David Richardson as an Expert, and for such other and further relief as the Court deems just and proper.

## IV.    CERTIFICATE OF GOOD FAITH CONFERENCE

Counsel for Defendants certifies that he contacted counsel, Todd Norman, for Plaintiff in a good faith effort to resolve the issues outlined in this motion under Local Rule 3.01(g), but has been unable to do so.

WE HEREBY CERTIFY that a copy of the foregoing has been furnished via Electronic Transmission on **February 14, 2011** to: **Roy S. Kobert, Esq. and Todd K. Norman**, Broad and Cassel, Counsel for Plaintiff, 390 North Orange Avenue, Suite 1400, Orlando, FL 32801, Telephone: (407) 839-4200; Facsimile: (407) 425-8377, Email: rkobert@broadandcassel.com and tnorman@broadandcassel.com.

                                            *s/ D. David Keller*

                                            D. David Keller
                                            Fla. Bar No.: 288799
                                            Trial Counsel for Defendants
                                            Wendy J. Stein
                                            Fla. Bar No.: 389552
                                            KELLER LANDSBERG PA
                                            Broward Financial Centre, Suite 1400
                                            500 East Broward Boulevard
                                            Fort Lauderdale, FL 33394
                                            Telephone: (954) 761-3550
                                            Facsimile: (954) 525-2134
                                            Email: david.keller@kellerlandsberg.com

                                            and

19

Bradley M. Saxton, Esq.
Winderweedle, Haines, Ward & Woodman, P.A.
Co-counsel for Defendants
Post Office Box 1391
Orlando, FL 32802-1391
Telephone:  (407) 423-4246
Facsimile: (407) 423-7014
Email: bsaxton@whww.com
Fla. Bar No.: 855995

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394